## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROMMIS HOLDINGS, LLC, et al.,[1] | Case No. 13-10551 (BLS) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM
### AND FINAL ORDERS DETERMINING ADEQUATE
### ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES

Prommis Holdings, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), file this motion (this "Motion") for entry of an interim order (the "Interim Order"), substantially in the form attached hereto as Exhibit A, and a final order (the "Final Order"), substantially in the form attached hereto as Exhibit B, determining adequate assurance of payment for future utility services, prohibiting utility providers from altering or discontinuing service on account of outstanding prepetition invoices, and establishing procedures for determining adequate assurance of payment for future utility services. In support of this Motion, the Debtors respectfully state as follows:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569). The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

[2] The facts and circumstances supporting this Motion are set forth in the Declaration of Charlie T. Piper in Support of Debtors' Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), filed contemporaneously herewith.

## Jurisdiction

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

## Introduction[3]

4.     On the date hereof (the "Petition Date"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  Concurrently with the filing of the Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Relief Requested

5.     By this Motion, the Debtors seek entry of Interim and Final Orders: (a) determining that the Debtors' utility providers (as such term is used in Bankruptcy Code section 366 and, as described herein, each a "Utility Provider" and collectively the "Utility Providers") have been provided with adequate assurance of payment within the meaning of

---

[3]     A description of the Debtors' businesses, the reasons for commencing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into chapter 11 are set forth in the First Day Declaration.

2

Bankruptcy Code section 366; (b) approving the Debtors' proposed adequate assurance; (c) prohibiting the Utility Providers from altering, refusing, or discontinuing services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of the Final Order; (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion, pending entry of the Final Order; and (e) scheduling a final hearing (the "Final Hearing") to consider entry of a Final Order.

### Utility Providers and Proposed Adequate Assurance

**I.     The Utility Providers.**

6.      As set forth in the First Day Declaration, in the ordinary course of business, the Debtors incur expenses for gas, electric, telecommunications, and other similar utility services provided by approximately six (6) Utility Providers, a list of which is attached as Exhibit C hereto (the "Utility Service List").[4]  On average, the Debtors spend approximately $104,387 each month on utility costs.   As of the Petition Date, the Debtors estimate that approximately $176,350.00 in utility costs are outstanding in the aggregate to the Utility Providers.

7.      Uninterrupted utility services are essential to the Debtors' ongoing operations and, therefore, to the success of their restructuring.  Indeed, any interruption of utility services, even for a brief period of time, would negatively affect the Debtors' operations, customer relationships, revenues, and profits, seriously jeopardizing the Debtors' restructuring efforts and, ultimately, recoveries to the Debtors' stakeholders.  Therefore, it is critical that utility services continue uninterrupted during these chapter 11 cases.

---

[4]    Although the Debtors believe that the Utility Service List includes all of their Utility Providers as of the Petition Date, the Debtors reserve the right to supplement the Utility Service List if any Utility Provider has been omitted.  Additionally, the listing of an entity on the Utility Service List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

II.    **The Proposed Adequate Assurance.**

8.    The Debtors intend to pay postpetition obligations owed to the Utility Providers in a timely manner.  The Debtors expect that their cash flow from operations and anticipated access to cash collateral will be sufficient to pay postpetition obligations related to their utility service.

9.    Nevertheless, to provide additional assurance of payment for future services to the Utility Providers, the Debtors propose to deposit $48,179 (the "Adequate Assurance Deposit"), into a segregated, interest-bearing account (the "Adequate Assurance Deposit Account") within seven (7) business days following entry of the Interim Order.  The amount of the Adequate Assurance Deposit equals the estimated aggregate cost for two (2) weeks of utility service, calculated as a historical average over the past twelve (12) months.  The Adequate Assurance Deposit will be held for the benefit of Utility Providers during the pendency of these chapter 11 cases.

10.    The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' demonstrated ability to pay for future utility services in the ordinary course of business (together, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers.  If any Utility Provider believes additional assurance is required, that Utility Provider may request such assurance pursuant to the procedures set forth below.

