## Exhibit A

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PROMMIS HOLDINGS, LLC, et al.,[1] | ) | Case No. 13-10551 (BLS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re: D.I.** _____ |
|  | ) |  |

## STIPULATION AND AGREED INTERIM ORDER
## AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL

Upon the motion (the "Motion") of the Debtors, as debtors and debtors-in-possession, for, among other things, an interim order (this "Interim Cash Collateral Order"), pursuant to Section 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors' use of cash collateral on an interim basis pending a final hearing on the Motion (the "Final Hearing"), for the entry of a final order (the "Final Order"), providing adequate protection to Gleacher Products Corp., in its capacities as the administrative agent (in such capacity, the "Administrative Agent"), as first lien collateral agent (in such capacity, the "First Lien Collateral Agent"), as second lien collateral agent (in such capacity, the "Second Lien Collateral Agent"), and as third lien collateral agent (in such capacity, the "Third Lien Collateral

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569).  The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

Agent"; together with the First Lien Collateral Agent and the Second Lien Collateral Agent, the "Collateral Agents"; the Administrative Agent and the Collateral Agents are collectively referred to herein as the "Agents"), on behalf of the Lenders[2] under the Credit Agreement (as defined below), and granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtors and is in the best interests of the Debtors, their estates, and their creditors; and due notice of the Motion having been given to (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) counsel for the Agents, (iii) the Debtors' principal equity holders, and (iv) the Debtors' twenty (20) largest creditors; and a hearing on the Motion having been held by this Court on March 19, 2013 (the "Interim Hearing"); and upon the record of the Interim Hearing and the arguments of counsel made at the Interim Hearing; and it appearing that under the circumstances the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing has been given pursuant to Bankruptcy Rule 4001 and all applicable Local Rules; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:[3]

A.    Jurisdiction over the Motion is proper pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Loan Documents (as defined herein), as applicable.

[3]  Where appropriate in this Interim Cash Collateral Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

B.      The statutory predicate for the relief sought in the Motion is Section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

C.      On March 18, 2013 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and have continued to manage and operate each of their businesses and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

D.      The use of Cash Collateral (as defined below) is in the best interest of, and will benefit, the Debtors, their estates, and their creditors.  The relief requested in the Motion is necessary, essential and appropriate for the preservation of the Debtors' estates and the operation of their businesses.  Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion.

E.      The Agents have consented to the Debtors' limited use of the Cash Collateral based solely upon the protections, terms and conditions provided for in this Interim Cash Collateral Order and for the limited period from the Petition Date through May 18, 2013 (the "Budget Period").

F.      The terms of this Interim Cash Collateral Order were negotiated in good faith and at arm's-length between the Debtors and the Agents, and entering into this Interim Cash Collateral Order is a prudent exercise of the Debtors' business judgment.

G.      Without the use of Cash Collateral, the Debtors will not have the funds necessary to pay post-petition vendors and other expenses of the Debtors' businesses.  Immediate and irreparable loss or damage will be caused to the Debtors' estates if the relief requested in the Motion is not granted.

IT IS HEREBY STIPULATED, CONSENTED AND AGREED BY THE UNDERSIGNED PARTIES THAT:

H.    The Debtors are the owners of the revenues from their businesses and all such revenues are property of their estates, subject to the liens of the Agents.

I.    Prior to the Petition Date, Prommis Fin Co., a Delaware corporation, as borrower (the "Borrower"), the other Debtors, as guarantors, the Administrative Agent, each Collateral Agent and the Lenders party thereto entered into that certain *Credit and Guaranty Agreement,* dated as of June 12, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement").

J.    Each of (i) Prommis Holdings, LLC, a Delaware limited liability company, (ii) Prommis Solutions, LLC, a Delaware limited liability company, (iii) E-Default Services LLC, a Delaware limited liability company, (iv) Statewide Tax and Title Services LLC, a Delaware limited liability company, (v) Statewide Tax and Title Services of Alabama LLC, an Alabama limited liability company, (vi) Statewide Publishing Services LLC, a Delaware limited liability company, (vii) Nationwide Trustee Services, Inc., a Tennessee corporation, (viii) Nationwide Trustee Services of Virginia, Inc., a Virginia corporation, (ix) Cal-Western Reconveyance Corporation, a California corporation, (x) Cal-Western Reconveyance Corporation of Washington, a Washington corporation, (xi) Reliable Reconveyance Corporation, a California corporation, (xii) Interface Inc., a California corporation, and (xiii) Prommis Homeownership Solutions, Inc., a California corporation, is a guarantor of the Borrower's obligations under the Credit Agreement pursuant to the terms thereof.

K.    The Credit Agreement and the other agreements, documents, instruments and certificates executed by the Debtors or otherwise delivered in connection with the Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "Loan Documents") are valid and enforceable in accordance with their terms

4

against each of the Debtors, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance, subordination, recharacterization or other challenge pursuant to applicable state or federal law (including, without limitation, the Bankruptcy Code).

L.    Pursuant to the terms of the Loan Documents, certain of the Lenders (collectively, the "Revolving Lenders") agreed to provide the Borrower with revolving loans up to $10,000,000 (the "Revolving Loans"). In addition: (i) certain of the Lenders (collectively, the "First Lien Term Loan Lenders"; together with the Revolving Lenders, the "First Lien Lenders") agreed to provide the Borrower with a first lien term loan in an original principal amount of $15,000,000 (the "First Lien Term Loans"); (ii) certain of the Lenders (collectively, the "Second Lien Lenders") agreed to provide the Borrower with a second lien term loan in an original principal amount of $30,000,000 (the "Second Lien Term Loans"); and (iii) certain of the Lenders (collectively, the "Third Lien Lenders") agreed to provide the Borrower with a third lien term loan in an original principal amount of $15,000,000 (the "Third Lien Term Loans"). As of the Petition Date, the Debtors were indebted to the Lenders under the Loan Documents in the approximate outstanding principal amount of no less than $73,979,885.12, together with all other liabilities and obligations of the Debtors arising out of or in connection with the Credit Agreement and the other Loan Documents, including, but not limited to, all accrued and unpaid interest, fees, costs and expenses including professional fees (collectively, the "Obligations"; the Obligations owing to the First Lien Lenders are referred to herein as the "First Lien Obligations"; the Obligations owing to the Second Lien Lenders are referred to herein as the "Second Lien Obligations"; and the Obligations owing to the Third Lien Lenders are referred to herein as the "Third Lien Obligations"). As of the Petition Date, the aggregate outstanding

amount of the Revolving Loans was no less than $10,000,000, the aggregate outstanding amount of the First Lien Term Loans was no less than $15,964,329.25, the aggregate outstanding amount of the Second Lien Term Loans was no less than $32,010,370.59, and the aggregate outstanding amount of the Third Lien Term Loans was no less than $16,005,185.28.

