## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROMMIS HOLDINGS, LLC, et al.,[1] | ) | Case No. 13-10551 (BLS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THEM TO (I) PERFORM CERTAIN CUSTOMER PROGRAM OBLIGATIONS AND (II) HONOR OR PAY RELATED PREPETITION OBLIGATIONS

Prommis Holdings, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), by and through their proposed undersigned counsel, file this motion (this "Motion") for entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"): (a) authorizing the Debtors to (i) maintain a certain Customer Program and (ii) honor or pay certain prepetition obligations related to the Customer Program (collectively, the "Program Obligations"); and (b) granting certain related relief.

In support of this Motion, the Debtors respectfully state as follows:[2]

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569). The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

[2] The facts and circumstances supporting this Motion are set forth in (a) the Declaration Of Charlie T. Piper In Support Of Motion Of The Debtors For An Order Authorizing Them To (i) Perform Certain Customer Program Obligations And (ii) Honor Or Pay Related Prepetition Obligations and (b) the Declaration of Charlie T. Piper in Support of Debtors' Chapter 11 Petitions and First Day Motions (the "First Day Declaration"), filed on the date hereof.

and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.        Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory bases for the relief requested herein are sections 345, 363, 364, 503, 507, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

## INTRODUCTION

4.        On the date hereof (the "Petition Date"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  Concurrently with the filing of the Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**The Prepetition Customer Program**

5.        On or about August 10, 2011, Debtor Prommis Solutions, LLC ("Prommis Solutions") and the law firm of McCalla Raymer, LLC ("McCalla") entered into (i) that certain Second Amended and Restated Services Agreement (the "MR Services Agreement"); (ii) that certain Service Fee Disbursement Agreement (the "Disbursement Agreement"); and (iii) that certain Escrow Agreement (collectively, the MR Services Agreement, the Fee Agreement, and the Escrow Agreement are referred to as the "Agreements").  Historically, McCalla has been the

6

Debtors' largest customer.

6.      Under the MR Services Agreement, McCalla contracted with Prommis Solutions for Prommis Solutions to provide to McCalla certain non-legal administrative, foreclosure, bankruptcy, and billing services. As part of the service performed under the MR Services Agreement, Prommis Solutions and McCalla agreed that Prommis Solutions would advance routine expenses and costs incidental to the foreclosure proceedings in which McCalla was serving as counsel and as to which Prommis Solutions was providing services under the MR Services Agreement (said cost advances by Prommis Solutions under the MR Services Agreements is hereinafter referred to as the "Customer Program"). These cost advances are billed to and reimbursed by the mortgage servicers as certain billing milestones in the foreclosure process are reached.

7.      The cost advances by Prommis Solutions under the Customer Program have been an integral part of the parties' contractual relationship and course of performance under the MR Services Agreement. The advances average approximately $40,000 per week. The types of costs advanced include court fees payable to the clerks of the various courts in which McCalla files foreclosure actions with support services under the MR Services Agreement, as well as costs for couriers, copying costs and other costs incidental to the foreclosure process. The costs and expenses incurred in connection with the Customer Program are incurred in the name of McCalla Raymer, inasmuch as McCalla Raymer is counsel of record in each of the foreclosure actions.  Therefore, if Prommis Solutions were to fail to pay any of the court clerks or other vendors covered by the Customer Program, those court clerks and vendors would seek recourse against McCalla Raymer.

8.      As a critical component of the Agreements, the parties provided for a

lockbox payment mechanism through the Escrow Agreement and the Disbursement Agreement. Specifically, McCalla's clients' payments for McCalla's services (which indirectly the non-legal support services provided by Prommis Solutions) are remitted to a lockbox account which is governed by the Escrow Agreement.   Pursuant to the Disbursement Agreement, the parties provide joint instructions to the Escrow Agent to direct that McCalla receive payment of its legal fees, and that Prommis Solutions receive payment of its fees and reimbursement for the cost advances made under the Customer Program.   Among other things, this lockbox mechanism provides important security for Prommis Solutions with respect to its right to reimbursement for Customer Program cost advances.

9.     A substantial portion of the costs advanced under the Customer Program consist of court fees payable to various clerks of court.   These payments are made by Prommis Solutions by check, and historically these checks often remain outstanding for a considerable period of time.   As of the Petition Date, the approximate total dollar amount of checks in float under the Customer Program (consisting mostly of court fees) is $220,000.

