**EXHIBIT "A"**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PROMMIS HOLDINGS, LLC, et al.,[1] | ) | Case No. 13-10551 (BLS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS
### (A) AUTHORIZING THE USE OF CASH COLLATERAL;
### (B) GRANTING ADEQUATE PROTECTION; (C) MODIFYING
### THE AUTOMATIC STAY; AND (D) SCHEDULING A FINAL HEARING

Prommis Holdings, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of interim and final orders pursuant to sections 105(a), 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") (a) authorizing the Debtors to use Cash Collateral (as defined in section 363(a) of the Bankruptcy Code);[2] (b) authorizing the Debtors to provide adequate protection to the Agents (as defined herein) and the Lenders (as defined herein); (c) modifying the automatic stay; and (d) scheduling a final hearing. In support of the Motion, the Debtors submit the Declaration of Charles T. Piper in

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569). The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

[2]    Section 363(a) of the Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).


#14
3/18/13

Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), filed contemporaneously herewith.    In further support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 361, 362, 363, and 507(a) of the Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Introduction[3]

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  Concurrently with the filing of the Motion, the Debtors have requested procedural consolidation and joint administration of these chapter 11 cases.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

---

[3]    A description of the Debtors' businesses, the reasons for commencing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into chapter 11 are set forth in the First Day Declaration.

## Relief Requested

5.      By this Motion, and pursuant to sections 105(a), 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 9013, and 9014, and Local Rules 4001-2 and 9013-1, the Debtors request entry of the proposed interim order (the "Interim Order"), substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to use Cash Collateral; (b) authorizing the Debtors to provide adequate protection to the Agents and the Lenders for any diminution in value of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral; (c) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order; and (d) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion on a final basis and the entry of a final order (the "Final Order").

### Concise Statements of Relief Requested
### in Accordance with Bankruptcy Rule 4001 and Local Rule 4001-2

6.      Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following are the material provisions of the Interim Order.

          a.      Bankruptcy Rule 4001 Concise Statements.

| Entities with Interest in Cash Collateral<br>*Bankruptcy Rule 4001(b)(1)(B)(i)* |
|---|
| The Administrative Agent, the First Lien Collateral Agent (for the benefit of the First Lien Lenders), the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders), and the Third Lien Collateral Agent (for the benefit of the Third Lien Lenders). |
| See Interim Order at ¶ H-S. |
| **Use of Cash Collateral**<br>*Bankruptcy Rule 4001(b)(1)(B)(ii)* |
| The Debtors shall be authorized to use the Cash Collateral in accordance with the Budget. |
| See Interim Order at ¶ 4-7. |

## Material Terms, Including Termination Date of Use of Cash Collateral
*Bankruptcy Rule 4001(b)(1)(B)(iii)*

The Debtors shall be authorized to use the Cash Collateral in accordance with the Budget during the period from the Petition Date until the Termination Date.

<u>See</u> Interim Order at ¶ 4-7; ¶ 16.

## Adequate Protection for the Agents for the Benefit of the Lenders
*Bankruptcy Rule 4001(b)(1)(B)(iv)*

### Post-Petition Unencumbered Collateral Liens

The Collateral Agents (for the benefit of their respective Lenders) shall be granted, in their respective priorities pursuant to the Credit Agreement and the Intercreditor Provisions (subject to the Pre-Petition Liens, where applicable, the Permitted Encumbrances, and the Carve-Out), Post-Petition Unencumbered Collateral Liens on the Post-Petition Collateral.

<u>See</u> Interim Order at ¶ 9(a)(i); ¶ 9(b)(i); ¶ 9(c)(i).

### Post-Petition Liens

The Collateral Agents (for the benefit of their respective Lenders) shall be granted, in their respective priorities pursuant to the Credit Agreement and the Intercreditor Provisions, Post-Petition Liens on the Collateral, including, subject to and only effective upon entry of the Final Order, the proceeds of any claims or causes of action arising under sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (other than those arising under section 549 of the Bankruptcy Code).

<u>See</u> Interim Order at ¶ 9(a)(ii); ¶ 9(b)(ii); ¶ 9(c)(ii).

### Superpriority Claims

The Collateral Agents (for the benefit of their respective Lenders) shall be granted, in their respective priorities pursuant to the Credit Agreement and the Intercreditor Provisions, Superpriority Claims (subject only to the Carve-Out) in amounts equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases.

<u>See</u> Interim Order at ¶ 9(a)(iii); ¶ 9(b)(iii); ¶ 9(c)(iii).

### Reporting

The Debtors will provide the Administrative Agent with certain reporting on the terms and conditions set forth in the Interim Order.

<u>See</u> Interim Order at ¶ 11-14.

### Fees, Costs, and Expenses of the Agents

The Debtors will pay the Agents, in cash on a current basis, all reasonable and documented out-of-pocket fees, costs, and expenses of the Agents' legal and business advisors, incurred prior to and on and after the Petition Date.

<u>See</u> Interim Order at ¶ 15.

## Carve-Out
*Bankruptcy Rule 4001(b)(1)(B)*

For the purposes hereof, the "<u>Carve-Out</u>" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below) as determined by agreement of the U.S. Trustee or by final order of the Court; (ii) the sum of $15,000 to be allocated for the fees and expenses of a chapter 7 trustee in the event these chapter 11 cases are converted to chapter 7 cases; (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses (collectively, the "<u>Professional Fees</u>") incurred by (x) Debtors' Counsel, (y) Huron Consulting and Donlin Recano & Company, Inc. (together with Debtors' Counsel, collectively, the "<u>Estate Professionals</u>"), and (z) counsel to the Committee,

and, with respect to Huron Consulting, Donlin Recano & Company, Inc. and counsel to the Committee, in an amount not to exceed the respective amounts in the Budget, at any time before or on the first business day following delivery by the Agents (at the direction of the Required Lenders) of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) after the first business day following delivery by the Agents (at the direction of the Required Lenders) of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of Professional Fees of Debtors' Counsel in an aggregate amount not to exceed $100,000 (the "Post Carve-Out Trigger Notice Cap"). "Carve-Out Trigger Notice" means written notice delivered by the Agents (at the direction of the Required Lenders) to the Debtors and their lead counsel, the U.S. Trustee, and, if a Committee is appointed, lead counsel to the Committee appointed in these Chapter 11 Cases, which notice may be delivered following (or concurrently with) the occurrence of a Termination Date, stating that the Post Carve-Out Trigger Notice Cap has been invoked. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Loan Documents, the Carve-Out shall be senior to all liens and claims securing the Cash Collateral, the First Lien Post-Petition Unencumbered Collateral Lien, the First Lien Post-Petition Liens, the First Lien Superpriority Claim, the Second Lien Post-Petition Unencumbered Collateral Lien, the Second Lien Post-Petition Liens, the Second Lien Superpriority Claim, the Third Lien Post-Petition Unencumbered Collateral Lien, the Third Lien Post-Petition Liens, the Third Lien Superpriority Claim, and the Revolving Loans, the First Lien Term Loans, the Second Lien Term Loans, and the Third Lien Term Loans. Notwithstanding anything to the contrary herein, neither the Carve-Out nor any other Collateral may be used for the payment of any fees or disbursements incurred in connection with: (i) attempting to modify or otherwise alter any of the terms and conditions set forth in [the Interim Order] or in the Final Order approved by the Agents; (ii) attempting to obtain, without the express prior written consent of the Agents, acting at the direction of the Required Lenders, this Court's authorization to use Cash Collateral; provided, that the Carve-Out may be used in connection with any emergency hearing, during the Remedies Notice Period, to determine if a Termination Event has occurred; or (iii) asserting, alleging, bringing, or supporting any claim or cause of action, of any type or nature whatsoever, against any Agent or any of the Lenders, including, without limitation, challenging the amount, extent, priority, validity, enforceability, perfection or enforcement of Obligations or any of the Agents' security interests and liens or to recover any funds previously paid to the Agents or the Lenders. This Carve-Out shall be superior to the rights of any succeeding trustee.

See Interim Order at ¶ 27.

    b.    Local Rule 4001-2 Concise Statements.

| **Cross-Collateralization Provisions**<br>*Local Rule 4001-2(a)(i)(A)* |
| --- |
| Not Applicable |
| **Binding Findings of Fact, Stipulations, and Waivers**<br>*Local Rule 4001-2(a)(i)(B)* |
| Pursuant to the Interim Order, the Debtors stipulate to the following: |

- The Debtors are the owners of the revenues from their businesses and all such revenues are property of their estates, subject to the liens of the Agents.

  See Interim Order at ¶ H.

- Prior to the Petition Date, Prommis Fin Co., a Delaware corporation, as borrower (the "Borrower"), the other Debtors, as guarantors, the Administrative Agent, each Collateral Agent and the Lenders party thereto entered into that certain *Credit and Guaranty Agreement,* dated as of June 12, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement").

  See Interim Order at ¶ I.

- Each of (i) Prommis Holdings, LLC, a Delaware limited liability company, (ii) Prommis Solutions, LLC, a Delaware limited liability company, (iii) E-Default Services LLC, a Delaware limited liability company, (iv) Statewide Tax and Title Services LLC, a Delaware limited liability company, (v) Statewide Tax and Title Services of Alabama LLC, an Alabama limited liability company, (vi) Statewide Publishing Services

LLC, a Delaware limited liability company, (vii) Nationwide Trustee Services, Inc., a Tennessee corporation, (viii) Nationwide Trustee Services of Virginia, Inc., a Virginia corporation, (ix) Cal-Western Reconveyance Corporation, a California corporation, (x) Cal-Western Reconveyance Corporation of Washington, a Washington corporation, (xi) Reliable Reconveyance Corporation, a California corporation, (xii) Interface Inc., a California corporation, and (xiii) Prommis Homeownership Solutions, Inc., a California corporation, is a guarantor of the Borrower's obligations under the Credit Agreement pursuant to the terms thereof.

See Interim Order at ¶ J.

- The Credit Agreement and the other agreements, documents, instruments and certificates executed by the Debtors or otherwise delivered in connection with the Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "Loan Documents") are valid and enforceable in accordance with their terms against each of the Debtors, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance, subordination, recharacterization or other challenge pursuant to applicable state or federal law (including, without limitation, the Bankruptcy Code).

See Interim Order at ¶ K.

- Pursuant to the terms of the Loan Documents, certain of the Lenders (collectively, the "Revolving Lenders") agreed to provide the Borrower with revolving loans up to $10,000,000 (the "Revolving Loans"). In addition: (i) certain of the Lenders (collectively, the "First Lien Term Loan Lenders"; together with the Revolving Lenders, the "First Lien Lenders") agreed to provide the Borrower with a first lien term loan in an original principal amount of $15,000,000 (the "First Lien Term Loans"); (ii) certain of the Lenders (collectively, the "Second Lien Lenders") agreed to provide the Borrower with a second lien term loan in an original principal amount of $30,000,000 (the "Second Lien Term Loans"); and (iii) certain of the Lenders (collectively, the "Third Lien Lenders") agreed to provide the Borrower with a third lien term loan in an original principal amount of $15,000,000 (the "Third Lien Term Loans"). As of the Petition Date, the Debtors were indebted to the Lenders under the Loan Documents in the approximate outstanding principal amount of no less than $73,979,885.12, together with all other liabilities and obligations of the Debtors arising out of or in connection with the Credit Agreement and the other Loan Documents, including, but not limited to, all accrued and unpaid interest, fees, costs and expenses including professional fees (collectively, the "Obligations;" the Obligations owing to the First Lien Lenders are referred to herein as the "First Lien Obligations;" the Obligations owing to the Second Lien Lenders are referred to herein as the "Second Lien Obligations;" and the Obligations owing to the Third Lien Lenders are referred to herein as the "Third Lien Obligations"). As of the Petition Date, the aggregate outstanding amount of the Revolving Loans was no less than $10,000,000, the aggregate outstanding amount of the First Lien Term Loans was no less than $15,964,329.25, the aggregate outstanding amount of the Second Lien Term Loans was no less than $32,010,370.59, and the aggregate outstanding amount of the Third Lien Term Loans was no less than $16,005,185.28.

See Interim Order at ¶ L.

- The Obligations are legal, binding and enforceable obligations of the Debtors and not subject to any offset, defense, claim, counterclaim or any other diminution of any type, kind or nature whatsoever. No portion of the Obligations, or any funds previously paid to the Agents or the Lenders, is subject to avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code (including, but not limited to, Section 502(d) of the Bankruptcy Code) or applicable non-bankruptcy law.