11.    In light of the severe consequences to the Debtors of any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors propose that the Court approve and adopt the following procedures (the "Adequate Assurance Procedures"):

    a.    The Debtors will mail a notice of the hearing date and a copy of this Motion to the Utility Providers on the Utility Service List so that such Motion is received within fourteen (14) days of the hearing date on this Motion.

b.    If a Utility Provider is not satisfied with the Proposed Adequate Assurance and seeks additional assurance of payment in the form of deposits, prepayments, or otherwise, it must serve a request (an "<u>Additional Assurance Request</u>") upon (i) Prommis Holdings, LLC, 400 Northridge Road, Atlanta, Georgia, 30350, Attn.: General Counsel; (ii) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Christopher J. Marcus and David S. Meyer; (iii) proposed counsel to the Debtors, Womble Carlyle Sandridge & Rice, LLP, 222 Delaware Ave., Suite 1501, Wilmington, DE 19801, Attn: Steven K. Kortanek; and (iv) proposed counsel to any official committee appointed in these chapter 11 cases (collectively, the "<u>Notice Parties</u>").

c.    Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location for which utility services are provided; (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits; (iv) certify the amount that is equal to two weeks of utility service it provides to the Debtors, calculated as a historical average over the past twelve (12) months; (v) certify that it currently is not paid in advance for its services; and (vi) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

d.    Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall have twenty-one (21) days from the receipt of such Additional Assurance Request (the "<u>Resolution Period</u>") to negotiate with such Utility Provider to resolve such Utility Provider's request for additional assurance of payment.

e.    The Debtors may resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court, and may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and other forms of security, without further order of the Court if the Debtors believe such additional assurance is reasonable.

f.    If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach an alternative resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "<u>Determination Hearing</u>") pursuant to Bankruptcy Code section 366(c)(3).

g.    Pending resolution of any such Determination Hearing, the Utility Provider filing such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing service to the Debtors on account of unpaid

charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

h.     The Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that does not make an Additional Assurance Request.

12.     Absent compliance with the Adequate Assurance Procedures, the Utility Providers are forbidden to alter, refuse, or discontinue service on account of any prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance, pending entry of the Final Order.

## III.     Subsequent Modifications.

13.     To the extent that the Debtors subsequently identify additional providers of utility services, the Debtors seek authority to amend the Utility Service List to add or remove any Utility Provider. The Debtors further request that the Court make the Interim and Final Orders apply to any such subsequently identified Utility Provider, regardless of when each Utility Provider was added to the Utility Service List. The Debtors shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any subsequently added Utility Provider's Additional Assurance Request by mutual agreement with the Utility Provider without further order of the Court or to schedule a Determination Hearing with the Court to determine the adequacy of assurance of payment with respect to such Utility Provider in accordance with such Adequate Assurance Procedures.

14.     The Debtors request that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing utility services to the Debtors absent further order of the Court.

## Basis for Relief

**I.      The Utility Providers are Adequately Assured of Payment for Future Services.**

15.      Bankruptcy Code section 366(c)(2) provides that a utility provider may discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment within thirty (30) days after the petition date.  Congress enacted Bankruptcy Code section 366 to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors will pay for postpetition services. See H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, Bankruptcy Code section 366 protects debtors by prohibiting utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of thirty (30) days after a chapter 11 filing.  At the same time, it protects utility providers by permitting them to alter, refuse, or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility providers.

16.      Bankruptcy Code section 366(c) also restricts the factors that a court may consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts no longer may consider (a) the absence of a security deposit before a debtor's petition date, (b) a debtor's history of timely payments, or (c) the availability of an administrative expense priority when determining the amount of a deposit.  Notwithstanding these changes, Congress did not abrogate the bankruptcy court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

17.      Thus, while Bankruptcy Code section 366(c) limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it

does not limit the court's ability to determine the amount of payment necessary, if any, to provide such adequate assurance. Instead, Bankruptcy Code section 366(c) gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had under section Bankruptcy Code 366(b). Compare 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") with 11 U.S.C. § 366(c)(3)(a) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2).").

18.      In addition, it is well-established that Bankruptcy Code section 366(b) permits a court to find that no adequate assurance payment at all is necessary to provide a utility provider with adequate assurance of payment. See Va. Elec. & Power Co. v. Caldor Inc.-N.Y., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'") (citation omitted). This principle may be applicable in cases where the debtor has made prepetition deposits or prepayments for services that Utility Providers ultimately will render postpetition. See 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance). Accordingly, even after the 2005 revisions to Bankruptcy Code section 366, courts continue to have discretion to determine the amount of adequate assurance payments and, where appropriate, to determine that no such payment is necessary.

19.    Finally, Bankruptcy Code section 366(c), like Bankruptcy Code section 366(b), requires only that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. See, e.g., In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment, but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services."); see also In re Caldor, Inc.-N.Y., 199 B.R. 1, 3 (Bankr. S.D.N.Y. 1996) (stating that section 366(b) "does not require an 'absolute guarantee of payment'"), aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.-N.Y., 117 F.3d 646 (2d Cir. 1997). Courts also have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus 'upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" Va. Elec. & Power Co., 117 F.3d at 650 (emphasis in original); see also In re Penn Cent. Transp. Co., 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

20.    The Debtors submit that the Proposed Adequate Assurance, the Adequate Assurance Deposit Account, and the Adequate Assurance Procedures provide more than adequate assurance of future payment. Furthermore, the Debtors expect that revenue from continued operations, coupled with cash on hand, will be sufficient to pay their operating costs,

including utility costs, as such costs come due. Moreover, the Debtors have a powerful incentive to stay current on utility obligations because of their reliance on utility services for the operation of their businesses. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that the Proposed Adequate Assurance, Adequate Assurance Deposit Account, and the Adequate Assurance Procedures are more than sufficient to assure the Utility Providers of future payment.