M.    The Obligations are legal, binding and enforceable obligations of the Debtors and not subject to any offset, defense, claim, counterclaim or any other diminution of any type, kind or nature whatsoever.  No portion of the Obligations, or any funds previously paid to the Agents or the Lenders, is subject to avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code (including, but not limited to, Section 502(d) of the Bankruptcy Code) or applicable non-bankruptcy law.

N.    Each of the First Lien Obligations, the Second Lien Obligations and the Third Lien Obligations are secured by separate security interests in substantially all of each of the Debtors' assets, including, without limitation, accounts, equipment, inventory, personal property, general intangibles, chattel paper, contracts, deposit accounts, equity interests, fixtures, instruments, intercompany obligations, investment property, patent, trademark and copyright collateral, documents and records, and all proceeds, products, rents and profits of the foregoing, but excluding the Excluded Assets (as defined below) (collectively, the "Pre-Petition Collateral"), and have the respective lien priorities described in paragraphs P, Q and R below. "Excluded Assets" means the Excluded Deposit Accounts and the Excluded Equipment and Inventory.

O.    Each Collateral Agent filed UCC-1 Financing Statements regarding the Pre-Petition Collateral against the Debtors in the applicable state filing office.[4]

---

[4]    Copies of each of these UCC-1 Financing Statements will be provided to the Court, if necessary,

P.    The liens and security interests of the First Lien Collateral Agent in the Pre-Petition Collateral (the "First Lien Pre-Petition Liens") are:  (i) senior in priority to the security interests of all other persons except for the security interests permitted to exist under Section 6.02 of the Credit Agreement ("Permitted Encumbrances"), to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law.

Q.    The liens and security interests of the Second Lien Collateral Agent in the Pre-Petition Collateral (the "Second Lien Pre-Petition Liens") are:  (i) senior in priority to the security interests of all other persons except for (a) the First Lien Pre-Petition Liens, and (b) Permitted Encumbrances, to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law.

R.    The liens and security interests of the Third Lien Collateral Agent in the Pre-Petition Collateral (the "Third Lien Pre-Petition Liens"; together with the First Lien Pre-Petition Liens and the Second Lien Pre-Petition Liens, collectively, the "Pre-Petition Liens") are:  (i) senior in priority to the security interests of all other persons except for (a) the First Lien Pre-Petition Liens, (b) the Second Lien Pre-Petition Liens and (c) Permitted Encumbrances, to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject

---

upon request.

to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law

S.      As of the Petition Date, the Collateral Agents and the Lenders are holders of secured claims against the Debtors and, as such, are entitled to adequate protection of their interests in the Cash Collateral and Pre-Petition Collateral pursuant to Section 363(e) of the Bankruptcy Code.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

### General Provisions

1.      The Motion is approved and granted on an interim basis as set forth below.

2.      For purposes of this Interim Cash Collateral Order, cash collateral shall consist of: (a) all cash collateral as defined in Section 363(a) of the Bankruptcy Code; and (b) all proceeds of the Collateral (as defined below) (collectively, "Cash Collateral").  Cash Collateral shall be subject to the terms and conditions of this Interim Cash Collateral Order.

3.      Any use of Cash Collateral since the Petition Date is hereby authorized pursuant to the applicable provisions of Section 363(c) of the Bankruptcy Code and Bankruptcy Rule 4001(b), and all adequate protection provided for herein is enforceable to the extent of any use of the Cash Collateral and the Pre-Petition Collateral by the Debtors since the Petition Date.

### The Budget

4.      Attached hereto as Exhibit 1 is a 13-week budget which reflects the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Budget Period (as amended or extended with the express prior written consent of the Administrative

Agent, acting at the direction of the Required Lenders, the "Budget"). The Budget is an integral part of this Interim Order and has been relied upon by the Agents and the Lenders to permit the use of Cash Collateral. The Debtors represent and warrant to the Agents and the Lenders that the Budget includes and contains the Debtors' best estimate of all operational receipts and all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Budget and that such operational disbursements, fees, costs and other expenses that will be timely paid in the ordinary course of business pursuant to and in accordance with the Budget unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable. For purposes of this Interim Cash Collateral Order, the term "Required Lenders" means, as of any date of determination, First Lien Lenders holding more than 50% of the sum of (i) the aggregate outstanding Revolving Loans, and (ii) the aggregate outstanding First Lien Term Loans. For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Budget includes not only the anticipated cumulative cash receipts and expenditures of the Debtors, but also the anticipated cumulative cash receipts and expenditures of Cal-Western Reconveyance Corporation, Reliable Reconveyance Corporation and Cal-Western Reconveyance Corporation of Washington (collectively, the "CWR Parties"), and the CWR Parties shall be included for purposes of determining Budget compliance hereunder.

5.      During the Budget Period, the Debtors are authorized to use Cash Collateral for "Permitted Expenditures," which consist solely of cash disbursements consistent with and pursuant to the line items set forth in the Budget; provided, however, that: (a) the Debtors may not exceed Permitted Expenditures that, on a rolling basis, relate to the Debtors' use of Cash Collateral with respect to any Permitted Expenditures in excess of 110% of the cumulative,

aggregate amount set forth in the Budget (except with respect to the fees of Debtors' Counsel (as defined below), which amount shall not be in excess of 130% of the amount set forth in the Budget for any two (2) week period, except that, if the aggregate amount of such fees for any such two (2) week period is less than 100% of the amount set forth in the Budget for such fees during such period, the difference (for the avoidance of doubt, calculated without multiplying such difference by 130%) will be carried forward and available to the Debtors to pay fees and expenses of Debtors Counsel in any subsequent two (2) week period until used); provided, however, that Permitted Expenditures comprised of fees of Estate Professionals (as defined below) other than Debtors' Counsel may not exceed 100% of the cumulative amount set forth in the Budget for such fees; (b) the Debtors shall not fail actually to realize at least 90% of the cumulative "Total AR Collections" reflected in the Budget (collectively, the "Permitted Variances"); (c) with respect to the payment of any amounts under any Key Employee Incentive Plan ("KEIP") or Key Employee Retention Plan ("KERP"), such KEIP or KERP, as applicable, has been approved by the Required Lenders and this Court and the Debtors only shall pay such amounts to the extent the applicable conditions precedent with respect thereto have been satisfied; and (d) the proceeds of the sale(s) of any assets transferred by the Debtors prior to the Petition Date to the CWR Parties in connection with the sale of the assets and/or equity of the CWR Parties (as described in the CWR Forbearance Agreement (as defined herein)) shall be distributed to the Agents for the benefit of the Lenders, within one (1) business day after the Debtors' receipt thereof, and then applied to the Obligations in accordance with the Loan Documents.  Notwithstanding the foregoing, the Debtors are authorized to pay any statutory fees or interest to the U.S. Trustee (to the extent required by applicable law) when such fees or interest become due and payable, regardless of the amount for which such fees or interest have

been budgeted.  The Debtors may amend the Budget without further Court approval with the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, and upon providing written notice to the U.S. Trustee and counsel to the Committee, if appointed.