10.     In addition to the checks in float, Prommis Solutions estimates that there is a total of approximately $80,000 in accrued but not yet billed costs under the Customer Program as of the Petition Date (the accrued but unpaid costs, together with the checks in float, are collectively referred to as the "Customer Program Payables.")

**Assignment of the MR Services Agreement and Continued Prommis Solutions Support**

11.     Prior to the Petition Date, Prommis Solutions and Cal-Western Reconveyance Corp. ("Cal-West")(a non-debtor direct subsidiary of Prommis Solutions) entered into (i) an Assignment and Assumption Agreement (the "Assignment Agreement"), (ii) a Services Agreement (the "CWR Services Agreement") and (iii) a Software License Agreement,

in each case, dated as of March 17, 2013 (Collectively, the "CWR Continuity Agreements"). The CWR Continuity Agreements are designed to maximize value for the sale process being undertaken by the CWR Subsidiaries outside of bankruptcy, by adding the MR Services Agreement to the going concern value of the CWR Subsidiaries.[3]  Notwithstanding the assignment of the MR Services Agreement, Prommis remains fully obligated to perform the services under the MR Services Agreement, by virtue of the CWR Services Agreement. Prommis Solutions will continue during the term of the CWR Services Agreement to perform at the high service level for which the Debtors are known.  In particular, Prommis will continue to be fully obligated to continue the Customer Program for the benefit of McCalla.  Prommis will also continue to carry out its obligations (and now on behalf of Cal-Western under the MR Services Agreement) with respect to the Escrow Agreement and the Disbursement Agreement.

12.    To continue to serve McCalla as required by the MR Services Agreement, it is essential that Prommis Services be permitted to continue to perform all services required in connection with the Customer Program, including, without limitation, payment of the Program Obligations on behalf of McCalla and McCalla's clients, whether in advance or in arrears, and including Program Obligations that arose before the Petition Date.  In particular, the Debtors are concerned about the significant disruption to its operations – and the prospect of being unable to perform under the CWR Services Agreement – if this Motion is not granted.

13.    The result of such non-performance likely would cause Prommis Services to breach the CWR Services Agreement, causing Cal-West to default under the MR Services

---

[3]    Pursuant to terms agreed upon with the Agents and the Lenders, the Consent and Forbearance Ageement dated as of March 18, 2013, as well as the Stipulation And Agreed [Proposed] Interim Order Authorizing The Debtors' Use Of Cash Collateral, provide that proceeds of a CWR Subsidiaries sale that are attributable to the MR Services Agreement will be allocated and paid to Prommis Solutions, LLC.  Therefore, continued support by Prommis Solutions following the assignment of the MR Services Agreement will likely be directly acretive to the value available to Prommis Solutions as proceeds from a disposition of the MR Services Agreement.

Agreement and to be at risk of incurring significant monetary damages and severely damaging the Debtors' optionality in these cases.

## BASIS FOR RELIEF

14.     The Debtors submit that an order authorizing them to continue their Customer Program as the Debtors determine to be appropriate, to honor and pay, in their discretion, the Program Obligations, is necessary and in the best interests of the Debtors' estates and creditor constituencies.

**A.      The "Doctrine of Necessity" Provides a Basis for the Relief
          Requested with Respect to the Honoring of Customer Obligations Generally**

15.     Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Bankruptcy Code section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a).

16.     Bankruptcy Code section 105(a) grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

17.     Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operations of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191–92

(Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted). The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in <u>Miltenberger v. Logansport, C. & S.W.R. Co.,</u> 106 U.S. 286, 1 S. Ct. 140, 27 L. Ed. 117 (1882). "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." <u>In re Just for Feet, Inc.,</u> 242 B.R. 821, 825 (D. Del. 1999). "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 – a successful reorganization." Id. at 825–26.

18.    Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. <u>See</u> <u>In re Columbia Gas Sys., Inc.,</u> 136 B.R. 930, 939 (Bankr. D. Del. 1992) <u>(citing In re Lehigh & New England Rwy. Co.,</u> 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.").

11.    The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108, and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's

duty. See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

12.     This Motion satisfies the foregoing criteria, as the relief sought herein is essential to the Debtors' efforts to preserve the valuable customer relationship with McCalla under the MR Services Agreement.

13.     The Debtors' ability to preserve and maximize value, including going concern value, is dependent in considerable measure upon the support and confidence of McCalla, which is the Debtors' (and their affiliates') largest customer. Were the Debtors to fail to honor the Program Obligations, in the ordinary course and without interruption, they would almost certainly jeopardize valuable assets of the Debtors and suffer a loss of critical postpetition revenue.