See Interim Order at ¶ M.

- Each of the First Lien Obligations, the Second Lien Obligations and the Third Lien Obligations are secured by separate security interests in substantially all of each of the Debtors' assets, including, without limitation, accounts, equipment, inventory, personal property, general intangibles, chattel paper, contracts, deposit accounts, equity interests, fixtures, instruments, intercompany obligations, investment property, patent, trademark and copyright collateral, documents and records, and all proceeds, products, rents and profits of the foregoing, but excluding the Excluded Assets (as defined below) (collectively, the "Pre-Petition Collateral"), and have the respective lien priorities described in paragraphs P, Q and R [of the

Interim Order]. "Excluded Assets" means the Excluded Deposit Accounts and the Excluded Equipment and Inventory.

See Interim Order at ¶ N.

- Each Collateral Agent filed UCC-1 Financing Statements regarding the Pre Petition Collateral against the Debtors in the applicable state filing office.

  See Interim Order at ¶ O.

- The liens and security interests of the First Lien Collateral Agent in the Pre-Petition Collateral (the "First Lien Pre-Petition Liens") are: (i) senior in priority to the security interests of all other persons except for the security interests permitted to exist under Section 6.02 of the Credit Agreement ("Permitted Encumbrances"), to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law.

  See Interim Order at ¶ P.

- The liens and security interests of the Second Lien Collateral Agent in the Pre-Petition Collateral (the "Second Lien Pre-Petition Liens") are: (i) senior in priority to the security interests of all other persons except for (a) the First Lien Pre-Petition Liens, and (b) Permitted Encumbrances, to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law.

  See Interim Order at ¶ Q.

- The liens and security interests of the Third Lien Collateral Agent in the Pre-Petition Collateral (the "Third Lien Pre-Petition Liens"; together with the First Lien Pre-Petition Liens and the Second Lien Pre-Petition Liens, collectively, the "Pre-Petition Liens") are: (i) senior in priority to the security interests of all other persons except for (a) the First Lien Pre-Petition Liens, (b) the Second Lien Pre-Petition Liens and (c) Permitted Encumbrances, to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law

  See Interim Order at ¶ R.

- As of the Petition Date, the Collateral Agents and the Lenders are holders of secured claims against the Debtors and, as such, are entitled to adequate protection of their interests in the Cash Collateral and Pre-Petition Collateral pursuant to Section 363(e) of the Bankruptcy Code.

  See Interim Order at ¶ S.

**Section 506(c) Waiver**
*Local Rule 4001-2(a)(i)(C)*

Upon entry of the Final Order.

See Interim Order at ¶ 21.

**Liens on Chapter 5 Causes of Action**
*Local Rule 4001-2(a)(i)(D)*

Liens on proceeds of chapter 5 causes of action upon entry of the Final Order.

See Interim Order at ¶ 9(a)(ii), 9(b)(ii), and 9(c)(iii).

| Provisions that Use Postpetition Loans From a Prepetition Secured Creditor to Pay Part or All of that Secured Creditor's Prepetition Debt (Other than as Provided in Section 552(b) of the Bankruptcy Code *Local Rule 4001-2(a)(i)(E)* |
|---|
| Not Applicable. |

| Provisions that Provide Disparate Treatment for Professionals Retained by a Creditors' Committee and those Professionals Retained by the Debtor in Connection with a Carve-Out *Local Rule 4001-2(a)(i)(F)* |
|---|
| The fees and expenses of any committee appointed in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code will be subject to the Budget and the fees and expenses of the advisors to any such committee are not included in the Post-Carve-Out Trigger Notice Cap. <br><br> <u>See</u> Interim Order at ¶ 27. |

| Non-Consensual Priming Liens *Local Rule 4001-2(a)(i)(G)* |
|---|
| Not Applicable. |

### Summary of the Debtors' Prepetition Capital Structure

7.    As more fully set forth in the First Day Declaration, the Debtors' prepetition capital structure consists of three tranches of secured debt, and, as of the Petition Date, the Debtors were indebted to the Lenders under the Loan Documents (as defined herein) in the approximate principal outstanding amount of no less than $73,979,885.12.

**I.    First Lien Revolving Credit Facility**

8.    Prior to the Petition Date, Prommis Fin Co., a Delaware corporation, as borrower (the "<u>Borrower</u>"), the other Debtors and non-debtors Cal-Western Reconveyance Corp., Cal-Western Reconveyance Corp. of Washington, and Reliable Reconveyance Corp. (each a direct or indirect subsidiary of Debtor Prommis Solutions, LLC, and collectively, the "<u>CWR Subsidiaries</u>"), as guarantors, Gleacher Products Corp., in its capacities as the administrative agent (in such capacity, the "<u>Administrative Agent</u>"), as first lien collateral agent (in such capacity, the "<u>First Lien Collateral Agent</u>"), as second lien collateral agent (in such capacity, the "<u>Second Lien Collateral Agent</u>"), and as third lien collateral agent (in such capacity, the "<u>Third Lien Collateral Agent</u>," together with the First Lien Collateral Agent and the Second

Lien Collateral Agent, the "Collateral Agents," and with the Administrative Agent and the Collateral Agents, collectively, the "Agents"), on behalf of the Lenders party to that certain Credit and Guaranty Agreement, dated as of June 12, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement," and, together with all associated agreements, instruments and documents, the "Loan Documents"), entered into the Credit Agreement.

9.      Pursuant to the terms of the Loan Documents, certain of the Lenders (collectively, the "Revolving Lenders") agreed to provide the Borrower with revolving loans up to $10,000,000 (the "Revolving Loans") on a first lien basis. As of the Petition Date, the aggregate outstanding amount of the Revolving Loans was no less than $10,000,000 plus all accrued and unpaid interest, fees, costs, and expenses including professionals fees (collectively, the "Revolving Loan Obligations").

**II.      First Lien Term Loan**

10.      Certain of the Lenders (together with the Revolving Lenders, the "First Lien Lenders") agreed to provide the Borrower with a first lien term loan in an original principal amount of $15,000,000 (the "First Lien Term Loans"). As of the Petition Date, the aggregate outstanding amount of the First Lien Term Loans was no less than $15,964,329.25 plus all accrued and unpaid interest, fees, costs, and expenses including professionals fees (and with the Revolving Loan Obligations, collectively, the "First Lien Obligations").

**III.      Second Lien Term Loan**

11.      Certain of the Lenders (collectively, the "Second Lien Lenders") agreed to provide the Borrower with a second lien term loan in an original principal amount of $30,000,000 (the "Second Lien Term Loans"). As of the Petition Date, the aggregate

outstanding amount of the Second Lien Term Loans was no less than $32,010,370.59 plus all accrued and unpaid interest, fees, costs, and expenses including professionals fees (collectively, the "Second Lien Obligations").

**IV.    Third Lien Term Loan**

12.    Certain of the Lenders (collectively, the "Third Lien Lenders") agreed to provide the Borrower with a third lien term loan in an original principal amount of $15,000,000 (the "Third Lien Term Loans"). As of the Petition Date, the aggregate outstanding amount of the Third Lien Term Loans was no less than $16,005,185.28 plus all accrued and unpaid interest, fees, costs, and expenses including professionals fees (collectively, the "Third Lien Obligations").

**V.    Collateral for the Credit Facility**

13.    Each of the First Lien Obligations, the Second Lien Obligations and the Third Lien Obligations are secured by separate security interests in substantially all of each of the Debtors and the non-debtor CWR Subsidiaries' assets, including, without limitation, accounts, equipment, inventory, personal property, general intangibles, chattel paper, contracts, deposit accounts, equity interests, fixtures, instruments, intercompany obligations, investment property, patent, trademark and copyright collateral, documents and records, and all proceeds, products, rents and profits of the foregoing, but excluding the Excluded Assets (collectively, the "Pre-Petition Collateral").[4]

14.    The liens and security interests of the First Lien Collateral Agent (for the benefit of the First Lien Lenders), the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders), and the Third Lien Collateral Agent (for the benefit of the Third Lien Lenders) in the

---

[4]    "Excluded Assets" means the Excluded Deposit Accounts and the Excluded Equipment and Inventory.

Pre-Petition Collateral (the "Pre-Petition Liens"), each with the respective priorities afforded to such lenders under the Credit Agreement and the relevant intercreditor provisions contained therein (the "Intercreditor Provisions"),[5] are (a) senior in priority to the security interests of all other persons and (b) valid, enforceable, binding and properly perfected.

15.    As of the Petition Date, the Agents and the Lenders are holders of secured claims against the Debtors and, as such, are entitled to adequate protection of their interests in the Cash Collateral and Pre-Petition Collateral pursuant to Section 363(e) of the Bankruptcy Code.

### The Proposed Use of Cash Collateral

16.    The Debtors do not have available sources of working capital and financing to continue to operate their businesses without the use of Cash Collateral. Specifically, the Debtors require access to Cash Collateral to, among other things, (a) make payments to vendors, suppliers and employees, (b) satisfy the ordinary costs of the Debtors' operations, and (c) fund the administrative costs of these chapter 11 cases, including implementing the proposed sale of all or substantially all of their assets and commencing an orderly wind-down of their businesses, as may be necessary. In the absence of the authority to use Cash Collateral, the Debtors will not be able to operate their businesses and the Debtors' enterprise would suffer severe and irreparable harm through an immediate destruction of value. Accordingly, the authority to use Cash Collateral is imperative to the Debtors' ability to preserve value and maximize recoveries to their stakeholders.

17.    Recognizing the importance of obtaining authority to continue to use Cash Collateral, the Debtors approached the Agents before the commencement of these chapter 11

---

[5]    Schedule 11.01 of the Credit Agreement, among other things, outlines the Intercreditor Provisions, which in part provide: (a) the relative rights of the First Lien Lenders, the Second Lien Lenders, and the Third Lien Lenders and their respective Collateral Agents; and (b) the relative priorities of the First Lien Obligations, the Second Lien Obligations, and the Third Lien Obligations.

cases to discuss the terms on which the Lenders would agree to allow the Debtors to use Cash Collateral. After extensive good-faith, arms'-length negotiations between the Agents (on behalf of the Lenders) and the Debtors, the Agents and the Debtors agreed on the terms set forth in the proposed Interim Order, approval of which will allow the Debtors to transition smoothly into these chapter 11 cases, continue operating their businesses, and undertake the aforementioned dual-track approach to maximize value for all stakeholders. Specifically, the Debtors are authorized to use Cash Collateral up to the amounts, and only for the purposes set forth in the budget (the "Budget"), which is attached hereto as Exhibit 1 to Exhibit A. The Interim Order authorizes the Debtors to use Cash Collateral commencing on the Petition Date through the Expiration Date[6] or the occurrence of a Termination Event.[7]

---

[6]    As more fully described in the Interim Order, the "Expiration Date" shall mean July 12, 2013; provided, however, that the Expiration Date may be extended with the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, without further order of this Court following the Debtors providing written notice of the extension of the Expiration Date to the U.S. Trustee and any committee appointed in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.