21.     The Court has granted similar relief to that requested herein in a number of cases in this district. See, e.g., In re School Specialty, Inc., Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013) (utility providers adequately assured of payment where debtor established segregated account containing 50% of average monthly cost of utility service); In re LCI Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D. Del. Jan 10, 2013) (finding deposit of two (2) weeks cost of utility services to be adequate assurance); In re Overseas Shipping Group., Inc., Case No. 12-20000 (PJW) (Bankr. D. Del. Dec. 7, 2012) (same); In re Monitor Group Co. Ltd. P'ship, Case No. 12-13042 (CSS) (Bankr. D. Del. Dec. 4, 2012) (same); In re Southfield Office Bldg. 14, LP, Case No. 12-12415 (BLS) (Bankr. D. Del. Nov. 28, 2012) (same); In re Satcon Tech. Corp., Case No. 12-12869 (KG) (Bankr. D. Del. Nov. 6, 2012) (same); In re Pemco Worldwide Air Servs., Inc., Case No. 12-10799 (MFW) (Bankr D. Del. April 4, 2012); In re Neb. Book Co., Case No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011) (same); In re L.A. Dodgers LLC, Case No. 11-12010 (KG) (Bankr. D. Del. July 19, 2011) (same).[5]

22.     Moreover, if a Utility Provider disagrees with the Debtors' analysis, the Adequate Assurance Procedures will enable the parties to negotiate and, if necessary, seek Court intervention without jeopardizing the Debtors' continuing operations.

---

[5]   Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

II.    **The Adequate Assurance Procedures are Appropriate.**

23.    The Court has authority to approve the Adequate Assurance Procedures under Bankruptcy Code section 105(a). Bankruptcy Code section 105(a) provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of Bankruptcy Code section 105(a) is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY ¶ 105.01 (16th ed. rev. 2012).

24.    The proposed Adequate Assurance Procedures are necessary in these chapter 11 cases. If the proposed procedures are not approved, the Debtors could be forced to address numerous requests by the Utility Providers in a disorganized manner during the critical first weeks of these chapter 11 cases. Moreover, a Utility Provider could blindside the Debtors by unilaterally deciding – on or after the 30th day following the Petition Date – that it is not adequately protected and discontinuing service or making an exorbitant demand for payment to continue service. Discontinuation of utility service could essentially shut down operations, and any significant disruption of operations could jeopardize these chapter 11 cases.

### The Requirements of Bankruptcy Rule 6003 Have Been Satisfied

25.    Bankruptcy Rule 6003 provides that the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001). As described above, the Debtors need their Utility Providers to continue to provide utility services in the ordinary course of business. Failure to do so would

11

likely result in immediate and irreparable harm to the Debtors' ability to operate their daily operations and severely damage their ability to serve their customers.  The Debtors require basic services such as gas, water, sewer, electric, and telecommunications in order to maintain day-to-day operations.   Any interruption of utility services, even for a brief period of time, would negatively affect the Debtors' operations, customer relationships, revenues, and profits, seriously jeopardizing the Debtors' efforts these cases, and, ultimately, recoveries to stakeholders. Accordingly, the Debtors meet the "immediate and irreparable harm" standard of Bankruptcy Rule 6003.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

26.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

### Notice

27.    The Debtors have provided notice of the Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the Largest 30 Unsecured Claims; (c) counsel to the agent for the Debtors' prepetition secured lenders; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Delaware Secretary of State; (g) the Delaware Secretary of Treasury; and (h) the Utility Providers.  In light of the nature of the relief requested herein, the Debtors respectfully submit that no further notice is necessary.

28.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated: March 18, 2013

WOMBLE CARLYLE SANDRIDGE
& RICE, LLP

*/s/ Steven K. Kortanek*
Steven K. Kortanek (DE Bar No. 3106)
Thomas M. Horan (DE Bar No. 4641)
Ericka F. Johnson (DE Bar No. 5024)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: skortanek@wcsr.com
E-mail: thoran@wcsr.com
E-mail: erjohnson@wcsr.com

-and-

KIRKLAND & ELLIS LLP
Christopher Marcus, P.C. (*pro hac vice* pending)
David S. Meyer (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
E-mail: christopher.marcus@kirkland.com
E-mail: david.meyer@kirkland.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*