6.       The Debtors agree that they will not use the Cash Collateral except as set forth herein and in the Budget (subject to Permitted Variances).  The Debtors will continue to use the Cash Collateral pursuant to the cash management system in place immediately prior to the Petition Date, subject to and in compliance with the requirements of Section 345 of the Bankruptcy Code and subject to any order of the Court (in a form acceptable to the Administrative Agent at the direction of the Required Lenders) regarding such cash management (collectively, "DIP Accounts").

7.       The Agents and the Lenders shall have no obligation with respect to the Debtors' use of the proceeds of the Cash Collateral and shall not be obligated to ensure or monitor the Debtors' compliance with the Budget or to pay (directly or indirectly from the Collateral) any expenses incurred or authorized to be incurred pursuant to the Budget.

## Adequate Protection

8.       The Agents and the Lenders are entitled, pursuant to Sections 361 and 363(c)(2) and (e) of the Bankruptcy Code to adequate protection of their interests in the Cash Collateral and Pre-Petition Collateral in an amount equal to the diminution in value of the Cash Collateral and Pre-Petition Collateral on and after the Petition Date.  As such, the Agents and the Lenders shall receive the adequate protection liens and claims set forth in paragraph 9 herein.

9.       As additional adequate protection:

(a)      the First Lien Collateral Agent (for the benefit of the First Lien Lenders) hereby is granted, in an amount equal to the diminution in value of the First Lien Collateral Agent's interest in the Cash Collateral and the Pre-Petition Collateral on and after the Petition Date:

(i)      a first priority (subject to Permitted Encumbrances and the Carve-Out) lien (the "First Lien Post-Petition Unencumbered Collateral Lien") on all of the Debtors' assets and property that is not otherwise encumbered by valid, binding, enforceable and nonavoidable liens and security interests, including, but not limited to, any and all real, personal, tangible, or intangible property of the Debtors' estates, wherever located and of whatever kind or nature and any and all proceeds, products, cash, distributions, checks, negotiable instruments, securities, debt or equity, and other cash equivalents now or hereafter received by the Debtors in respect of any of the foregoing items, but excluding intent-to-use trademark or service mark applications (collectively, the "Post-Petition Collateral"), whether arising from Section 552(b) of the Bankruptcy Code or otherwise;

(ii)      a replacement lien (together with the First Lien Post-Petition Unencumbered Collateral Lien, the "First Lien Post-Petition Liens") on all assets and property of each of the Debtors, other than intent-to-use trademark or service mark applications, that is already encumbered as of the Petition Date (collectively, the "Existing Lien Collateral" and, together with Post-Petition Collateral, the "Collateral") by a valid, enforceable and nonavoidable lien. For clarity, and not by way of limitation, the First Lien Post-Petition Liens on any Collateral: (A) encumber the proceeds of the Debtors' claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 or any other avoidance actions under the Bankruptcy Code, and such lien is senior to and primes the liens and security interests of the Agents on and in the Pre-Petition Collateral; (B) are and will be senior to any liens preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code; and (C) are subordinate only to the Permitted Encumbrances on such Collateral and the Carve-Out, are valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law; provided, however, that the First Lien Post-Petition Liens on the proceeds of the claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code  or any other avoidance actions under the Bankruptcy Code (other than Section 549) shall be effective only upon entry of the Final Order; and

12

> (iii)    an allowed superpriority administrative expense claim (the "First Lien Superpriority Claim") (subject only to the Carve-Out) in an amount equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases, including all claims of the kind specified under Sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall have recourse to and be payable from all of the Collateral.

(b)     the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders) hereby is granted, in an amount equal to the diminution in value of the Second Lien Collateral Agent's interest in the Cash Collateral and the Pre-Petition Collateral on and after the Petition Date:

> (i)    a second priority lien (subject to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out) (the "Second Lien Post-Petition Unencumbered Collateral Lien") on all of the Post-Petition Collateral;

> (ii)    a replacement lien (together with the Second Lien Post-Petition Unencumbered Collateral Lien, the "Second Lien Post-Petition Liens") on all of the Existing Lien Collateral. For clarity, and not by way of limitation, the Second Lien Post-Petition Liens: (A) encumber the proceeds of the Debtors' claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 or any other avoidance actions under the Bankruptcy Code, and such lien is senior to and primes the liens and security interests of the Agents on and in the Pre-Petition Collateral; (B) are and will be senior to any liens preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code; and (C) are subordinate only to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out, are valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law; provided, however, that the Second Lien Post-Petition Liens on the proceeds of the claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (other than Section 549) shall be effective only upon entry of the Final Order; and

> (iii)    an allowed superpriority administrative expense claim (the "Second Lien Superpriority Claim") (subject only to the First

Lien Superpriority Claim and the Carve-Out) in an amount equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases, including all claims of the kind specified under Sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall have recourse to and be payable from all of the Collateral, subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement.

(c)    the Third Lien Collateral Agent (for the benefit of the Third Lien Lenders) hereby is granted, in an amount equal to the diminution in value of the Third Lien Collateral Agent's interest in the Cash Collateral and the Pre-Petition Collateral on and after the Petition Date:

(i)    a third priority lien (subject to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, the Second Lien Post-Petition Liens, the Second Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out) (the "Third Lien Post-Petition Unencumbered Collateral Lien"; together with the First Lien Post-Petition Unencumbered Collateral Liens and the Second Lien Post-Petition Unencumbered Collateral Liens, collectively, the "Post-Petition Unencumbered Collateral Liens") on all of the Post-Petition Collateral;

(ii)    a lien (together with the Third Lien Post-Petition Unencumbered Collateral Lien, the "Third Lien Post-Petition Liens"; the First Lien Post-Petition Liens, the Second Lien Post-Petition Liens and the Third Lien Post-Petition Liens are collectively referred to herein as the "Post-Petition Liens") on all of the Existing Lien Collateral. For clarity, and not by way of limitation, the Third Lien Post-Petition Liens: (A) encumber the proceeds of the Debtors' claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 or any other avoidance actions under the Bankruptcy Code, and such lien is senior to and primes the liens and security interests of the Agents on and in the Pre-Petition Collateral; (B) are and will be senior to any liens preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code; and (C) are subordinate only to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, the Second Lien Post-Petition Liens, the Second Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out, are valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law; provided, however, that the Third Lien Post-Petition Liens on the proceeds of the claims and

causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (other than Section 549) shall be effective only upon entry of the Final Order; and

(iii)    an allowed superpriority administrative expense claim (the "Third Lien Superpriority Claim"; together with the First Lien Superpriority Claim and the Second Lien Superpriority Claim, collectively, the "Superpriority Claims") (subject only to the First Lien Superpriority Claim, the Second Lien Superpriority Claim and the Carve-Out) in an amount equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases, including all claims of the kind specified under Sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall have recourse to and be payable from all of the Collateral, subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement.