14.     Moreover, the expenditure of estate funds required to honor the Program Obligations is minimal when compared to the benefits accruing to the Debtors from the preservation of the relationship with McCalla. It is also important to emphasize that the subject cost advances are subject to the existing lockbox mechanism, significantly increasing the likelihood that the Debtors' estates will receive full reimbursement in a timely manner. Accordingly, to preserve the value of their estates, the Debtors request that they be permitted to continue honoring and/or paying all Program Obligations under the Customer Program without interruption or modification. In addition, to provide necessary assurances to the Debtors' customers on a prospective basis, the Debtors request authority to continue

honoring or paying all obligations in connection with the Customer Program from and after the Petition Date, as appropriate under the circumstances.[4]

15.    The Debtors propose a $335,000 cap (the "Program Obligations Cap") on the total value of Program Obligations.  By this Motion, the Debtors request that they be authorized to pay Program Obligations in an amount not to exceed the Program Obligations Cap, without the need for any further order of the Court, in accordance with the proposed form of order annexed hereto.

16.    Courts in this District regularly have authorized debtors to honor and pay obligations to customers arising prior to and after the filing of their chapter 11 cases in the ordinary course of business. See, e.g., In re Summit Business Media Holding Co., No. 11-10231 (PJW) (Bankr. D. Del. Jan. 28, 2011); In re CB Holding Corp., No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010); In re Atrium Corp., No.10-10150 (BLS) (Bankr. D. Del. Jan. 21, 2010); In re The Fairchild Corp., No. 09-10899 (CSS) (Bankr. D. Del. March 20, 2009); In re Smurfit-Stone Container Corp., No. 09-10235 (BLS) Bankr. D. Del. Feb. 23, 2009); In re Tribune Co., No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); In re Boscov's Inc., No. 08-11637 (KG) (Bankr. D. Del. Aug. 5, 2008).

**B.    Request for Authority for Wells Fargo to Honor and Pay Checks Issued and Funds Transfers with Respect to the Obligations under the CWR Services Agreement**

17.    In addition, by this Motion, the Debtors request that Wells Fargo be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to

---

[4]    The Debtors believe that, pursuant to Bankruptcy Code section 363(b) and other governing statutory and case law, they possess the authority to continue such Customer Programs without an express grant of authority from the Court, but seek such approval out of an abundance of caution to provide further assurances to their customers that these programs will continue to be available.

the CWR Service Agreement and the MR Service Agreement, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of obligations under the CWR Service Agreement. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

18.    Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtors would constitute a claim under the Customer Program; or (e) the assumption, or request to assume, any executory contract or unexpired lease under Bankruptcy Code section 365.

## REQUESTS FOR IMMEDIATE RELIEF & WAIVER OF STAY

19.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (a) immediate entry of an order granting the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the

14

twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

20. As set forth above and the First Day Declaration, the payment of the Customer Obligations is necessary to prevent the immediate and potentially irreparable damage to the Debtors' ability to administer these cases and to preserve their assets and maximize the value available to stakeholders. Accordingly, the Debtors submit that ample cause exists to justify: (a) the immediate entry of an order granting the relief sought herein; and (b) a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**NOTICE**

21. The Debtors have provided notice of the Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the Largest Thirty (30) Unsecured Claims; (c) counsel to the Agent for the Debtors' prepetition secured lenders; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Delaware Secretary of State; and (g) the Delaware Secretary of Treasury. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, (a) granting the relief sought herein and (b) granting such other and further relief to the Debtors as the Court may deem proper.

Dated:  March 18, 2013

**WOMBLE CARLYLE SANDRIDGE
& RICE, LLP**

/s/ Steven K. Kortanek
Steven K. Kortanek (DE Bar No. 3106)
Thomas M. Horan (DE Bar No. 4641)
Ericka F. Johnson (DE Bar No. 5024)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: skortanek@wcsr.com
E-mail: thoran@wcsr.com
E-mail: erjohnson@wcsr.com

-and-

**KIRKLAND & ELLIS LLP**
Christopher Marcus, P.C. (*pro hac vice* pending)
David S. Meyer (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
E-mail: jonathan.henes@kirkland.com
E-mail: christopher.marcus@kirkland.com
E-mail: david.meyer@kirkland.com

*Proposed Counsel to the Debtors and Debtors-
in-Possession*

WCSR  7699597v3

16