[7]    As more fully described in the Interim Order, "Termination Event" shall mean: (a) the Expiration Date; (b) reversal, vacatur, or modification, in whole or in part, of the Interim Order or any other order of this Court in any of these chapter 11 cases or any subsequent chapter 7 cases without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (c) (i) dismissal of any of these chapter 11 cases or conversion of any of these chapter 11 cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with expanded powers or other responsible person in any of these chapter 11 cases without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, (ii) termination of the exclusive period for the Debtors to file a chapter 11 plan in these chapter 11 cases or any subsequent chapter 7 cases, or (iii) the Debtors seek or request the entry of any order to effect any of the events described in subclause (i) of this clause (c) without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (d) the entry by this Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code sought by any party that materially affects the Debtors' property, without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (e) five (5) business days after written notice to the Debtors of the failure by the Debtors to make any payment required pursuant to the Interim Order when due (during which time the Debtors may cure subject to any extensions of the due date); (f) five (5) business days after written notice to the Debtors of (i) the failure by the Debtors to deliver to the Agents any of the documents or other information required to be delivered pursuant to the Interim Order when due (during which time the Debtors may cure) or (ii) the fact that any such documents or other information contains a misrepresentation of a material fact (g) two (2) business days after the Debtors' failure to adhere to the Budget, subject to Permitted Variances, as provided for in the Interim Order; (h) except as set forth in the Interim Order, five (5) business days after written notice from either (i) the Administrative Agent to the Debtors, or (ii) the Debtors to the Administrative Agent, in each case, of the failure by the Debtors to observe or perform any of the terms or provisions contained in the Interim Order or any other order of this Court in any of these chapter 11 cases or any subsequent chapter 7 cases; (i) the entry of an order of this Court approving the terms of any debtor-in-possession financing for any of the Debtors,

18.    Of note, the CWR Subsidiaries, in consultation with the Lenders, elected not to commence chapter 11 cases and to instead pursue a strategic transaction outside of chapter 11. The CWR Subsidiaries' boards of directors, Prommis, and Prommis' senior management team believe that a sale of the CWR Subsidiaries as a going-concern outside of chapter 11 will maximize value for all stakeholders.    In furtherance of their goal to maximize value for all stakeholders, the Debtors assigned their services agreement with McCall Raymer, LLC, one of their leading law firm customers, to the CWR Subsidiaries (the "MR Assignment").    As further described in the Interim Order, any proceeds generated by a going-concern sale of the CWR Subsidiaries attributable to the MR Assignment will be allocated and paid to Debtor Prommis

---

or the Debtors shall seek or request the entry of any such order, in each case, without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (j) except as provided in the Interim Order, the entry of an order of this Court granting any lien on or security interest in any of the Collateral that is pari passu with or senior to the Agents' respective liens on or security interests in the Collateral, or the Debtors shall seek or request the entry of any such order; (k) except as provided in the Interim Order, the Debtors' creating or permitting to exist any super-priority claim which is pari passu with or senior to the claims of the Agents or the Lenders, except for the Carve-Out; (l) the date any of the Debtors shall file, or materially support another party in interest's filing of a pleading, seeking to modify or otherwise alter any of the terms and conditions set forth in the Interim Order or any other order of this Court in any of these chapter 11 cases without the prior express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; m) two (2) business days after any of the Debtors uses Cash Collateral for any item other than those set forth in the Budget, except as agreed in writing in advance by the Administrative Agent, acting at the direction of the Required Lenders; (n) the date any of the Debtors (or any party with the support of any of the Debtors) shall file a chapter 11 plan in any of these chapter 11 cases if such plan is not in form and substance acceptable to the Administrative Agent, acting at the direction of the Required Lenders; (o) (2) business days after any Permitted Variances under the Budget are exceeded for any period of time (other than as approved in writing by the Administrative Agent, acting at the direction of the Required Lenders; (p) any judgments are entered with respect to any post-petition liabilities against any of the Debtors or any of their respective properties that materially affects the Debtors and/or such properties; (q) the failure of the Debtors to obtain entry of the Final Order in form and substance satisfactory to the Administrative Agent in its sole discretion on or before the twenty fifth (25th) day after the Petition Date; (r) the allowance of any claim under section 506(c) of the Bankruptcy Code or otherwise against any or all of the Agents, any Lender or the Collateral; (s) the failure of the Debtors to provide prompt notice to the Administrative Agent of any of the foregoing; (t) any Weekly Counsel Report (as defined herein provides that fees and expenses incurred by (or expected to be incurred by) Debtors' Counsel have exceeded (or are expected to exceed) the sum of $1,550,000 in the aggregate; and (u) the date that a default, event of default or breach occurs under that certain forbearance agreement, dated on or around the Petition Date (the "CWR Forbearance Agreement"), among the CWR Subsidiaries, the Administrative Agent, the First Lien Collateral Agent and the Required Lenders; provided, that such default, event of default or breach only shall constitute a Termination Event hereunder in the event that the CWR Subsidiaries fail to file voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court within the time period provided in the CWR Forbearance Agreement.  The date at which the Agents (acting at the direction of the Required Lenders) elect to terminate the Debtors' use of Cash Collateral based on the occurrence of any Termination Event is the "Termination Date."

Solutions, LLC and then distributed to the Agents and the Lenders, within one business day after the Debtors' receipt of such proceeds, and will then be applied to the First Lien Obligations, the Second Lien Obligations, and the Third Lien Obligations in accordance with the Loan Documents.

### Proposed Adequate Protection

19.    Pursuant to Sections 361 and 363 of the Bankruptcy Code, as adequate protection against any diminution in value of the interests of the Lenders in the Pre-Petition Collateral, resulting from (a) the Debtors' use of the Pre-Petition Collateral and the Cash Collateral and (b) the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, the First Lien Collateral Agent (for the benefit of the First Lien Lenders), the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders), and the Third Lien Collateral Agent (for the benefit of the Third Lenders), shall be granted, all as more fully described in the Interim Order, in their respective priorities pursuant to the Credit Agreement and the Intercreditor Provisions:

a.    priority (subject to the Pre-Petition Liens, where applicable, the Permitted Encumbrances and the Carve-Out) liens (the "Post-Petition Unencumbered Collateral Liens") on all of the Debtors' assets and property that are not otherwise encumbered by valid, binding, enforceable and nonavoidable liens and security interests, including, but not limited to, any and all real, personal, tangible, or intangible property of the Debtors' estates, wherever located and of whatever kind or nature and any and all proceeds, products, cash, distributions, checks, negotiable instruments, securities, debt or equity, and other cash equivalents now or hereafter received by the Debtors in respect of any of the foregoing items, but excluding intent-to-use trademark or service mark applications (collectively, the "Post-Petition Collateral"), whether arising from Section 552(b) of the Bankruptcy Code or otherwise;

b.    valid, enforceable and non-avoidable replacement liens (together with the Post-Petition Unencumbered Collateral Liens, the "Post-Petition Liens") on all assets and property of each of the Debtors other than Excluded Assets that are already encumbered as of the Petition Date (collectively, the "Existing Lien Collateral" and, together with Post-Petition Collateral, the "Collateral"), including, subject to and only effective upon entry of the Final Order, the proceeds of any claims or causes of action under sections

541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (other than those arising under section 549 of the Bankruptcy Code); and

c.     allowed superpriority administrative expense claims pursuant to section 507(b) of the Bankruptcy Code (the "Superpriority Claims") (subject only to the Carve-Out) in amounts equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases.

20.     Additionally, the Debtors will provide the Administrative Agent with certain reporting (the "Reporting") on the terms and conditions set forth in the Interim Order. Specifically, the Debtors will:

a.     provide the Administrative Agent's counsel of record, via e-mail upon their filing, with copies of the monthly operating reports required to be filed by the U.S. Trustee;

b.     provide the Administrative Agent with weekly financial reports, which include (a) a 13-week cash flow projection and an accompanying variance report, and (b) such other information as agreed to by Debtors and the Administrative Agent;

c.     provide the Agents with such other information as may be reasonably requested by the Agents;

d.     authorize and cause their accountants, consultants, and financial advisors to cooperate with the Agents and provide the Agents with all information pertinent to the Debtors' businesses, which is reasonably requested by the Agents, but for such information, which the Debtors believe, based on the advice of counsel, is subject to attorney-client privilege; and

e.     provide the Agents with a written report on the Tuesday of each week during the Budget Period (as defined in the Interim Order) (each a "Weekly Counsel Report") that sets forth:

i.     the aggregate amount of fees and expenses incurred by each of Kirkland & Ellis LLP and Womble Carlyle Sandridge and Rice, LLP, co-counsel to the Debtors (collectively "Debtors' Counsel"), during the pendency of these chapter 11 cases;

ii.     the amount of fees and expenses incurred by each such counsel during the immediately preceding week (*i.e.*, Monday through and including Sunday);

15

iii.   the amount of any retainer held by each such counsel, as of the date of such Weekly Counsel Report; and

iv.   each Debtors' Counsel's goof-faith estimate of the amount of fees and expenses expected to be incurred by such counsel during the following two week period (*i.e.*, that first Monday of such period through and including the second Sunday of such period).

Furthermore, as more fully described in the Interim Order, in the event that any Weekly Counsel Report provides that the amount of fees and expenses incurred by Debtors' Counsel has reached $1,300,000, the Agents (acting at the direction of the Required Lenders) and the Debtors will meet and confer to discuss a potential modification of the Budget regarding the fees and expenses of Debtors' Counsel.

21.    Finally, the Debtors will provide the Agents with payment of all reasonable and documented out-of-pocket fees, costs, and expenses of the Agents' legal and business advisors in cash (the "Fee Payments" and with the Post-Petition Liens, the Superpriority Claims, and the Reporting, collectively, the "Proposed Adequate Protection").

### Consent by the Agents and Lenders
### to the Use of Cash Collateral and the Proposed Adequate Protection

22.    As noted above, pursuant to the Credit Agreement and Intercreditor Provisions, the Agents and the Lenders maintain the Pre-Petition Liens as security interests in the Pre-Petition Collateral, including the Cash Collateral. The Agents and the Lenders have agreed and consented to the Debtors' use of Cash Collateral and the proposed adequate protection as set forth in the Interim Order.

### Basis for Relief Requested

**I.    The Use of Cash Collateral is Warranted and Should be Approved.**

23.    The Debtors' use of property of their estates, including the Cash Collateral, is governed by section 363 of the Bankruptcy Code, which provides in relevant part that:

> If the business of the debtor is authorized to be operated under section ... 1108 ... of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

24.    Absent the use of Cash Collateral, the Debtors will not have sufficient working capital to (a) make payments to vendors, suppliers and employees, (b) satisfy ordinary operating costs, and (c) fund the administrative costs of these chapter 11 cases, including implementing the proposed sale of all or substantially all of their assets and commencing an orderly wind-down of their businesses, if necessary. Furthermore, as discussed above, and in accordance with section 362(c)(2) of the Bankruptcy Code, the Agents (acting on behalf of the Lenders) have consented to the Debtors' use of Cash Collateral pursuant to the terms of the Interim Order, including the Budget. Accordingly, the Debtors submit that the use of Cash Collateral is in the best interests of the Debtors' estates and should be approved.

**II.    The Proposed Adequate Protection Should be Approved.**

25.    Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property used ... or proposed to be used by a debtor in possession, the court ... shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest."

26.    What constitutes sufficient adequate protection is decided on a case-by-case basis. See In re Columbia Gas Sys., Inc., 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); see

also In re Martin, 761 F.2d 472 (8th Cir. 1985); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Sw. Assocs., 140 B.R. 360 (Bankr. S.D.N.Y. 1992).   By adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in its collateral during the period of a debtor's use.   See In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); In re Hubbard Power & Light, 202 B.R. 680 (Bankr. E.D.N.Y. 1996). Adequate protection can come in various forms, including payment of adequate protection fees, payment of interest, granting of replacement liens, and administrative claims.

27.     Here, as more fully set forth in the Interim Order and as summarized above, the Debtors agreed to provide the Agents and the Lenders with, among other things, five primary forms of adequate protection to protect the Lenders from any diminution in the value of the Pre-Petition Collateral and the Cash Collateral.

28.     First, subject to the Pre-Petition Liens, where applicable, the Permitted Encumbrances, and the Carve-Out, the Debtors will provide the First Lien Collateral Agent (for the benefit of the First Lien Lenders), the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders), and the Third Lien Collateral Agent (for the benefit of the Third Lien Lenders) with Post-Petition Unencumbered Collateral Liens on the Post-Petition Collateral, with such liens subject to the respective priorities afforded to such lenders under the Credit Agreement and the Intercreditor Provisions.

29.     Second, subject to the Carve-Out, the Debtors will provide the First Lien Collateral Agent (for the benefit of the First Lien Lenders), the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders), and the Third Lien Collateral Agent (for the benefit of the Third Lien Lenders) with Post-Petition Liens on the Collateral, with such liens subject to

the respective priorities afforded to such lenders under the Credit Agreement and the Intercreditor Provisions, provided that the Post-Petition Liens on the proceeds of any claims or causes of action commenced by the Debtors pursuant to sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b), and 553 of the Bankruptcy Code or any other section of the Bankruptcy Code (other than section 549 of the Bankruptcy Code) shall be subject to and effective only upon entry of the Final Order.

30.     Third, subject to the Carve-Out, the Debtors will provide the First Lien Collateral Agent (for the benefit of the First Lien Lenders), the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders), and the Third Lien Collateral Agent (for the benefit of the Third Lien Lenders) with Superpriority Claims in amounts equal to the diminution in value of the Pre-Petition Collateral and the Cash Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases, with such Superpriority Claims subject to the respective priorities afforded to such lenders under the Credit Agreement and the Intercreditor Provisions.