The receipt by a Collateral Agent of the applicable Post-Petition Liens and Superpriority Claims shall not be deemed an admission that the interests of such Collateral Agent and the Lenders are indeed adequately protected. Further, subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement, this Interim Cash Collateral Order shall not prejudice or limit the rights of a Collateral Agent to seek additional relief with respect to the use of Cash Collateral or for adequate protection.

10.    Nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Collateral Agents and the Lenders for any diminution in value of Collateral Agents' or the Lenders' interest in the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases.

**Reporting**

11.    The Debtors shall notify the Administrative Agent of any material adverse deviation of the Debtors' financial performance from that set forth in the Budget within five (5)

calendar days after occurrence of such material adverse deviation.

12.     In addition to the monthly operating reports required by the U.S. Trustee, which monthly reports will be emailed to the Administrative Agent's counsel of record upon their filing with this Court, the Debtors will, or will cause their financial advisor, Huron Consulting, to, provide to the Administrative Agent, on Friday of each week following the Petition Date, a weekly financial report, in form and methodology satisfactory to the Administrative Agent, which will include, among other things:  (a) a 13-week cash flow projection, together with a variance report setting forth actual cash receipts and disbursements of the Debtors for the prior week and setting forth all the variances, on a line-item and aggregate basis, from the amount set forth for such week as compared to the Budget on a weekly and cumulative basis; and (b) such other financial information as agreed between the Debtors and the Administrative Agent.

13.     The Debtors will provide to the Agents such other reports and information as may be reasonably requested by the Agents.  In addition, the Debtors authorize their accountants, financial advisors, and consultants to cooperate, consult with, and provide to the Agents all such information as may be reasonably requested with respect to the businesses, results of operations, and financial condition of the Debtors, in addition to any potential asset sales, collection efforts and/or related matters, except, in each case, information that the Debtors, upon advice of counsel, believe is subject to the attorney-client privilege.  The Administrative Agent, at the direction of the Required Lenders, may extend the date for delivery of any information or items required by this "Reporting" section.

14.     The Debtors will provide the Agents with a written report on each Tuesday during the Budget Period (each such report, a "Weekly Counsel Report") that sets forth: (i) the aggregate amount of fees and expenses incurred by each of Kirkland & Ellis LLP and Womble

Carlyle Sandridge and Rice, LLP, co-counsel to the Debtors (collectively, "Debtors' Counsel"), during the pendency of these chapter 11 cases through and including the immediately prior Friday; (ii) the amount of fees and expenses incurred by each such counsel during the immediately preceding week (i.e., Monday through and including Sunday); (iii) the amount of any retainer held by each such counsel, and the application thereof to fees and expenses incurred by such counsel, as of the date of such Weekly Counsel Report; and (iv) each such counsel's good faith estimate of the amount of fees and expenses expected to be incurred by such counsel during the following two (2) week period (i.e., the first Monday of such period through and including the second Sunday of such period). In the event that any Weekly Counsel Report provides that the amount of fees and expenses incurred by Debtors' Counsel has reached $1,300,000, the Agents (acting at the direction of the Required Lenders) and the Debtors will meet and confer to discuss a potential modification to the Budget regarding the fees and expenses of Debtors' Counsel.

### Fees, Costs and Expenses of the Agents

15.    The Debtors are authorized and directed to pay the Agents, in cash on a current basis, from the DIP Accounts, all reasonable and documented out-of-pocket fees, costs, and expenses of the Agents' legal and business advisors, incurred prior to and on and after the Petition Date within two (2) business days after the end of the Notice Period (as defined below). Payment of all such fees and expenses set forth in this paragraph shall not be subject to allowance by this Court, and the Agents' right to receive such payment of fees and expenses shall not be required to comply with the U.S. Trustee's fee guidelines. Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever. The Debtors shall provide at least five (5) calendar days' advance notice

(such five (5) calendar day notice period, the "Notice Period") to the U.S. Trustee and, if appointed, any committee of unsecured creditors appointed in these chapter 11 cases (any such committee, the "Committee") prior to payment of any of the fees or expenses incurred by the Agents, along with copies of all invoices (in summary form) that the Debtors intend to pay.

### Additional Provisions

16. The Debtors' use of the Cash Collateral will terminate on the earliest to occur of (each such occurrence hereinafter referred to as a "Termination Event"): (a) July 12, 2013 (the "Expiration Date") (*i.e.*, the end of the Budget Period), provided, however, the Budget Period and the Expiration Date may be extended with the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, without further order of this Court following the Debtors providing written notice of the extension of the Expiration Date to the U.S. Trustee and the Committee, if any; (b) reversal, vacatur, or modification, in whole or in part, of this Interim Cash Collateral Order or any other order of this Court in any of these chapter 11 cases or any subsequent chapter 7 cases without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (c) (i) dismissal of any of these chapter 11 cases or conversion of any of these chapter 11 cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with expanded powers or other responsible person in any of these chapter 11 cases without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, (ii) termination of the exclusive period for the Debtors to file a chapter 11 plan in these chapter 11 cases or any subsequent chapter 7 cases, or (iii) the Debtors shall seek or request the entry of any order to effect any of the events described in subclause (i) of this clause (c) without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders;