31.     Fourth, the Debtors will provide the Reporting to the Administrative Agent on the terms set forth in the Interim Order, specifically monthly and weekly financial reports to ensure the Debtors' compliance with the Budget. Furthermore, the Debtors will cause their accountants, consultants, and financial advisors to cooperate with the Agents and provide the Agents with all information pertinent to the Debtors' businesses which is reasonably requested by the Agents; provided that the Debtors will not provide such information that they believe, based on the advice of counsel, is subject to attorney-client privilege.

32.     <u>Fifth</u>, the Debtors will provide the Agents with the Fee Payments, paying all reasonable and documented out-of-pocket fees, costs, and expenses of the Agents' legal and business advisors in cash.

33.     In light of the foregoing, the Debtors submit, and the Agents (on behalf of the Lenders) agree, that the Proposed Adequate Protection is both necessary and appropriate under the circumstances of these chapter 11 cases to ensure the Debtors can continue to have access to and the ability to use Cash Collateral.   Accordingly, the Debtors submit that the Proposed Adequate Protection is (a) fair and reasonable, (b) necessary to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and (c) in the best interests of the Debtors and their estates.   Moreover, Courts in this district have granted similar relief in other recent chapter 11 cases.   See e.g., In re Masonite Corp., Case No. 09-10844 (PJW) (Bankr. D. Del. March 17, 2009) (interim order); In re Monaco Coach Com., Case No. 09-10750 (KJC) (Bankr. D. Del. Mar. 10, 2009) (interim order); In re Spansion Inc., Case No. 09-10690 (KJC) (Bankr. D. Del. Mar. 4, 2009) (interim order); In re Muzak Holdings LLC, Case No. 09-10422 (KJC) (Bankr. D. Del. Feb. 12, 2009) (interim order); In re Hawaiian Telcom Commun's, Inc., Case No. 08-13086 (PJW) (Bankr. D. Del. Dec. 3, 2008); In re DBSI, Inc., Case No. 08-12687 (PJW) (Bankr. D. Del. Dec. 8, 2008); In re Intermet Corp., Case No. 08-11859 (KG) (Bankr. D. Del. Sept. 19, 2008) (amended Nov. 14, 2008); In re Tropicana Entm't, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008).

## **Request For Immediate Relief Pending Final Hearing**

34.     Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion for use of cash collateral, may be held no earlier than fifteen days after service of such motion.  Bankruptcy Rule 4001(b)(2), however, empowers a court to conduct a preliminary expedited hearing on the

motion and to authorize of the use of cash collateral on an interim basis, to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

35.    Pursuant to Bankruptcy Rule 4001(b), the Debtors request that (a) the Court authorize the Debtors to use Cash Collateral pursuant to the terms of the Interim Order which will (i) allow the Debtors to operate their businesses in the ordinary course in order to preserve value so they can implement the proposed sale of all or substantially all of their assets and commence an orderly wind-down of their businesses, as may be necessary, and (ii) prevent immediate and irreparable harm and prejudice to the Debtors' estates, and (b) schedule the Final Hearing.

36.    Absent the Court's authorization to use Cash Collateral on an interim basis, pending a Final Hearing, the Debtors will suffer immediate and irreparable harm.  As set forth herein, the Debtors' ability to use Cash Collateral pursuant to the Budget is necessary for the continued operation of the Debtors' businesses.    Furthermore, absent the working capital provided by the Cash Collateral, the Debtors will be unable to pay employees, vendors, and suppliers, or fund the costs of their day-to-day operations, causing the Debtors' enterprise to suffer immediate and irreparable harm.  Therefore, the Debtors respectfully request entry of the Interim Order.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

37.    Under Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr.

S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)); see also Fed. R. Bankr. P. 6003, Committee Notes (noting that cases applying Bankruptcy Rule 4001(b)(2) and (c)(2) may "provide guidance" for relief under Bankruptcy Rule 6003).

38.     As described herein and in the First Day Declaration, the Debtors' ability to use Cash Collateral is critical to their ability operate their businesses, transition smoothly into these chapter 11 cases and, implement their dual-track approach for the benefit of their estates and all their stakeholders.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, the requirements of Bankruptcy Rule 6003(b) are satisfied.

### Waiver of Bankruptcy Rule 4001(a)(3)

39.     The Debtors request a waiver of the stay of the effectiveness of the order approving the Motion under Bankruptcy Rule 4001(a)(3).  Bankruptcy Rule 4001(a)(3) provides "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 4001(a)(3).  As set forth herein, the use of Cash Collateral is necessary to allow the Debtors to operate their businesses and transition smoothly into these chapter 11 cases and, thereafter, undertake their dual-track approach for the benefit of their estates and all interested stakeholders.   Furthermore, allowing the Debtors' use of Cash Collateral will prevent irreparable harm to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify the waiver of the fourteen day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

## Notice

40.    The Debtors have provided notice of the Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the Largest 30 Unsecured Claims; (c) counsel to the agent for the Debtors' prepetition secured lenders; (d) the Internal Revenue Service; (e) the Securities and Exchange Commission; (f) the Delaware Secretary of State; and (g) the Delaware Secretary of Treasury.  In light of the nature of the relief requested, the Debtors submit that no other or further notice of the Interim Order need be provided.

41.    The Debtors further request that, at the Interim Hearing, the Court schedule the Final Hearing.  Following the Interim Hearing, the Debtors propose to serve notice of the Final Hearing (the "Final Hearing Notice") on (i) the Office of the United States Trustee for the District of Delaware; (ii) the creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (iii) all parties requesting notice pursuant to Bankruptcy Rule 2002; and (iv) all parties known to hold security interests or liens in the Cash Collateral.

## No Prior Request

42.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully requests (i) entry of the Interim Order; (ii) the scheduling of a Final Hearing; (iii) final approval of the use of Cash Collateral following such Final Hearing; and (iv) such other and further relief as is just and proper under the circumstances.

Dated: March 22, 2013

**WOMBLE CARLYLE SANDRIDGE & RICE. LLP**

/s/ Steven K. Kortanek
Steven K. Kortanek (DE Bar No. 3106)
Thomas M. Horan (DE Bar No. 4641)
Ericka F. Johnson (DE Bar No. 5024)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: skortanek@wcsr.com
E-mail: thoran@wcsr.com
E-mail: erjohnson@wcsr.com

-and-

**KIRKLAND & ELLIS LLP**
Christopher Marcus, P.C. (*pro hac vice* pending)
David S. Meyer (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
E-mail: christopher.marcus@kirkland.com
E-mail: david.meyer@kirkland.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

## Exhibit A

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROMMIS HOLDINGS, LLC, et al.,[1] | Case No. 13-10551 (BLS) |
| Debtors. | (Joint Administration Requested) |
| | **Re: D.I. _____** |

## STIPULATION AND AGREED INTERIM ORDER
## <u>AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL</u>

Upon the motion (the "<u>Motion</u>") of the Debtors, as debtors and debtors-in-possession, for, among other things, an interim order (this "<u>Interim Cash Collateral Order</u>"), pursuant to Section 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq</u>. (the "<u>Bankruptcy Code</u>"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), authorizing the Debtors' use of cash collateral on an interim basis pending a final hearing on the Motion (the "<u>Final Hearing</u>"), for the entry of a final order (the "<u>Final Order</u>"), providing adequate protection to Gleacher Products Corp., in its capacities as the administrative agent (in such capacity, the "<u>Administrative Agent</u>"), as first lien collateral agent (in such capacity, the "<u>First Lien Collateral Agent</u>"), as second lien collateral agent (in such capacity, the "<u>Second Lien Collateral Agent</u>"), and as third lien collateral agent (in such capacity, the "<u>Third Lien Collateral</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569). The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

Agent"; together with the First Lien Collateral Agent and the Second Lien Collateral Agent, the "Collateral Agents"; the Administrative Agent and the Collateral Agents are collectively referred to herein as the "Agents"), on behalf of the Lenders[2] under the Credit Agreement (as defined below), and granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that the relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtors and is in the best interests of the Debtors, their estates, and their creditors; and due notice of the Motion having been given to (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) counsel for the Agents, (iii) the Debtors' principal equity holders, and (iv) the Debtors' twenty (20) largest creditors; and a hearing on the Motion having been held by this Court on March 19, 2013 (the "Interim Hearing"); and upon the record of the Interim Hearing and the arguments of counsel made at the Interim Hearing; and it appearing that under the circumstances the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing has been given pursuant to Bankruptcy Rule 4001 and all applicable Local Rules; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:[3]

A.      Jurisdiction over the Motion is proper pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Loan Documents (as defined herein), as applicable.

[3]   Where appropriate in this Interim Cash Collateral Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

B.      The statutory predicate for the relief sought in the Motion is Section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

C.      On March 18, 2013 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and have continued to manage and operate each of their businesses and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

D.      The use of Cash Collateral (as defined below) is in the best interest of, and will benefit, the Debtors, their estates, and their creditors.  The relief requested in the Motion is necessary, essential and appropriate for the preservation of the Debtors' estates and the operation of their businesses.  Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion.

E.      The Agents have consented to the Debtors' limited use of the Cash Collateral based solely upon the protections, terms and conditions provided for in this Interim Cash Collateral Order and for the limited period from the Petition Date through May 18, 2013 (the "Budget Period").

F.      The terms of this Interim Cash Collateral Order were negotiated in good faith and at arm's-length between the Debtors and the Agents, and entering into this Interim Cash Collateral Order is a prudent exercise of the Debtors' business judgment.

G.      Without the use of Cash Collateral, the Debtors will not have the funds necessary to pay post-petition vendors and other expenses of the Debtors' businesses.  Immediate and irreparable loss or damage will be caused to the Debtors' estates if the relief requested in the Motion is not granted.

IT IS HEREBY STIPULATED, CONSENTED AND AGREED BY THE UNDERSIGNED PARTIES THAT:

3

H.    The Debtors are the owners of the revenues from their businesses and all such revenues are property of their estates, subject to the liens of the Agents.

I.    Prior to the Petition Date, Prommis Fin Co., a Delaware corporation, as borrower (the "Borrower"), the other Debtors, as guarantors, the Administrative Agent, each Collateral Agent and the Lenders party thereto entered into that certain *Credit and Guaranty Agreement,* dated as of June 12, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement").

J.    Each of (i) Prommis Holdings, LLC, a Delaware limited liability company, (ii) Prommis Solutions, LLC, a Delaware limited liability company, (iii) E-Default Services LLC, a Delaware limited liability company, (iv) Statewide Tax and Title Services LLC, a Delaware limited liability company, (v) Statewide Tax and Title Services of Alabama LLC, an Alabama limited liability company, (vi) Statewide Publishing Services LLC, a Delaware limited liability company, (vii) Nationwide Trustee Services, Inc., a Tennessee corporation, (viii) Nationwide Trustee Services of Virginia, Inc., a Virginia corporation, (ix) Cal-Western Reconveyance Corporation, a California corporation, (x) Cal-Western Reconveyance Corporation of Washington, a Washington corporation, (xi) Reliable Reconveyance Corporation, a California corporation, (xii) Interface Inc., a California corporation, and (xiii) Prommis Homeownership Solutions, Inc., a California corporation, is a guarantor of the Borrower's obligations under the Credit Agreement pursuant to the terms thereof.

K.    The Credit Agreement and the other agreements, documents, instruments and certificates executed by the Debtors or otherwise delivered in connection with the Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, collectively, the "Loan Documents") are valid and enforceable in accordance with their terms

4

against each of the Debtors, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance, subordination, recharacterization or other challenge pursuant to applicable state or federal law (including, without limitation, the Bankruptcy Code).