(d) the entry by this Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code sought by any party that materially affects the Debtors' property, without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (e) five (5) business days after written notice to the Debtors of the failure by the Debtors to make any payment required pursuant to this Interim Cash Collateral Order when due (during which time the Debtors may cure subject to any extensions of the due date); (f) five (5) business days after written notice to the Debtors of (i) the failure by the Debtors to deliver to the Agents any of the documents or other information required to be delivered pursuant to this Interim Cash Collateral Order when due (during which time the Debtors may cure) or (ii) the fact that any such documents or other information contains a misrepresentation of a material fact; (g) two (2) days after the Debtors' failure to adhere to the Budget, subject to Permitted Variances, as provided for herein; (h) except as set forth herein, five (5) business days after written notice from either (i) the Administrative Agent to the Debtors, or (ii) the Debtors to the Administrative Agent, in each case, of the failure by the Debtors to observe or perform any of the terms or provisions contained in this Interim Cash Collateral Order or any other order of this Court in any of these chapter 11 cases or any subsequent chapter 7 cases; (i) the entry of an order of this Court approving the terms of any debtor-in-possession financing for any of the Debtors, or the Debtors shall seek or request the entry of any such order, in each case, without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (j) except as provided herein, the entry of an order of this Court granting any lien on or security interest in any of the Collateral that is pari passu with or senior to the Agents' respective liens on or security interests in the Collateral, or the Debtors shall seek or request the entry of any such order; (k) except as provided herein, the Debtors' creating or permitting to

exist any super-priority claim which is _pari_ _passu_ with or senior to the claims of the Agents or the Lenders, except for the Carve-Out; (l) the date any of the Debtors shall file, or materially support another party in interest's filing of, a pleading seeking to modify or otherwise alter any of the terms and conditions set forth in this Interim Cash Collateral Order or any other order of this Court in any of these chapter 11 cases without the prior express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (m) two (2) days after any of the Debtors uses Cash Collateral for any item other than those set forth in the Budget, except as agreed in writing in advance by the Administrative Agent, acting at the direction of the Required Lenders; (n) the date any of the Debtors (or any party with the support of any of the Debtors) shall file a plan of reorganization in any of these chapter 11 cases if such plan is not in form and substance acceptable to the Administrative Agent, acting at the direction of the Required Lenders; (o) two (2) days after any Permitted Variances under the Budget are exceeded for any period of time (other than as approved in writing by the Administrative Agent, acting at the direction of the Required Lenders); (p) any judgments are entered with respect to any post-petition liabilities against any of the Debtors or any of their respective properties that materially affects the Debtors and/or such properties; (q) the failure of the Debtors to obtain entry of the Final Order in form and substance satisfactory to the Administrative Agent in its sole discretion on or before the twenty fifth (25th) day after the Petition Date; (r) the allowance of any claim under section 506(c) of the Bankruptcy Code or otherwise against any or all of the Agents, any Lender or the Collateral; (s) the failure of the Debtors to provide prompt notice to the Administrative Agent of any of the foregoing; (t) any Weekly Counsel Report provides that fees and expenses incurred by (or expected to be incurred by) Debtors' Counsel have exceeded (or are expected to exceed) the sum of $1,550,000 in the aggregate; and (u) the date that a default,

event of default or breach occurs under that certain forbearance agreement, dated on or around the Petition Date (the "CWR Forbearance Agreement"), among the CWR Parties, the Administrative Agent, the First Lien Collateral Agent and the Required Lenders; provided, that such default, event of default or breach only shall constitute a Termination Event hereunder in the event that the CWR Parties fail to file voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court within the time period provided in the CWR Forbearance Agreement. The Debtors shall provide prompt written notice to the Administrative Agent of any Termination Event. The date of any Termination Event, with or without notice from the Debtors, is the "Termination Date".

17. Notwithstanding the provisions of Section 362 of the Bankruptcy Code, and without order of or application or motion to this Court, but subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement, in the event of a Termination Date, the automatic stay provisions of Section 362 of the Bankruptcy Code automatically will be vacated and modified to permit the Agents (at the direction of the Required Lenders) to, upon not less than five (5) calendar days prior written notice (the "Remedies Notice Period") to counsel for the Debtors, the U.S. Trustee, and counsel for the Committee (and absent appointment of any such committee, the Debtors' twenty (20) largest creditors) (unless this Court for cause orders that such time period may be shortened to avoid irreparable harm to the Collateral), exercise any and all rights and remedies allowed under the Loan Documents, applicable law, and this Interim Cash Collateral Order; provided, however, that notwithstanding the foregoing and Section 362 of the Bankruptcy Code, and without order of, or application or motion to, this Court, the occurrence of a Termination Date will immediately terminate the Debtors' use of the Cash Collateral (subject to (i) the funding of payroll in accordance with the Budget, as well as accrued and unpaid taxes

that give rise to personal liability, if any, and (ii) other expenditures critical to the preservation of the Debtors' estates as consented to, in writing, by the Agents, acting at the direction of the Required Lenders; _provided_, that such consent shall not be applicable to clause (i) of this parenthetical), unless otherwise ordered by this Court. During the Remedies Notice Period, the Debtors shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a Termination Event has occurred. Unless, during such Remedies Notice Period, this Court determines that a Termination Event has not occurred, the automatic stay imposed by Section 362 of the Bankruptcy Code shall be automatically terminated as to the Agents at the end of such Remedies Notice Period and without further notice or order (unless the Court has approved the use of Cash Collateral). Any Agent's delay or failure to exercise rights and remedies under the Loan Documents, applicable law, or this Interim Cash Collateral Order shall not constitute a waiver of such Agent's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by such Agent.

18.     This Interim Cash Collateral Order shall be sufficient and conclusive evidence of the creation, validity, enforceability, perfection and priority of the Post-Petition Liens, without the necessity of filing or recording any financing statement or other instrument or document, or taking any other act which may otherwise be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the Post-Petition Liens or to entitle the applicable Collateral Agent to the priority granted herein.

19.     The Debtors shall continue to maintain all property, operational and other insurance as specified in the Loan Documents. The Debtors shall provide each Collateral Agent and its counsel with evidence of such insurance within five (5) calendar days after entry of this Interim Cash Collateral Order. Upon entry of this Interim Cash Collateral Order, each Collateral

Agent shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the Collateral, in each case, in accordance with Section 5.05 of the Credit Agreement.

20.     Subject only to and effective only upon entry of the Final Order, the Debtors agree to forever waive and release any and all claims and causes of action against the Agents and the Lenders, whether at law or in equity, arising under or relating to Section 105 and Chapter 5 of the Bankruptcy Code and under any other similar provisions of applicable state or federal law.

21.     Without limiting the generality of Paragraph 20 hereof, subject only to and effective only upon entry of the Final Order, and to the extent provided therein, except to the extent of the Carve-Out, no costs or expenses of administration which have been or may be incurred in these chapter 11 cases, at any time, shall be charged against the Agents or the Lenders, any of their respective claims, or the Collateral (subject to the Carve-Out) pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise.

22.     Without limiting the generality of Paragraph 20 hereof, subject only to and effective only upon entry of the Final Order, the Agents shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under such Section shall not apply to the Agents (on behalf of themselves and on behalf of the applicable Lenders), with respect to proceeds, products, offspring, or profits of any of the Collateral.

23.     Absent further order of this Court, the Debtors shall not create or permit to exist any postpetition liens or encumbrances on any of their assets or property except any postpetition liens agreed to by the Agents in writing; provided, however, and notwithstanding anything to the

contrary in this Interim Cash Collateral Order, the Permitted Liens (that arose prior to the Petition Date) shall not violate this Interim Cash Collateral Order.