L.    Pursuant to the terms of the Loan Documents, certain of the Lenders (collectively, the "Revolving Lenders") agreed to provide the Borrower with revolving loans up to $10,000,000 (the "Revolving Loans").  In addition: (i) certain of the Lenders (collectively, the "First Lien Term Loan Lenders"; together with the Revolving Lenders, the "First Lien Lenders") agreed to provide the Borrower with a first lien term loan in an original principal amount of $15,000,000 (the "First Lien Term Loans"); (ii) certain of the Lenders (collectively, the "Second Lien Lenders") agreed to provide the Borrower with a second lien term loan in an original principal amount of $30,000,000 (the "Second Lien Term Loans"); and (iii) certain of the Lenders (collectively, the "Third Lien Lenders") agreed to provide the Borrower with a third lien term loan in an original principal amount of $15,000,000 (the "Third Lien Term Loans").  As of the Petition Date, the Debtors were indebted to the Lenders under the Loan Documents in the approximate outstanding principal amount of no less than $73,979,885.12, together with all other liabilities and obligations of the Debtors arising out of or in connection with the Credit Agreement and the other Loan Documents, including, but not limited to, all accrued and unpaid interest, fees, costs and expenses including professional fees (collectively, the "Obligations"; the Obligations owing to the First Lien Lenders are referred to herein as the "First Lien Obligations"; the Obligations owing to the Second Lien Lenders are referred to herein as the "Second Lien Obligations"; and the Obligations owing to the Third Lien Lenders are referred to herein as the "Third Lien Obligations").  As of the Petition Date, the aggregate outstanding

amount of the Revolving Loans was no less than $10,000,000, the aggregate outstanding amount of the First Lien Term Loans was no less than $15,964,329.25, the aggregate outstanding amount of the Second Lien Term Loans was no less than $32,010,370.59, and the aggregate outstanding amount of the Third Lien Term Loans was no less than $16,005,185.28.

M.      The Obligations are legal, binding and enforceable obligations of the Debtors and not subject to any offset, defense, claim, counterclaim or any other diminution of any type, kind or nature whatsoever.  No portion of the Obligations, or any funds previously paid to the Agents or the Lenders, is subject to avoidance, recharacterization, recovery, disallowance or subordination pursuant to the Bankruptcy Code (including, but not limited to, Section 502(d) of the Bankruptcy Code) or applicable non-bankruptcy law.

N.      Each of the First Lien Obligations, the Second Lien Obligations and the Third Lien Obligations are secured by separate security interests in substantially all of each of the Debtors' assets, including, without limitation, accounts, equipment, inventory, personal property, general intangibles, chattel paper, contracts, deposit accounts, equity interests, fixtures, instruments, intercompany obligations, investment property, patent, trademark and copyright collateral, documents and records, and all proceeds, products, rents and profits of the foregoing, but excluding the Excluded Assets (as defined below) (collectively, the "Pre-Petition Collateral"), and have the respective lien priorities described in paragraphs P, Q and R below. "Excluded Assets" means the Excluded Deposit Accounts and the Excluded Equipment and Inventory.

O.      Each Collateral Agent filed UCC-1 Financing Statements regarding the Pre-Petition Collateral against the Debtors in the applicable state filing office.[4]

---

[4]   Copies of each of these UCC-1 Financing Statements will be provided to the Court, if necessary,

P.    The liens and security interests of the First Lien Collateral Agent in the Pre-Petition Collateral (the "First Lien Pre-Petition Liens") are:  (i) senior in priority to the security interests of all other persons except for the security interests permitted to exist under Section 6.02 of the Credit Agreement ("Permitted Encumbrances"), to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law.

Q.    The liens and security interests of the Second Lien Collateral Agent in the Pre-Petition Collateral (the "Second Lien Pre-Petition Liens") are:  (i) senior in priority to the security interests of all other persons except for (a) the First Lien Pre-Petition Liens, and (b) Permitted Encumbrances, to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law.

R.    The liens and security interests of the Third Lien Collateral Agent in the Pre-Petition Collateral (the "Third Lien Pre-Petition Liens"; together with the First Lien Pre-Petition Liens and the Second Lien Pre-Petition Liens, collectively, the "Pre-Petition Liens") are:  (i) senior in priority to the security interests of all other persons except for (a) the First Lien Pre-Petition Liens, (b) the Second Lien Pre-Petition Liens and (c) Permitted Encumbrances, to the extent the Permitted Encumbrances are valid, enforceable and are perfected and are not subject

upon request.

to avoidance, subordination, recharacterization or other challenge, in each case as of the Petition Date; and (ii) valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law

S.     As of the Petition Date, the Collateral Agents and the Lenders are holders of secured claims against the Debtors and, as such, are entitled to adequate protection of their interests in the Cash Collateral and Pre-Petition Collateral pursuant to Section 363(e) of the Bankruptcy Code.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

### General Provisions

1.     The Motion is approved and granted on an interim basis as set forth below.

2.     For purposes of this Interim Cash Collateral Order, cash collateral shall consist of: (a) all cash collateral as defined in Section 363(a) of the Bankruptcy Code; and (b) all proceeds of the Collateral (as defined below) (collectively, "Cash Collateral").  Cash Collateral shall be subject to the terms and conditions of this Interim Cash Collateral Order.

3.     Any use of Cash Collateral since the Petition Date is hereby authorized pursuant to the applicable provisions of Section 363(c) of the Bankruptcy Code and Bankruptcy Rule 4001(b), and all adequate protection provided for herein is enforceable to the extent of any use of the Cash Collateral and the Pre-Petition Collateral by the Debtors since the Petition Date.

### The Budget

4.     Attached hereto as Exhibit 1 is a 13-week budget which reflects the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Budget Period (as amended or extended with the express prior written consent of the Administrative

Agent, acting at the direction of the Required Lenders, the "Budget"). The Budget is an integral part of this Interim Order and has been relied upon by the Agents and the Lenders to permit the use of Cash Collateral. The Debtors represent and warrant to the Agents and the Lenders that the Budget includes and contains the Debtors' best estimate of all operational receipts and all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Budget and that such operational disbursements, fees, costs and other expenses that will be timely paid in the ordinary course of business pursuant to and in accordance with the Budget unless such operational disbursements, fees, costs and other expenses are not incurred or otherwise payable. For purposes of this Interim Cash Collateral Order, the term "Required Lenders" means, as of any date of determination, First Lien Lenders holding more than 50% of the sum of (i) the aggregate outstanding Revolving Loans, and (ii) the aggregate outstanding First Lien Term Loans. For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Budget includes not only the anticipated cumulative cash receipts and expenditures of the Debtors, but also the anticipated cumulative cash receipts and expenditures of Cal-Western Reconveyance Corporation, Reliable Reconveyance Corporation and Cal-Western Reconveyance Corporation of Washington (collectively, the "CWR Parties"), and the CWR Parties shall be included for purposes of determining Budget compliance hereunder.

5.      During the Budget Period, the Debtors are authorized to use Cash Collateral for "Permitted Expenditures," which consist solely of cash disbursements consistent with and pursuant to the line items set forth in the Budget; provided, however, that: (a) the Debtors may not exceed Permitted Expenditures that, on a rolling basis, relate to the Debtors' use of Cash Collateral with respect to any Permitted Expenditures in excess of 110% of the cumulative,

aggregate amount set forth in the Budget (except with respect to the fees of Debtors' Counsel (as defined below), which amount shall not be in excess of 130% of the amount set forth in the Budget for any two (2) week period, except that, if the aggregate amount of such fees for any such two (2) week period is less than 100% of the amount set forth in the Budget for such fees during such period, the difference (for the avoidance of doubt, calculated without multiplying such difference by 130%) will be carried forward and available to the Debtors to pay fees and expenses of Debtors Counsel in any subsequent two (2) week period until used); provided, however, that Permitted Expenditures comprised of fees of Estate Professionals (as defined below) other than Debtors' Counsel may not exceed 100% of the cumulative amount set forth in the Budget for such fees; (b) the Debtors shall not fail actually to realize at least 90% of the cumulative "Total AR Collections" reflected in the Budget (collectively, the "Permitted Variances"); (c) with respect to the payment of any amounts under any Key Employee Incentive Plan ("KEIP") or Key Employee Retention Plan ("KERP"), such KEIP or KERP, as applicable, has been approved by the Required Lenders and this Court and the Debtors only shall pay such amounts to the extent the applicable conditions precedent with respect thereto have been satisfied; and (d) the proceeds of the sale(s) of any assets transferred by the Debtors prior to the Petition Date to the CWR Parties in connection with the sale of the assets and/or equity of the CWR Parties (as described in the CWR Forbearance Agreement (as defined herein)) shall be distributed to the Agents for the benefit of the Lenders, within one (1) business day after the Debtors' receipt thereof, and then applied to the Obligations in accordance with the Loan Documents. Notwithstanding the foregoing, the Debtors are authorized to pay any statutory fees or interest to the U.S. Trustee (to the extent required by applicable law) when such fees or interest become due and payable, regardless of the amount for which such fees or interest have

been budgeted.  The Debtors may amend the Budget without further Court approval with the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, and upon providing written notice to the U.S. Trustee and counsel to the Committee, if appointed.

6.      The Debtors agree that they will not use the Cash Collateral except as set forth herein and in the Budget (subject to Permitted Variances).  The Debtors will continue to use the Cash Collateral pursuant to the cash management system in place immediately prior to the Petition Date, subject to and in compliance with the requirements of Section 345 of the Bankruptcy Code and subject to any order of the Court (in a form acceptable to the Administrative Agent at the direction of the Required Lenders) regarding such cash management (collectively, "DIP Accounts").

7.      The Agents and the Lenders shall have no obligation with respect to the Debtors' use of the proceeds of the Cash Collateral and shall not be obligated to ensure or monitor the Debtors' compliance with the Budget or to pay (directly or indirectly from the Collateral) any expenses incurred or authorized to be incurred pursuant to the Budget.

## Adequate Protection

8.      The Agents and the Lenders are entitled, pursuant to Sections 361 and 363(c)(2) and (e) of the Bankruptcy Code to adequate protection of their interests in the Cash Collateral and Pre-Petition Collateral in an amount equal to the diminution in value of the Cash Collateral and Pre-Petition Collateral on and after the Petition Date.  As such, the Agents and the Lenders shall receive the adequate protection liens and claims set forth in paragraph 9 herein.

9.      As additional adequate protection:

11

(a)     the First Lien Collateral Agent (for the benefit of the First Lien Lenders) hereby is granted, in an amount equal to the diminution in value of the First Lien Collateral Agent's interest in the Cash Collateral and the Pre-Petition Collateral on and after the Petition Date:

(i)     a first priority (subject to Permitted Encumbrances and the Carve-Out) lien (the "First Lien Post-Petition Unencumbered Collateral Lien") on all of the Debtors' assets and property that is not otherwise encumbered by valid, binding, enforceable and nonavoidable liens and security interests, including, but not limited to, any and all real, personal, tangible, or intangible property of the Debtors' estates, wherever located and of whatever kind or nature and any and all proceeds, products, cash, distributions, checks, negotiable instruments, securities, debt or equity, and other cash equivalents now or hereafter received by the Debtors in respect of any of the foregoing items, but excluding intent-to-use trademark or service mark applications (collectively, the "Post-Petition Collateral"), whether arising from Section 552(b) of the Bankruptcy Code or otherwise;

(ii)     a replacement lien (together with the First Lien Post-Petition Unencumbered Collateral Lien, the "First Lien Post-Petition Liens") on all assets and property of each of the Debtors, other than intent-to-use trademark or service mark applications, that is already encumbered as of the Petition Date (collectively, the "Existing Lien Collateral" and, together with Post-Petition Collateral, the "Collateral") by a valid, enforceable and nonavoidable lien.  For clarity, and not by way of limitation, the First Lien Post-Petition Liens on any Collateral: (A) encumber the proceeds of the Debtors' claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 or any other avoidance actions under the Bankruptcy Code, and such lien is senior to and primes the liens and security interests of the Agents on and in the Pre-Petition Collateral; (B) are and will be senior to any liens preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code; and (C) are subordinate only to the Permitted Encumbrances on such Collateral and the Carve-Out, are valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law; provided, however, that the First Lien Post-Petition Liens on the proceeds of the claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code  or any other avoidance actions under the Bankruptcy Code (other than Section 549) shall be effective only upon entry of the Final Order; and

      (iii)        an allowed superpriority administrative expense claim (the "First Lien Superpriority Claim") (subject only to the Carve-Out) in an amount equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases, including all claims of the kind specified under Sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall have recourse to and be payable from all of the Collateral.