24.     The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral other than in the ordinary course of business, without the express prior written consent of the Agents, acting at the direction of the Required Lenders, or order of this Court.

25.     Notwithstanding the foregoing, any committee appointed under Section 1102 of the Bankruptcy Code is permitted to undertake an investigation of the facts relating to the validity, enforceability, priority or amount of the secured claims of the Agents and the Lenders. Any party (other than the Debtors, which have waived any such Challenge (as defined below) rights), including any committee appointed under Section 1102 of the Bankruptcy Code, must commence any contested matter or adversary proceeding raising any objection or challenge (a "Challenge") with respect to any claim, lien, security interest, or any other rights of the Agents and the Lenders relating to the Pre-Petition Collateral or arising under or related to the Loan Documents, as applicable, including, without limitation, in the nature of a setoff, counterclaim, or defense, on or before the earlier to occur of (a) the date that is seventy-five (75) days after entry of this Order, and (b) the date that is sixty (60) days after the appointment of the Committee, if any (the "Challenge Period"). The Challenge Period only may be extended with the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, or order of this Court. Upon the expiration of the Challenge Period, to the extent not specifically included in a timely and properly filed pleading asserting a Challenge, any possible Challenge, whether such Challenge is separately filed or otherwise asserted through an amendment of any timely and properly filed pleading asserting a Challenge, shall be deemed to

be forever waived and barred. Nothing in this Interim Cash Collateral Order vests or confers on any person, including, without limitation, any committee appointed under Section 1102 of the Bankruptcy Code or any other statutory committee that may be appointed in these chapter 11 cases, standing or authority to pursue any cause of action, claim, defense, or other right belonging to the Debtors or their estates.

26.    The terms and provisions of this Interim Cash Collateral Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Interim Cash Collateral Order, and any actions taken pursuant hereto, shall: (a) survive entry of any order that may be entered (i) converting any of these chapter 11 cases to chapter 7 cases or dismissing any of these chapter 11 cases, or (ii) confirming or consummating any plan of reorganization in any of these chapter 11 cases; and (b) shall continue in any superseding case of the Debtors under the Bankruptcy Code.

27.    For the purposes hereof, the "Carve-Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below) as determined by agreement of the U.S. Trustee or by final order of the Court; (ii) the sum of $15,000 to be allocated for the fees and expenses of a chapter 7 trustee in the event these chapter 11 cases are converted to chapter 7 cases; (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses (collectively, the "Professional Fees") incurred by (x) Debtors' Counsel, (y) Huron Consulting and Donlin Recano & Company, Inc. (together with Debtors' Counsel, collectively, the "Estate Professionals"), and (z) counsel to the Committee, and, with respect to Huron Consulting, Donlin Recano & Company, Inc. and counsel to the Committee, in an amount not to

exceed the respective amounts in the Budget, at any time before or on the first business day following delivery by the Agents (at the direction of the Required Lenders) of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) after the first business day following delivery by the Agents (at the direction of the Required Lenders) of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of Professional Fees of Debtors' Counsel in an aggregate amount not to exceed $100,000 (the "Post Carve-Out Trigger Notice Cap").   "Carve-Out Trigger Notice" means written notice delivered by the Agents (at the direction of the Required Lenders) to the Debtors and their lead counsel, the U.S. Trustee, and, if a Committee is appointed, lead counsel to the Committee appointed in these Chapter 11 Cases, which notice may be delivered following (or concurrently with) the occurrence of a Termination Date, stating that the Post Carve-Out Trigger Notice Cap has been invoked. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Loan Documents, the Carve-Out shall be senior to all liens and claims securing the Cash Collateral, the First Lien Post-Petition Unencumbered Collateral Lien, the First Lien Post-Petition Liens, the First Lien Superpriority Claim, the Second Lien Post-Petition Unencumbered Collateral Lien, the Second Lien Post-Petition Liens, the Second Lien Superpriority Claim, the Third Lien Post-Petition Unencumbered Collateral Lien, the Third Lien Post-Petition Liens, the Third Lien Superpriority Claim, and the Revolving Loans, the First Lien Term Loans, the Second Lien Term Loans, and the Third Lien Term Loans. Notwithstanding anything to the contrary herein, neither the Carve-Out nor any other Collateral may be used for the payment of any fees or disbursements incurred in connection with: (i) attempting to modify or otherwise alter any of the terms and conditions set forth in this Interim Cash Collateral Order

or in the Final Order approved by the Agents; (ii) attempting to obtain, without the express prior written consent of the Agents, acting at the direction of the Required Lenders, this Court's authorization to use Cash Collateral; provided, that the Carve-Out may be used in connection with any emergency hearing, during the Remedies Notice Period, to determine if a Termination Event has occurred; or (iii) asserting, alleging, bringing, or supporting any claim or cause of action, of any type or nature whatsoever, against any Agent or any of the Lenders, including, without limitation, challenging the amount, extent, priority, validity, enforceability, perfection or enforcement of Obligations or any of the Agents' security interests and liens or to recover any funds previously paid to the Agents or the Lenders.  This Carve-Out shall be superior to the rights of any succeeding trustee.

28.    The provisions of this Interim Cash Collateral Order shall inure to the benefit of the Debtors, the Agents, the Lenders and their respective successors and assigns (to the extent permitted under the Loan Documents), and they shall be binding upon the Debtors, the Agents, and the Lenders, and their respective successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of the Debtors or with respect to property of the Debtors' estates, whether under Chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case, and also shall be binding upon all creditors of the Debtors and all other parties-in-interest in these chapter 11 cases.

29.    If an order is entered, whether *sua sponte* by this Court or otherwise, dismissing or converting any of these chapter 11 cases, such order shall recognize that such dismissal or conversion shall not affect or diminish the Agents' or the Lenders' respective rights, priorities or remedies granted hereunder.

30.     Upon entry of this Interim Cash Collateral Order:  (a) the Debtors' admissions contained herein shall be binding on the Debtors; and (b) the obligations of the Debtors under the Loan Documents shall constitute allowed claims for all purposes in these chapter 11 cases and any subsequent chapter 7 cases.

31.     The Debtors shall indemnify and hold harmless the Agents and the Lenders in accordance with the terms of the Loan Documents.

32.     The Debtors' counsel shall serve a copy of this Interim Cash Collateral Order on all of the following parties:  (a) the Office of the U.S. Trustee; (b) counsel for the Agents; (c) the Debtors' principal equity holders; (d) all creditors known to the Debtors who may have liens on the Cash Collateral and Pre-Petition Collateral; (e) the United States Internal Revenue Service; (f) the twenty (20) largest unsecured creditors of the Debtors; and (g) all parties-in-interest who have filed a notice of appearance.