    (b)       the Second Lien Collateral Agent (for the benefit of the Second Lien Lenders) hereby is granted, in an amount equal to the diminution in value of the Second Lien Collateral Agent's interest in the Cash Collateral and the Pre-Petition Collateral on and after the Petition Date:

      (i)        a second priority lien (subject to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out) (the "Second Lien Post-Petition Unencumbered Collateral Lien") on all of the Post-Petition Collateral;

      (ii)        a replacement lien (together with the Second Lien Post-Petition Unencumbered Collateral Lien, the "Second Lien Post-Petition Liens") on all of the Existing Lien Collateral. For clarity, and not by way of limitation, the Second Lien Post-Petition Liens: (A) encumber the proceeds of the Debtors' claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 or any other avoidance actions under the Bankruptcy Code, and such lien is senior to and primes the liens and security interests of the Agents on and in the Pre-Petition Collateral; (B) are and will be senior to any liens preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code; and (C) are subordinate only to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out, are valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law; provided, however, that the Second Lien Post-Petition Liens on the proceeds of the claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (other than Section 549) shall be effective only upon entry of the Final Order; and

      (iii)        an allowed superpriority administrative expense claim (the "Second Lien Superpriority Claim") (subject only to the First

Lien Superpriority Claim and the Carve-Out) in an amount equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases, including all claims of the kind specified under Sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall have recourse to and be payable from all of the Collateral, subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement.

(c)    the Third Lien Collateral Agent (for the benefit of the Third Lien Lenders) hereby is granted, in an amount equal to the diminution in value of the Third Lien Collateral Agent's interest in the Cash Collateral and the Pre-Petition Collateral on and after the Petition Date:

(i)    a third priority lien (subject to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, the Second Lien Post-Petition Liens, the Second Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out) (the "Third Lien Post-Petition Unencumbered Collateral Lien"; together with the First Lien Post-Petition Unencumbered Collateral Liens and the Second Lien Post-Petition Unencumbered Collateral Liens, collectively, the "Post-Petition Unencumbered Collateral Liens") on all of the Post-Petition Collateral;

(ii)    a lien (together with the Third Lien Post-Petition Unencumbered Collateral Lien, the "Third Lien Post-Petition Liens"; the First Lien Post-Petition Liens, the Second Lien Post-Petition Liens and the Third Lien Post-Petition Liens are collectively referred to herein as the "Post-Petition Liens") on all of the Existing Lien Collateral. For clarity, and not by way of limitation, the Third Lien Post-Petition Liens: (A) encumber the proceeds of the Debtors' claims and causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 or any other avoidance actions under the Bankruptcy Code, and such lien is senior to and primes the liens and security interests of the Agents on and in the Pre-Petition Collateral; (B) are and will be senior to any liens preserved for the benefit of the Debtors' estates pursuant to Section 551 of the Bankruptcy Code; and (C) are subordinate only to the First Lien Post-Petition Liens, the First Lien Pre-Petition Liens, the Second Lien Post-Petition Liens, the Second Lien Pre-Petition Liens, Permitted Encumbrances and the Carve-Out, are valid, enforceable, binding and properly perfected and are not subject to avoidance, subordination or disallowance pursuant to the Bankruptcy Code or applicable law; provided, however, that the Third Lien Post-Petition Liens on the proceeds of the claims and

14

causes of action under Sections 541, 542, 544, 545, 547, 548, 550, 551, 552(b) and 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code (other than Section 549) shall be effective only upon entry of the Final Order; and

(iii)    an allowed superpriority administrative expense claim (the "Third Lien Superpriority Claim"; together with the First Lien Superpriority Claim and the Second Lien Superpriority Claim, collectively, the "Superpriority Claims") (subject only to the First Lien Superpriority Claim, the Second Lien Superpriority Claim and the Carve-Out) in an amount equal to the diminution in value of the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases with priority over all other administrative claims in these chapter 11 cases and any subsequent chapter 7 cases, including all claims of the kind specified under Sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall have recourse to and be payable from all of the Collateral, subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement.

The receipt by a Collateral Agent of the applicable Post-Petition Liens and Superpriority Claims shall not be deemed an admission that the interests of such Collateral Agent and the Lenders are indeed adequately protected. Further, subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement, this Interim Cash Collateral Order shall not prejudice or limit the rights of a Collateral Agent to seek additional relief with respect to the use of Cash Collateral or for adequate protection.

10.    Nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate the Collateral Agents and the Lenders for any diminution in value of Collateral Agents' or the Lenders' interest in the Cash Collateral and the Pre-Petition Collateral during these chapter 11 cases or any subsequent chapter 7 cases.

## Reporting

11.    The Debtors shall notify the Administrative Agent of any material adverse deviation of the Debtors' financial performance from that set forth in the Budget within five (5)

calendar days after occurrence of such material adverse deviation.

12.     In addition to the monthly operating reports required by the U.S. Trustee, which monthly reports will be emailed to the Administrative Agent's counsel of record upon their filing with this Court, the Debtors will, or will cause their financial advisor, Huron Consulting, to, provide to the Administrative Agent, on Friday of each week following the Petition Date, a weekly financial report, in form and methodology satisfactory to the Administrative Agent, which will include, among other things:  (a) a 13-week cash flow projection, together with a variance report setting forth actual cash receipts and disbursements of the Debtors for the prior week and setting forth all the variances, on a line-item and aggregate basis, from the amount set forth for such week as compared to the Budget on a weekly and cumulative basis; and (b) such other financial information as agreed between the Debtors and the Administrative Agent.

13.     The Debtors will provide to the Agents such other reports and information as may be reasonably requested by the Agents.  In addition, the Debtors authorize their accountants, financial advisors, and consultants to cooperate, consult with, and provide to the Agents all such information as may be reasonably requested with respect to the businesses, results of operations, and financial condition of the Debtors, in addition to any potential asset sales, collection efforts and/or related matters, except, in each case, information that the Debtors, upon advice of counsel, believe is subject to the attorney-client privilege.  The Administrative Agent, at the direction of the Required Lenders, may extend the date for delivery of any information or items required by this "Reporting" section.

14.     The Debtors will provide the Agents with a written report on each Tuesday during the Budget Period (each such report, a "Weekly Counsel Report") that sets forth: (i) the aggregate amount of fees and expenses incurred by each of Kirkland & Ellis LLP and Womble

Carlyle Sandridge and Rice, LLP, co-counsel to the Debtors (collectively, "Debtors' Counsel"), during the pendency of these chapter 11 cases through and including the immediately prior Friday; (ii) the amount of fees and expenses incurred by each such counsel during the immediately preceding week (i.e., Monday through and including Sunday); (iii) the amount of any retainer held by each such counsel, and the application thereof to fees and expenses incurred by such counsel, as of the date of such Weekly Counsel Report; and (iv) each such counsel's good faith estimate of the amount of fees and expenses expected to be incurred by such counsel during the following two (2) week period (i.e., the first Monday of such period through and including the second Sunday of such period). In the event that any Weekly Counsel Report provides that the amount of fees and expenses incurred by Debtors' Counsel has reached $1,300,000, the Agents (acting at the direction of the Required Lenders) and the Debtors will meet and confer to discuss a potential modification to the Budget regarding the fees and expenses of Debtors' Counsel.

### Fees, Costs and Expenses of the Agents

15. The Debtors are authorized and directed to pay the Agents, in cash on a current basis, from the DIP Accounts, all reasonable and documented out-of-pocket fees, costs, and expenses of the Agents' legal and business advisors, incurred prior to and on and after the Petition Date within two (2) business days after the end of the Notice Period (as defined below). Payment of all such fees and expenses set forth in this paragraph shall not be subject to allowance by this Court, and the Agents' right to receive such payment of fees and expenses shall not be required to comply with the U.S. Trustee's fee guidelines. Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever. The Debtors shall provide at least five (5) calendar days' advance notice

(such five (5) calendar day notice period, the "Notice Period") to the U.S. Trustee and, if appointed, any committee of unsecured creditors appointed in these chapter 11 cases (any such committee, the "Committee") prior to payment of any of the fees or expenses incurred by the Agents, along with copies of all invoices (in summary form) that the Debtors intend to pay.

### Additional Provisions

16.    The Debtors' use of the Cash Collateral will terminate on the earliest to occur of (each such occurrence hereinafter referred to as a "Termination Event"):  (a) July 12, 2013 (the "Expiration Date") (*i.e.*, the end of the Budget Period), provided, however, the Budget Period and the Expiration Date may be extended with the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, without further order of this Court following the Debtors providing written notice of the extension of the Expiration Date to the U.S. Trustee and the Committee, if any; (b) reversal, vacatur, or modification, in whole or in part, of this Interim Cash Collateral Order or any other order of this Court in any of these chapter 11 cases or any subsequent chapter 7 cases without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (c) (i) dismissal of any of these chapter 11 cases or conversion of any of these chapter 11 cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with expanded powers or other responsible person in any of these chapter 11 cases without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, (ii) termination of the exclusive period for the Debtors to file a chapter 11 plan in these chapter 11 cases or any subsequent chapter 7 cases, or (iii) the Debtors shall seek or request the entry of any order to effect any of the events described in subclause (i) of this clause (c) without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders;

(d) the entry by this Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code sought by any party that materially affects the Debtors' property, without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (e) five (5) business days after written notice to the Debtors of the failure by the Debtors to make any payment required pursuant to this Interim Cash Collateral Order when due (during which time the Debtors may cure subject to any extensions of the due date); (f) five (5) business days after written notice to the Debtors of (i) the failure by the Debtors to deliver to the Agents any of the documents or other information required to be delivered pursuant to this Interim Cash Collateral Order when due (during which time the Debtors may cure) or (ii) the fact that any such documents or other information contains a misrepresentation of a material fact; (g) two (2) days after the Debtors' failure to adhere to the Budget, subject to Permitted Variances, as provided for herein; (h) except as set forth herein, five (5) business days after written notice from either (i) the Administrative Agent to the Debtors, or (ii) the Debtors to the Administrative Agent, in each case, of the failure by the Debtors to observe or perform any of the terms or provisions contained in this Interim Cash Collateral Order or any other order of this Court in any of these chapter 11 cases or any subsequent chapter 7 cases; (i) the entry of an order of this Court approving the terms of any debtor-in-possession financing for any of the Debtors, or the Debtors shall seek or request the entry of any such order, in each case, without the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (j) except as provided herein, the entry of an order of this Court granting any lien on or security interest in any of the Collateral that is pari passu with or senior to the Agents' respective liens on or security interests in the Collateral, or the Debtors shall seek or request the entry of any such order; (k) except as provided herein, the Debtors' creating or permitting to

exist any super-priority claim which is _pari passu_ with or senior to the claims of the Agents or the Lenders, except for the Carve-Out; (l) the date any of the Debtors shall file, or materially support another party in interest's filing of, a pleading seeking to modify or otherwise alter any of the terms and conditions set forth in this Interim Cash Collateral Order or any other order of this Court in any of these chapter 11 cases without the prior express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders; (m) two (2) days after any of the Debtors uses Cash Collateral for any item other than those set forth in the Budget, except as agreed in writing in advance by the Administrative Agent, acting at the direction of the Required Lenders; (n) the date any of the Debtors (or any party with the support of any of the Debtors) shall file a plan of reorganization in any of these chapter 11 cases if such plan is not in form and substance acceptable to the Administrative Agent, acting at the direction of the Required Lenders; (o) two (2) days after any Permitted Variances under the Budget are exceeded for any period of time (other than as approved in writing by the Administrative Agent, acting at the direction of the Required Lenders); (p) any judgments are entered with respect to any post-petition liabilities against any of the Debtors or any of their respective properties that materially affects the Debtors and/or such properties; (q) the failure of the Debtors to obtain entry of the Final Order in form and substance satisfactory to the Administrative Agent in its sole discretion on or before the twenty fifth (25th) day after the Petition Date; (r) the allowance of any claim under section 506(c) of the Bankruptcy Code or otherwise against any or all of the Agents, any Lender or the Collateral; (s) the failure of the Debtors to provide prompt notice to the Administrative Agent of any of the foregoing; (t) any Weekly Counsel Report provides that fees and expenses incurred by (or expected to be incurred by) Debtors' Counsel have exceeded (or are expected to exceed) the sum of $1,550,000 in the aggregate; and (u) the date that a default,

event of default or breach occurs under that certain forbearance agreement, dated on or around the Petition Date (the "CWR Forbearance Agreement"), among the CWR Parties, the Administrative Agent, the First Lien Collateral Agent and the Required Lenders; provided, that such default, event of default or breach only shall constitute a Termination Event hereunder in the event that the CWR Parties fail to file voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court within the time period provided in the CWR Forbearance Agreement. The Debtors shall provide prompt written notice to the Administrative Agent of any Termination Event. The date of any Termination Event, with or without notice from the Debtors, is the "Termination Date".