33.     The failure of the Agents or the Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Cash Collateral Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Agents or the Lenders.

34.     Notwithstanding anything herein to the contrary, the entry of this Interim Cash Collateral Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Agents' rights to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of the Agents or Lenders under the Loan Documents, the Bankruptcy Code or under applicable law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of these chapter 11 cases, conversion of any of these chapter 11 cases to cases under

chapter 7, or appointment of a chapter 11 trustee or examiner, (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization, or (iv) object to the application or motion by any Estate Professional for the payment of fees and expenses, including, without limitation, in connection with the Carve-Out; and (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Agents or Lenders.

35.     The Debtors, the Agents, and the Lenders shall be bound by and be subject to all the terms, provisions, and restrictions of the Loan Documents, except as may be expressly modified by this Interim Cash Collateral Order.

36.     The Debtors are authorized, and, to the extent expressly set forth herein, directed, to comply with the terms and conditions of this Interim Cash Collateral Order and to perform all acts and execute and comply with the terms hereof and of all such other documents, instruments and agreements as the Agents may reasonably require to effectuate the terms and conditions of this Interim Cash Collateral Order or to protect or facilitate the rights and protections granted hereby.

37.     To the extent that the Loan Documents, any other document or any other order of this Court differs from this Interim Cash Collateral Order, this Interim Cash Collateral Order shall control.

38.     The liens, security interests, rights, and remedies granted hereunder and any actions taken pursuant hereto shall survive and shall not be modified, altered, or impaired in any manner by a plan or any confirmation order, by any other financings or extensions of credit or incurring of debt by any of the Debtors or any trustee or successor-in-interest, whether pursuant to Section 364 of the Bankruptcy Code or otherwise, by the entry of an order converting any of

the chapter 11 cases to chapter 7 or dismissing any of the chapter 11 cases, by the entry of any other order, or by any act or omission whatsoever.

39.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Interim Cash Collateral Order and to adjudicate any and all disputes in connection herewith.

40.     The Clerk of this Court is hereby directed to forthwith enter this Interim Cash Collateral Order on the docket of this Court maintained in regard to these chapter 11 cases. This Interim Cash Collateral Order shall be effective upon its entry and not subject to any stay (all of which are hereby waived), notwithstanding anything to the contrary contained Bankruptcy Rules 4001(a)(3) and 6004(h).

41.     The Debtors and the Agents may, in writing, amend, modify, supplement or waive any provision of this Interim Cash Collateral Order if such amendment, modification, supplement or waiver is not material (in their good faith judgment), without any need to apply to, or receive further approval from, this Court. The Debtors shall provide the U.S. Trustee and counsel for the Committee, if any, with prior written notice of any such nonmaterial amendment, modification, supplement or waiver. Any material amendment, modification, supplement or waiver shall be in writing, signed by the Debtors and the Agents, and approved by this Court on appropriate notice by the Debtors.

42.     The Final Hearing to consider the Final Order shall take place on [_____], 2013 at [__]:00 a.m./p.m. (Prevailing Eastern Time). The Debtors shall cause a copy of this Interim Cash Collateral Order and the Motion to be served by regular first class mail upon: (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal

Revenue Service; (c) the Debtors' consolidated twenty (20) largest unsecured creditors; (d) counsel to the Agents, c/o King & Spalding LLP, Attn:  Michael C. Rupe, Esq., 1185 Avenue of the Americas, New York, New York 10036, and c/o Reed Smith LLP, Attn: Kurt F. Gwynne, Esq., 1201 Market Street, Suite 1500, Wilmington, DE 19801; and (e) those parties who have filed a notice of appearance and request for service of pleadings in the chapter 11 Cases pursuant to Bankruptcy Rule 2002 within one (1) business day of the entry hereof.  Any objections to entry of the Final Order shall be filed with the Clerk of the Court and served upon:  (i) counsel for the Debtors, Kirkland & Ellis LLP, Attn: Christopher J. Marcus, Esq. and David S. Meyer, Esq., 601 Lexington Avenue, New York, New York 10022, and Womble Carlyle Sandridge and Rice, LLP, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801, Attn: Steve Kortanek, Esq.; (ii) counsel to the Agents, c/o King & Spalding LLP, Attn:  Michael C. Rupe, Esq., 1185 Avenue of the Americas, New York, New York 10036, and c/o Reed Smith LLP, Attn: Kurt F. Gwynne, Esq., 1201 Market Street, Suite 1500, Wilmington, DE 19801; and (iii) the Office of the United States Trustee for the District of Delaware, so as to be received on or before [_____], 2013 at _:00 _.m. (Prevailing Eastern Time).

43.    Except as explicitly provided for herein, this Interim Cash Collateral Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

Dated: _____, 2013    _____
                                        The Honorable Brendan Linehan Shannon
                                        United States Bankruptcy Judge