17.    Notwithstanding the provisions of Section 362 of the Bankruptcy Code, and without order of or application or motion to this Court, but subject to the intercreditor provisions set forth in Section 11.01 of the Credit Agreement, in the event of a Termination Date, the automatic stay provisions of Section 362 of the Bankruptcy Code automatically will be vacated and modified to permit the Agents (at the direction of the Required Lenders) to, upon not less than five (5) calendar days prior written notice (the "Remedies Notice Period") to counsel for the Debtors, the U.S. Trustee, and counsel for the Committee (and absent appointment of any such committee, the Debtors' twenty (20) largest creditors) (unless this Court for cause orders that such time period may be shortened to avoid irreparable harm to the Collateral), exercise any and all rights and remedies allowed under the Loan Documents, applicable law, and this Interim Cash Collateral Order; provided, however, that notwithstanding the foregoing and Section 362 of the Bankruptcy Code, and without order of, or application or motion to, this Court, the occurrence of a Termination Date will immediately terminate the Debtors' use of the Cash Collateral (subject to (i) the funding of payroll in accordance with the Budget, as well as accrued and unpaid taxes

that give rise to personal liability, if any, and (ii) other expenditures critical to the preservation of the Debtors' estates as consented to, in writing, by the Agents, acting at the direction of the Required Lenders; provided, that such consent shall not be applicable to clause (i) of this parenthetical), unless otherwise ordered by this Court. During the Remedies Notice Period, the Debtors shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a Termination Event has occurred. Unless, during such Remedies Notice Period, this Court determines that a Termination Event has not occurred, the automatic stay imposed by Section 362 of the Bankruptcy Code shall be automatically terminated as to the Agents at the end of such Remedies Notice Period and without further notice or order (unless the Court has approved the use of Cash Collateral). Any Agent's delay or failure to exercise rights and remedies under the Loan Documents, applicable law, or this Interim Cash Collateral Order shall not constitute a waiver of such Agent's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by such Agent.

18.     This Interim Cash Collateral Order shall be sufficient and conclusive evidence of the creation, validity, enforceability, perfection and priority of the Post-Petition Liens, without the necessity of filing or recording any financing statement or other instrument or document, or taking any other act which may otherwise be required under state or federal law, rule or regulation of any jurisdiction to validate or perfect the Post-Petition Liens or to entitle the applicable Collateral Agent to the priority granted herein.

19.     The Debtors shall continue to maintain all property, operational and other insurance as specified in the Loan Documents. The Debtors shall provide each Collateral Agent and its counsel with evidence of such insurance within five (5) calendar days after entry of this Interim Cash Collateral Order. Upon entry of this Interim Cash Collateral Order, each Collateral

Agent shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the Collateral, in each case, in accordance with Section 5.05 of the Credit Agreement.

20.    Subject only to and effective only upon entry of the Final Order, the Debtors agree to forever waive and release any and all claims and causes of action against the Agents and the Lenders, whether at law or in equity, arising under or relating to Section 105 and Chapter 5 of the Bankruptcy Code and under any other similar provisions of applicable state or federal law.

21.    Without limiting the generality of Paragraph 20 hereof, subject only to and effective only upon entry of the Final Order, and to the extent provided therein, except to the extent of the Carve-Out, no costs or expenses of administration which have been or may be incurred in these chapter 11 cases, at any time, shall be charged against the Agents or the Lenders, any of their respective claims, or the Collateral (subject to the Carve-Out) pursuant to Sections 105 or 506(c) of the Bankruptcy Code or otherwise.

22.    Without limiting the generality of Paragraph 20 hereof, subject only to and effective only upon entry of the Final Order, the Agents shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under such Section shall not apply to the Agents (on behalf of themselves and on behalf of the applicable Lenders), with respect to proceeds, products, offspring, or profits of any of the Collateral.

23.    Absent further order of this Court, the Debtors shall not create or permit to exist any postpetition liens or encumbrances on any of their assets or property except any postpetition liens agreed to by the Agents in writing; provided, however, and notwithstanding anything to the

contrary in this Interim Cash Collateral Order, the Permitted Liens (that arose prior to the Petition Date) shall not violate this Interim Cash Collateral Order.

24.    The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral other than in the ordinary course of business, without the express prior written consent of the Agents, acting at the direction of the Required Lenders, or order of this Court.

25.    Notwithstanding the foregoing, any committee appointed under Section 1102 of the Bankruptcy Code is permitted to undertake an investigation of the facts relating to the validity, enforceability, priority or amount of the secured claims of the Agents and the Lenders. Any party (other than the Debtors, which have waived any such Challenge (as defined below) rights), including any committee appointed under Section 1102 of the Bankruptcy Code, must commence any contested matter or adversary proceeding raising any objection or challenge (a "Challenge") with respect to any claim, lien, security interest, or any other rights of the Agents and the Lenders relating to the Pre-Petition Collateral or arising under or related to the Loan Documents, as applicable, including, without limitation, in the nature of a setoff, counterclaim, or defense, on or before the earlier to occur of (a) the date that is seventy-five (75) days after entry of this Order, and (b) the date that is sixty (60) days after the appointment of the Committee, if any (the "Challenge Period"). The Challenge Period only may be extended with the express prior written consent of the Administrative Agent, acting at the direction of the Required Lenders, or order of this Court. Upon the expiration of the Challenge Period, to the extent not specifically included in a timely and properly filed pleading asserting a Challenge, any possible Challenge, whether such Challenge is separately filed or otherwise asserted through an amendment of any timely and properly filed pleading asserting a Challenge, shall be deemed to

be forever waived and barred. Nothing in this Interim Cash Collateral Order vests or confers on any person, including, without limitation, any committee appointed under Section 1102 of the Bankruptcy Code or any other statutory committee that may be appointed in these chapter 11 cases, standing or authority to pursue any cause of action, claim, defense, or other right belonging to the Debtors or their estates.

26.     The terms and provisions of this Interim Cash Collateral Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Interim Cash Collateral Order, and any actions taken pursuant hereto, shall: (a) survive entry of any order that may be entered (i) converting any of these chapter 11 cases to chapter 7 cases or dismissing any of these chapter 11 cases, or (ii) confirming or consummating any plan of reorganization in any of these chapter 11 cases; and (b) shall continue in any superseding case of the Debtors under the Bankruptcy Code.

27.     For the purposes hereof, the "Carve-Out" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below) as determined by agreement of the U.S. Trustee or by final order of the Court; (ii) the sum of $15,000 to be allocated for the fees and expenses of a chapter 7 trustee in the event these chapter 11 cases are converted to chapter 7 cases; (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses (collectively, the "Professional Fees") incurred by (x) Debtors' Counsel, (y) Huron Consulting and Donlin Recano & Company, Inc. (together with Debtors' Counsel, collectively, the "Estate Professionals"), and (z) counsel to the Committee, and, with respect to Huron Consulting, Donlin Recano & Company, Inc. and counsel to the Committee, in an amount not to

exceed the respective amounts in the Budget, at any time before or on the first business day following delivery by the Agents (at the direction of the Required Lenders) of a Carve-Out Trigger Notice (as defined below), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) after the first business day following delivery by the Agents (at the direction of the Required Lenders) of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of Professional Fees of Debtors' Counsel in an aggregate amount not to exceed $100,000 (the "Post Carve-Out Trigger Notice Cap").    "Carve-Out Trigger Notice" means written notice delivered by the Agents (at the direction of the Required Lenders) to the Debtors and their lead counsel, the U.S. Trustee, and, if a Committee is appointed, lead counsel to the Committee appointed in these Chapter 11 Cases, which notice may be delivered following (or concurrently with) the occurrence of a Termination Date, stating that the Post Carve-Out Trigger Notice Cap has been invoked. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Loan Documents, the Carve-Out shall be senior to all liens and claims securing the Cash Collateral, the First Lien Post-Petition Unencumbered Collateral Lien, the First Lien Post-Petition Liens, the First Lien Superpriority Claim, the Second Lien Post-Petition Unencumbered Collateral Lien, the Second Lien Post-Petition Liens, the Second Lien Superpriority Claim, the Third Lien Post-Petition Unencumbered Collateral Lien, the Third Lien Post-Petition Liens, the Third Lien Superpriority Claim, and the Revolving Loans, the First Lien Term Loans, the Second Lien Term Loans, and the Third Lien Term Loans.  Notwithstanding anything to the contrary herein, neither the Carve-Out nor any other Collateral may be used for the payment of any fees or disbursements incurred in connection with: (i) attempting to modify or otherwise alter any of the terms and conditions set forth in this Interim Cash Collateral Order

or in the Final Order approved by the Agents; (ii) attempting to obtain, without the express prior written consent of the Agents, acting at the direction of the Required Lenders, this Court's authorization to use Cash Collateral; provided, that the Carve-Out may be used in connection with any emergency hearing, during the Remedies Notice Period, to determine if a Termination Event has occurred; or (iii) asserting, alleging, bringing, or supporting any claim or cause of action, of any type or nature whatsoever, against any Agent or any of the Lenders, including, without limitation, challenging the amount, extent, priority, validity, enforceability, perfection or enforcement of Obligations or any of the Agents' security interests and liens or to recover any funds previously paid to the Agents or the Lenders. This Carve-Out shall be superior to the rights of any succeeding trustee.

28.   The provisions of this Interim Cash Collateral Order shall inure to the benefit of the Debtors, the Agents, the Lenders and their respective successors and assigns (to the extent permitted under the Loan Documents), and they shall be binding upon the Debtors, the Agents, and the Lenders, and their respective successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of the Debtors or with respect to property of the Debtors' estates, whether under Chapter 11 of the Bankruptcy Code or any subsequent chapter 7 case, and also shall be binding upon all creditors of the Debtors and all other parties-in-interest in these chapter 11 cases.

29.   If an order is entered, whether *sua sponte* by this Court or otherwise, dismissing or converting any of these chapter 11 cases, such order shall recognize that such dismissal or conversion shall not affect or diminish the Agents' or the Lenders' respective rights, priorities or remedies granted hereunder.

30.     Upon entry of this Interim Cash Collateral Order:  (a) the Debtors' admissions contained herein shall be binding on the Debtors; and (b) the obligations of the Debtors under the Loan Documents shall constitute allowed claims for all purposes in these chapter 11 cases and any subsequent chapter 7 cases.

31.     The Debtors shall indemnify and hold harmless the Agents and the Lenders in accordance with the terms of the Loan Documents.

32.     The Debtors' counsel shall serve a copy of this Interim Cash Collateral Order on all of the following parties:  (a) the Office of the U.S. Trustee; (b) counsel for the Agents; (c) the Debtors' principal equity holders; (d) all creditors known to the Debtors who may have liens on the Cash Collateral and Pre-Petition Collateral; (e) the United States Internal Revenue Service; (f) the twenty (20) largest unsecured creditors of the Debtors; and (g) all parties-in-interest who have filed a notice of appearance.

33.     The failure of the Agents or the Lenders to seek relief or otherwise exercise their rights and remedies under this Interim Cash Collateral Order, the Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Agents or the Lenders.

34.     Notwithstanding anything herein to the contrary, the entry of this Interim Cash Collateral Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Agents' rights to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of the Agents or Lenders under the Loan Documents, the Bankruptcy Code or under applicable law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of these chapter 11 cases, conversion of any of these chapter 11 cases to cases under

chapter 7, or appointment of a chapter 11 trustee or examiner, (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization, or (iv) object to the application or motion by any Estate Professional for the payment of fees and expenses, including, without limitation, in connection with the Carve-Out; and (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Agents or Lenders.

35.    The Debtors, the Agents, and the Lenders shall be bound by and be subject to all the terms, provisions, and restrictions of the Loan Documents, except as may be expressly modified by this Interim Cash Collateral Order.

36.    The Debtors are authorized, and, to the extent expressly set forth herein, directed, to comply with the terms and conditions of this Interim Cash Collateral Order and to perform all acts and execute and comply with the terms hereof and of all such other documents, instruments and agreements as the Agents may reasonably require to effectuate the terms and conditions of this Interim Cash Collateral Order or to protect or facilitate the rights and protections granted hereby.