**Exhibit 1**

**Budget**

**Promnis Solutions**
**Consolidated Cash Flow Forecast**

| | w/e 3/22/13 FCST | w/e 3/29/13 FCST | w/e 4/5/13 FCST | w/e 4/12/13 FCST | w/e 4/19/13 FCST | w/e 4/26/13 FCST | w/e 5/3/13 FCST | w/e 5/10/13 FCST | w/e 5/17/13 FCST | w/e 5/24/13 FCST | w/e 5/31/13 FCST | w/e 6/7/13 FCST | 6/14/13 | 6/21/13 | Total W/E 3/22 thru June 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash & Cash Equivalents | $3,330 | $3,670 | $3,340 | $2,599 | $2,390 | $2,390 | $2,736 | $2,684 | $2,165 | $2,320 | $2,320 | $2,192 | $2,004 | $1,061 | $ 3,330 |
| **AR Collections** | | | | | | | | | | | | | | | |
| Deposits - CVR | 745 | 639 | 645 | 623 | 657 | 639 | 639 | 631 | 516 | 270 | 215 | 90 | 161 | | 5,670 |
| Deposit - MR | 677 | 666 | 666 | 596 | 666 | 663 | 663 | 699 | 989 | 461 | 344 | 228 | 274 | | 6,450 |
| Deposit - JF | | | | 1,435 | | | | | 4,700 | | | | 1,600 | | 4,735 |
| Deposit - PD | | | | 900 | | | | 815 | | | | | 750 | | 2,4,475 |
| Deposit - MHS | | | | 50 | | | | | 50 | | | | | | 100 |
| Deposit - Other | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | | 1,320 |
| Interco Transfers | | | | | | | | | | | | | | | 135 |
| IT Migration Fees | | | | 200 | | | | | | | | | | 135 | 135 |
| Other - JF | | | | | | | | | | | | | | | 200 |
| **Total AR Collections** | 1,593 | 1,445 | 1,421 | 4,904 | 1,453 | 1,392 | 1,392 | 1,684 | 2,265 | 840 | 569 | 427 | 135 | **21,285** |
| **Cash Disbursements** | | | | | | | | | | | | | | | |
| **Employee Costs** | | | | | | | | | | | | | | | |
| Payroll | (1,630) | (1,630) | | (1,630) | | (1,999) | | | (984) | | (400) | | | (7,227) |
| Employee Benefits | (10) | (10) | (100) | (300) | (10) | (10) | (100) | (10) | (10) | (10) | (10) | (984) | (135) | (995) |
| **Non-Employee Costs** | | | | | | | | | | | | | | | |
| Title & Pub Vendors | (563) | (563) | (563) | (563) | (563) | (563) | (563) | (563) | | | | | (3,940) |
| Technology & Administrative Fees | (148) | (337) | (94) | (716) | (148) | (100) | (137) | (989) | | | | | (4,461) |
| Other Professional Fees | (10) | (115) | (10) | (10) | (143) | (115) | (35) | | | | | | (357) |
| IT Contractors | (10) | (30) | (30) | (32) | (23) | (35) | (35) | (153) | (153) | | | | (310) |
| Office Supplies & Postage | (63) | (75) | (75) | (227) | (82) | (75) | (75) | (10) | (10) | (10) | (10) | (10) | (661) |
| Legal | (35) | (35) | (35) | (350) | (35) | (35) | (10) | | | | | | (460) |
| Rent, Utilities & Bldg Costs | | (30) | | (10) | | (485) | (485) | (10) | (10) | (100) | | (10) | (1,115) |
| Travel, Meals & Entertainment | (10) | (10) | (10) | (89) | (10) | (10) | (10) | (4) | (20) | (4) | (5) | (5) | (35) | (145) |
| Telephone | (4) | (4) | (4) | (5) | (4) | (5) | (4) | (5) | (5) | (4) | (4) | (130) |
| Staffing | (5) | (5) | (5) | (5) | (5) | (5) | (5) | | | | | (90) |
| Equip, Rental and Maint. | (35) | (35) | (35) | (35) | (35) | (35) | | | | (5) | (5) | (180) |
| IT Software and Licenses | (35) | (35) | | | | | (42) | (16) | (16) | (16) | (10) | (95) |
| Insurance | (42) | | | | | | | | | (42) | (10) | (204) |
| Sales & Marketing | | | | | | | | | | | | | - |
| Other | (35) | (10) | (10) | (35) | (35) | (10) | (10) | (90) | (90) | (90) | (10) | (10) | (100) | (980) |
| Refunds and net advanced costs | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (115) |
| **Total Cash Disbursements before restructuring** | (968) | (2,731) | (1,472) | (3,098) | (1,008) | (2,913) | (2,913) | (1,581) | (1,439) | (444) | (489) | (190) | (800) | (135) | **(17,855)** |
| Change in Cash before restructuring | 535 | (1,316) | (50) | 6 | 446 | (1,521) | (1,521) | 684 | 1,535 | 699 | 80 | 237 | 1,995 | - | 3,330 |
| Other Professional Fees - Restructuring | (215) | (5) | | (5) | | (731) | (731) | (5) | (857) | (268) | (118) | (3,057) | (6,619) |
| Change in Cash after restructuring | 320 | (1,321) | (50) | (0) | 446 | (2,252) | (2,252) | 679 | 1,487 | (158) | (188) | 120 | (1,062) | - | **(2,289)** |
| Ending Cash & Cash Equivalents Before Restructuring Exp | $4,600 | $3,284 | $3,334 | $3,240 | $3,686 | $3,165 | $3,165 | $2,849 | $4,384 | $5,683 | $5,163 | $5,402 | $7,395 | $7,395 | 6,680 |
| Ending Cash & Cash Equivalents | $3,670 | $3,340 | $2,599 | $2,390 | $2,736 | $4,084 | $4,084 | $2,320 | $2,320 | $2,192 | $2,004 | $2,124 | $1,061 | $1,061 | **1,061** |
| **Restructuring and Wind-Down Related Expenses** | | | | | | | | | | | | | | | |
| U.S. Trustee Fees | | | | | | | | | | | | | | | - |
| Debtor Counsel and Costs | | | | | (75) | | (75) | | | | (75) | | | (150) |
| Lender Counsel | (350) | | | | | | | | (647) | | | (993) | | (1,559) |
| Creditor Committee Counsel | | | | | | | | | (100) | | | (200) | | (490) |
| Gleacher administrative costs | (5) | (5) | | | | | (5) | (50) | | | | (50) | | (100) |
| Debtor Financial Advisor | | | | | | | | | (60) | | | | | (100) |
| Liquidating Trustee | | | | | | | | | | | | (165) | | (125) |
| Claims Agent | (10) | | | | | | | | | | | (400) | | (400) |
| Utilities | (50) | | | (15) | | | (15) | | | (15) | | | | (50) |
| West Coast PTO | | | | | | (300) | | | | | | | | (90) |
| Management Incentive Plan (see KEIP for Schedule) | | | | | | | | | | | | | | (300) |
| Employee Retention | | | | | | (301) | (301) | | | (268) | | | (1,339) | (1,339) |
| Spot Bonuses and Retention Key Employees | | | | | | (55) | (28) | | | | (28) | | | (870) |
| | | | | | | | | | | | | | | | (110) |
| **Total Restructuring Costs** | (215) | (5) | | (15) | - | (731) | (731) | (5) | (309) | (857) | (268) | (118) | (3,057) | | **(6,619)** |

Prommis Solutions
Consolidated Cash Flow Forecast
Debtor Counsel

| Debtor Counsel - Forecasted Accrued Liabilities | w/e 3/22/13 | w/e 3/29/13 | w/e 4/5/13 | w/e 4/12/13 | w/e 4/19/13 | w/e 4/26/13 | w/e 5/3/13 | w/e 5/10/13 | w/e 5/17/13 | w/e 5/24/13 | w/e 5/31/13 | w/e 6/7/13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kirkland & Ellis | 75 | 45 | 45 | 45 | 75 | 26 | 26 | 26 | 26 | 26 | 26 | 60 | 500 |
| Womble Carlyle | 96 | 96 | 96 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 201 | 1,050 |
| Total Accrued Liabilities | 171 | 141 | 141 | 115 | 145 | 96 | 96 | 96 | 96 | 96 | 96 | 262 | 1,550 |
| Cumulative Accrued Liabilities Less Cash Payments | 171 | 311 | 452 | 567 | 712 | 808 | 904 | 1,000 | 450 | 546 | 642 | - | - |