37.    To the extent that the Loan Documents, any other document or any other order of this Court differs from this Interim Cash Collateral Order, this Interim Cash Collateral Order shall control.

38.    The liens, security interests, rights, and remedies granted hereunder and any actions taken pursuant hereto shall survive and shall not be modified, altered, or impaired in any manner by a plan or any confirmation order, by any other financings or extensions of credit or incurring of debt by any of the Debtors or any trustee or successor-in-interest, whether pursuant to Section 364 of the Bankruptcy Code or otherwise, by the entry of an order converting any of

the chapter 11 cases to chapter 7 or dismissing any of the chapter 11 cases, by the entry of any other order, or by any act or omission whatsoever.

39.    This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Interim Cash Collateral Order and to adjudicate any and all disputes in connection herewith.

40.    The Clerk of this Court is hereby directed to forthwith enter this Interim Cash Collateral Order on the docket of this Court maintained in regard to these chapter 11 cases. This Interim Cash Collateral Order shall be effective upon its entry and not subject to any stay (all of which are hereby waived), notwithstanding anything to the contrary contained Bankruptcy Rules 4001(a)(3) and 6004(h).

41.    The Debtors and the Agents may, in writing, amend, modify, supplement or waive any provision of this Interim Cash Collateral Order if such amendment, modification, supplement or waiver is not material (in their good faith judgment), without any need to apply to, or receive further approval from, this Court. The Debtors shall provide the U.S. Trustee and counsel for the Committee, if any, with prior written notice of any such nonmaterial amendment, modification, supplement or waiver. Any material amendment, modification, supplement or waiver shall be in writing, signed by the Debtors and the Agents, and approved by this Court on appropriate notice by the Debtors.

42.    The Final Hearing to consider the Final Order shall take place on [_____], 2013 at [__]:00 a.m./p.m. (Prevailing Eastern Time). The Debtors shall cause a copy of this Interim Cash Collateral Order and the Motion to be served by regular first class mail upon: (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal

Revenue Service; (c) the Debtors' consolidated twenty (20) largest unsecured creditors; (d) counsel to the Agents, c/o King & Spalding LLP, Attn:  Michael C. Rupe, Esq., 1185 Avenue of the Americas, New York, New York 10036, and c/o Reed Smith LLP, Attn: Kurt F. Gwynne, Esq., 1201 Market Street, Suite 1500, Wilmington, DE 19801; and (e) those parties who have filed a notice of appearance and request for service of pleadings in the chapter 11 Cases pursuant to Bankruptcy Rule 2002 within one (1) business day of the entry hereof.  Any objections to entry of the Final Order shall be filed with the Clerk of the Court and served upon:  (i) counsel for the Debtors, Kirkland & Ellis LLP, Attn: Christopher J. Marcus, Esq. and David S. Meyer, Esq., 601 Lexington Avenue, New York, New York 10022, and Womble Carlyle Sandridge and Rice, LLP, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801, Attn: Steve Kortanek, Esq.; (ii) counsel to the Agents, c/o King & Spalding LLP, Attn:  Michael C. Rupe, Esq., 1185 Avenue of the Americas, New York, New York 10036, and c/o Reed Smith LLP, Attn: Kurt F. Gwynne, Esq., 1201 Market Street, Suite 1500, Wilmington, DE 19801; and (iii) the Office of the United States Trustee for the District of Delaware, so as to be received on or before [_____], 2013 at \_:00 \_.m. (Prevailing Eastern Time).

43.     Except as explicitly provided for herein, this Interim Cash Collateral Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

Dated: _____, 2013     _____
                                                          The Honorable Brendan Linehan Shannon
                                                          United States Bankruptcy Judge

WCSR 7699136v2

**<u>Exhibit 1</u>**

**Budget**

**Prommis Solutions**
**Consolidated Cash Flow Forecast**

| | w/e 3/22/13 FCST | w/e 3/29/13 FCST | w/e 4/5/13 FCST | w/e 4/12/13 FCST | w/e 4/19/13 FCST | w/e 4/26/13 FCST | w/e 5/3/13 FCST | w/e 5/10/13 FCST | w/e 5/17/13 FCST | w/e 5/24/13 FCST | w/e 6/7/13 FCST | 6/14/13 | Total W/E 3/22 thru June 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash & Cash Equivalents | $3,350 | $3,670 | $2,349 | $2,299 | $2,290 | $2,736 | $484 | $1,163 | $2,350 | $2,192 | $2,004 | $2,124 | $ 1,061 | $ 3,350 |
| **AR Collections** | | | | | | | | | | | | | |
| Deposits - CWR | 715 | 639 | 645 | 613 | 657 | 619 | 631 | 516 | 270 | 115 | 90 | 161 | | 5,670 |
| Deposit - MR | 677 | 666 | 666 | 596 | 686 | 663 | 699 | 589 | 461 | 344 | 228 | 174 | | 6,450 |
| Deposit - JF | - | - | - | 1,435 | - | - | - | 1,700 | - | - | - | 1,600 | | 4,735 |
| Deposit - PD | - | - | - | 900 | - | - | 825 | - | - | - | - | 750 | | 2,475 |
| Deposit - MHS | - | - | - | 50 | - | - | - | 50 | - | - | - | - | | 100 |
| Deposit - Other | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | 110 | | 1,320 |
| Interco Transfers | - | - | - | - | - | - | - | - | - | - | - | - | | - |
| IT Migration Fees | - | - | - | - | - | - | - | - | - | - | - | - | 135 | 135 |
| Other - JF | - | - | - | 300 | - | - | - | - | - | - | - | - | | 300 |
| **Total AR Collections** | 1,503 | 1,415 | 1,421 | 4,004 | 1,453 | 1,392 | 2,265 | 2,965 | 840 | 569 | 427 | 2,795 | 135 | 21,185 |
| | | | | | | | | | | | | | |
| **Cash Disbursements** | | | | | | | | | | | | | |
| **Employee Costs** | | | | | | | | | | | | | |
| Payroll | - | (1,630) | - | (1,630) | - | (1,999) | - | (984) | - | (400) | - | (584) | | (7,227) |
| Employee Benefits | (10) | (10) | (100) | (300) | (10) | (10) | (100) | (300) | (10) | (10) | (10) | (125) | | (995) |
| **Non-Employee Costs** | | | | | | | | | | | | | |
| Title & Pub Vendors | (563) | (563) | (563) | (563) | (563) | (500) | (625) | - | - | - | - | - | | (3,940) |
| Technology & Administrative Fees | (149) | (137) | (94) | (716) | (149) | (100) | (137) | - | - | - | - | - | | (1,481) |
| Other Professional Fees | (20) | (115) | (20) | (32) | (20) | (115) | (15) | - | - | - | - | - | | (357) |
| IT Contractors | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (15) | (15) | (15) | (10) | (10) | | (310) |
| Office Supplies & Postage | (82) | (75) | (75) | (247) | (82) | (75) | (75) | (10) | (10) | (10) | (10) | (10) | | (661) |
| Legal | (25) | (25) | (25) | (350) | (25) | (10) | - | (10) | (10) | (10) | (10) | (10) | | (460) |
| Rent, Utilities & Bldg Costs | - | (30) | (465) | - | - | (495) | - | - | - | (100) | - | - | (35) | (1,125) |
| Travel, Meals & Entertainment | (10) | (10) | (10) | (10) | (50) | (10) | (10) | (10) | (10) | (25) | (5) | (5) | | (165) |
| Telephone | (4) | (4) | (4) | (85) | (4) | (4) | (4) | (4) | (5) | (4) | (4) | (4) | | (130) |
| Staffing | (5) | (5) | (5) | (5) | (5) | (5) | - | - | - | - | - | - | | (30) |
| Equip, Rental and Maint. | (15) | (15) | (15) | (75) | (15) | (15) | (5) | (5) | (5) | (5) | (5) | (5) | | (180) |
| IT Software and Licenses | (15) | (15) | (15) | (15) | (15) | (15) | - | - | - | - | - | - | | (95) |
| Insurance | - | (42) | (26) | - | - | - | - | (42) | (26) | - | (26) | (42) | | (204) |
| Sales & Marketing | - | - | - | - | - | - | - | - | - | - | - | - | | - |
| Other | (25) | (10) | (10) | (25) | (25) | (10) | (50) | (50) | (50) | (50) | (10) | (5) | (100) | (980) |
| Refunds and net advanced costs | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | | (115) |
| | | | | | | | | | | | | | |
| Total Cash Disbursements before restructuring | (968) | (2,731) | (1,472) | (3,998) | (1,008) | (2,913) | (1,581) | (1,430) | (441) | (489) | (190) | (800) | (135) | (17,855) |
| | | | | | | | | | | | | | |
| Change in Cash before restructuring | 535 | (1,316) | (50) | 6 | 446 | (1,521) | 684 | 1,535 | 399 | 80 | 237 | 1,995 | - | 3,330 |
| | | | | | | | | | | | | | |
| Other Professional Fees - Restructuring | (215) | (5) | - | (15) | - | (731) | (5) | (349) | (857) | (268) | (118) | (3,057) | | (5,619) |
| | | | | | | | | | | | | | |
| Change in Cash after restructuring | 320 | (1,321) | (50) | (9) | 446 | (2,252) | 679 | 1,187 | (458) | (188) | 120 | (1,062) | | (2,289) |
| | | | | | | | | | | | | | |
| Ending Cash & Cash Equivalents Before Restructuring Exp | $4,600 | $3,284 | $3,234 | $3,240 | $3,686 | $2,165 | $2,849 | $4,384 | $5,083 | $5,401 | $7,395 | $7,395 | | $ 6,680 |
| Ending Cash & Cash Equivalents | $3,670 | $2,349 | $2,299 | $2,290 | $2,736 | $484 | $2,163 | $2,350 | $2,192 | $2,004 | $2,124 | $1,061 | $1,061 | $ 1,061 |
| | | | | | | | | | | | | | |
| **Restructuring and Wind-Down Related Expenses** | | | | | | | | | | | | | |
| U.S. Trustee Fees | | | | | (75) | | | | | (75) | | | | (150) |
| Debtor Counsel and Costs | | | | | | | | (647) | | (903) | | | | (1,550) |
| Lender Counsel | (150) | | | | | | | (100) | | (200) | | | | (450) |
| Creditor Committee Counsel | | | | | | | | (50) | | (50) | | | | (100) |
| Gleacher administrative costs | (5) | (5) | | | (5) | (5) | | | | | | | | (20) |
| Debtor Financial Advisor | | | | | | | | (60) | | (165) | | | | (225) |
| Liquidating Trustee | | | | | | | | | (400) | | | | | (400) |
| Claims Agent | (10) | | (15) | | | | (15) | | (15) | | | | | (55) |
| Utilities | (50) | | | | | | | | | | | | | (50) |
| West Coast PTO | | | | | (300) | | | | | | | | | (300) |
| Management Incentive Plan (see KEIP for Schedule) | | | | | | | | | | (1,339) | | | | (1,339) |
| Employee Retention | | | | | (301) | | (301) | | (268) | | | | | (870) |
| Spot Bonuses and Retention Key Employees | | | | | (55) | | (28) | | (28) | | | | | (110) |
| | | | | | | | | | | | | | |
| Total Restructuring Costs | (215) | (5) | - | (15) | - | (731) | (5) | (349) | (857) | (268) | (118) | (3,057) | - | (5,619) |

*Prommis Solutions*
*Consolidated Cash Flow Forecast*
*Debtor Counsel*

**Debtor Counsel - Forecasted Accrued Liabilities**

| | w/e 3/22/13 | w/e 3/29/13 | w/e 4/5/13 | w/e 4/12/13 | w/e 4/19/13 | w/e 4/26/13 | w/e 5/3/13 | w/e 5/10/13 | w/e 5/17/13 | w/e 5/24/13 | w/e 5/31/13 | w/e 6/7/13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kirkland & Ellis | 75 | 45 | 45 | 45 | 75 | 26 | 26 | 26 | 26 | 26 | 26 | 60 | 500 |
| Womble Carlyle | 96 | 96 | 96 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 201 | 1,050 |
| Total Accrued Liabilities | 171 | 141 | 141 | 115 | 145 | 96 | 96 | 96 | 96 | 96 | 96 | 262 | 1,550 |
| Cumulative Accrued Liabilities Less Cash Payments | 171 | 311 | 452 | 567 | 712 | 808 | 904 | 1,000 | 450 | 546 | 642 | - | - |