## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PROMMIS HOLDINGS, LLC, et al.,[1] | ) | Case No. 13-10551(BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| PROMMIS SOLUTIONS, LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. _____ (BLS) |
| | ) | |
| v. | ) | |
| | ) | |
| PITE DUNCAN, LLP | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Debtor Prommis Solutions, LLC ("Solutions, or the "Plaintiff") for its complaint against Defendant Pite Duncan, LLP ("PD") alleges on personal knowledge as to facts about themselves and their own acts, and upon information and belief with respect to all other matters, as follows:

## NATURE OF THE ACTION

1.      This action arises from PD's repeated and ongoing violation of its contractual duties under its November 14, 2007 Services and Technology Agreement with Solutions (f/k/a MR Default Services LLC) (the "Services Agreement"), its theft of Plaintiff's trade secrets and

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569).  The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

its willful violation of the automatic stay.  Over the course of the past several months, PD has

repeatedly breached its contractual obligations to use Plaintiff as the exclusive provider of

administrative support services for PD's bankruptcy, eviction and foreclosure practice and not to

perform those services for itself.  PD has not only improperly reduced the volume of business

that it sends to Plaintiff but it has also engaged in an effort to hire away key members of

Plaintiff's management teams so that it can perform the support services for itself.  Plaintiff also

recently discovered that PD had impermissibly accessed Plaintiff's network and copied

proprietary and confidential documents and information containing Plaintiff's trade secrets and

intellectual property.  And Plaintiff hase reason to believe that at least one of the employees that

PD hired away from Plaintiff, in violation of company policy, made copies of a CD that

contained proprietary and confidential trade secrets and intellectual property belonging to

Plaintiff and may have shared that information with PD.

2.      In addition to this egregious conduct, PD has refused and failed to pay amounts

that PD owes to Plaintiff, claiming that it is entitled to certain setoffs for amounts allegedly due

to PD from Plaintiff.  But not only are the amounts which PD has set off inaccurate, PD has no

authorization from this court to exercise any right of setoff, even if one existed.

3.      The cumulative effect of PD's conduct has devastated the Debtors' business and,

if not stopped, threatens to destroy the Debtors' efforts to effect an orderly sale and wind-down

of their business in these Chapter 11 cases.

4.      Plaintiff therefore brings this action for a temporary restraining order, preliminary

and permanent injunctions to enforce PD's obligations under the Services Agreement and for an

order enforcing the automatic stay and enforcing PD's payment and non-solicitation obligations.

## PARTIES

5.      Plaintiff and Debtor Prommis Solutions, LLC is a Delaware limited liability company.  Solutions is one of the entities through which Prommis provides its products and services.  Solutions is formerly known as MR Default Services LLC.

6.      Defendant Pite Duncan, LLP is a California limited liability partnership with its principal place of business in California.  PD provides legal services in the areas of bankruptcy, eviction and foreclosure and utilizes Solutions' products and services in its practice.

## JURISDICTION

7.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

## FACTUAL ALLEGATIONS

8.      On November 14, 2007, PD entered into the Services Agreement, which is attached as Exhibit A, with Solutions (f/k/a MR Default Services LLC).  The term of the Services Agreement is twenty (20) years.  (Services Agreement § 4.1.)  Under that agreement, Solutions provides four broad categories of services to PD—bankruptcy administrative services, eviction support services, foreclosure administration services and billing services (the "Support Services").  (Id. § 2.1.)  The Services Agreement is clear that all intellectual property and content is the property of Solutions, not PD: "[Solutions] will retain all right, title and interest, including all Intellectual Property, in and to all Service Provider Content and Service Provider Website made available for access and use by PD."  (Id. § 2.4(a).)

9.      The Services Agreement provides that PD "engages [Solutions] on an exclusive basis to perform and provide the Support Services to PD."  (Id. at 2.1(b).)  And it also prohibits PD from either "perform[ing] the Support Services itself" or "engag[ing] any person or entity other than [Solutions] to provide the Support Services."  (Id.)

10.     Despite those clear terms, on January 25, 2013, PD informed Solutions by email that it would stop using Solutions for Foreclosure Administrative Services (as that term is defined in the Services Agreement).  Upon information and belief, in violation of the Services Agreement's exclusivity provision, PD either began using other service providers for Foreclosure Administrative Services or performing those services for itself.

11.     In response, on January 30, 2013, Solutions informed PD that PD's actions constituted a breach of the Services Agreement.  Nevertheless, PD has continued to violate the exclusivity provision either by using other providers for Foreclosure Administrative Services or performing those services itself.

12.     Even as it does so, PD has refused to pay Solutions for the Support Services (including some Foreclosure Administrative Services) that Solutions continues to provide to PD. To date, PD has withheld $528,948.17 for bankruptcy and evictions services and expenses and $249,207.80 for foreclosure services, claiming that is entitled to setoff certain amounts against certain expenses and obligations for which PD claims that Solutions may have to reimburse PD. But PD has no contractual right to setoff those amounts.  And even if it did, the amounts PD asserts are subject to setoff are inaccurate.  Moreover, the automatic stay of the bankruptcy code prohibits PD from unilaterally exercising any right to setoff.

13.     In addition, PD has been interfering with the Debtors' efforts by soliciting and hiring away key employees from the Debtors and certain non-debtor subsidiaries.  Upon information and belief, PD has done so in order to begin to perform Support Services for itself, even though the Services Agreement prohibits it from doing so.

14.     As early as March 19, 2013—the day after the Petition Date—the Debtors learned that two PD employees who, before the Petition Date, were hired away from non-debtor

4

subsidiary Cal-Western Reconveyance Corporation ("Cal-West"), began contacting employees

of Cal-West in an attempt to persuade those employees to quit their jobs at Cal-West and go to

work at PD to perform the same Support Services that Solutions provides (and has the exclusive

right to provide) under the Services Agreement.  PD has also targeted mutual clients of PD and

Cal-West and attempted to convince those clients to retain PD to provide the same services that

Cal-West had provided.

15.    Plaintiff also has reason to believe that one of the employees that PD hired away

from Cal-West wrongfully shared with PD CDs containing valuable assets of Cal-West and the

Debtors.  Specifically, the CDs contained templates and files in Microsoft Word format that

contained the Debtors trade secrets and intellectual property.

16.    Plaintiff's belief that PD was attempting to steal the Debtors' trade secrets and

intellectual property in violation of applicable law and the Service Agreement was confirmed

when Plaintiff's IT professionals discovered abnormal file transfer activity occurring between

PD and Plaintiff's network.  Upon further investigation, Plaintiff discovered that PD was

copying data files and documents associated with the "ProLaw" application that Plaintiff uses to

provide services to PD and their other clients.  Historically, Solutions has provided backups to

PD at predefined intervals tailored to the level of detail to which PD is entitled, and excluding

proprietary mappings which interface with Solutions' ProLaw enhancements.  But the files that

PD was copying were not the kinds of standard files and information that Plaintiff historically

has provided to PD via the ProLaw Client application.  Rather, in an apparent attempt to build

and deploy its own version of ProLaw and mirror Solutions' enhanced systems, PD downloaded

files and data containing Plaintiff's data mapping and system rules that were excluded from the

historical backups.  The data mapping and system rules are proprietary trade secrets and

intellectual property that Plaintiff has developed in the course of its business and which it does not share with clients.  In short, PD deliberately circumvented the standard access rules that Plaintiff had established, hacked into Plaintiff's network and copied Plaintiff's intellectual property and trade secrets.

17.    Because it costs Solutions approximately $300,000 per week to perform the Bankruptcy, Evictions and Foreclosure Support Services, PD's failure to pay solutions has impaired Solutions'—and the Debtors'—ability to meet its budget targets and continue operations in order to maximize recovery to the Debtors' stakeholders and preserve jobs for hundreds of employees.  Likewise, PD's improper solicitation and hiring of Plaintiff's employees has impaired Plaintiff's ability to continue to provide services to PD and its other clients.

18.    In fact, if PD continues to withhold payments and hire away employees, Solutions and the Debtors would likely be required immediately to lay off hundreds of employees and shut down their operations, sacrificing most of the value to be realized for the Debtors' stakeholders destroying Plaintiff's goodwill with their other customers, and likely causing these cases to be converted and liquidated in a chapter 7 fire sale, instead of in an orderly going concern sale under chapter 11.

19.    Consistent with this irreparable and permanent harm, the Services Agreement provides that "the Parties agree that irreparable damages could occur in the event that any of the provisions of this Agreement were not performed in accordance with the terms hereof." (Services Agreement § 8.10.)

### COUNT I
(Breach of Contract)

20.    Plaintiff realleges and incorporates by reference herein the allegations of ¶¶ 1 through 20 inclusive.

21.     Solutions and PD are parties to a binding contract, the Services Agreement, which obligates PD to use Solutions as its exclusive provider of Support Services and prohibits PD from performing Support Services for itself, or using a third party to perform the Support Services, during the 20-year term of the agreement.  The Services Agreement also obligates PD to pay Solutions for those services and does not permit the setoff that PD has claimed.

22.     Solutions has performed all of its obligations under the Services Agreement.

23.     PD has breached the contract by (1) using other service providers to perform Support Services or performing those services itself and (2) hiring away Plaintiff's employees to perform those services, all in direct contravention of the Services Agreement's prohibition on PD "engag[ing] any person or entity other than [Solutions] to provide the Support Services." (Services Agreement § 2.1(b).)

24.     PD has further breached the contract by failing to pay Solutions for its provision of the Support Services and asserting a right of setoff.

25.     PD's breaches have damaged and continue to damage Plaintiff by, among other things, starving Plaintiff of needed working capital thereby preventing Plaintiff from continuing to operate their business and poaching Plaintiff's employees thereby impairing Plaintiff's ability to provide services to their other clients.

26.     Plaintiff is entitled to specific performance and an injunction requiring PD to (1) pay Solutions all past-due amounts without any setoff, (2) cease and desist soliciting or hiring any of Plaintiff's employees to perform any kind of Support Services and (3) immediately return and destroy any copies of any of Plaintiff's intellectual property or trade secrets, including but not limited to any data mapping or system rules for Plaintiff's ProLaw application.

## COUNT II
### (Theft of Trade Secrets)

27.     Plaintiff realleges and incorporates by reference herein the allegations of ¶¶ 1 through 27 inclusive.

28.     As alleged above, Plaintiff has developed and maintained valuable proprietary information that derives independent economic value from not being generally known to the public or to other people who can obtain economic value from its disclosure or use.  Specifically, the data mapping and system rules that Solutions and other Debtors use to provide services to their customers.

29.     Plaintiff has made reasonable efforts under the circumstances to maintain the secrecy of this information, including but not limited to limiting their customers' access to ProLaw to prevent customers from accessing the data mapping and system rules and providing in their Services Agreement with PD that "[Solutions] will retain all right, title and interest, including all Intellectual Property, in and to all Service Provider Content and Service Provider Website made available for access and use by PD."  (Id. § 2.4(a).)

30.     Accordingly, the information described above constitutes "trade secrets."

31.     PD acquired Plaintiff's trade secrets via unauthorized access of Plaintiff's network and not from generally available information or through its own independent research and efforts.

32.     In violation of its duty to Plaintiff, PD has used and intends to continue to use the trade secrets for its own benefit, without the express or implied consent of Plaintiff and to the detriment of Plaintiff.

33.     These actions constitute misappropriation of Plaintiff's trade secrets.

34.     PD's misappropriation of Plaintiff's trade secrets has caused and will continue to cause Plaintiff to suffer substantial damages, including the loss of current and future business that could have been derived from the use of its confidential and proprietary trade secrets.

35.     PD's misappropriation of Plaintiff's trade secrets was also done willfully and maliciously and with the intent to improve its own business without adequately compensating Plaintiff.  Plaintiff is therefore entitled to exemplary damages in an amount to be proven at trial.

### COUNT III
(Violation of the Automatic Stay)

36.     Plaintiff realleges and incorporates by reference herein the allegations of ¶¶ 1 through 36 inclusive.

37.     PD owes Solutions $3,584,747.60 for services rendered under the Services Agreement, of which $778,155.97 is currently past due.

38.     Solutions' right to payment under the Services Agreement is property of the estate and protected by the automatic stay.

39.     PD's unwarranted refusals to pay amounts due under the Services Agreements constitute acts to exercise control over property of the estate and are expressly prohibited by the automatic stay, which prohibits the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

40.     The harm to the Debtors' estates to be caused by these improper withholdings of payment is immediate and irreparable.  Without these payments, the Debtors will not be able to adhere to the budget set forth in the Court approved Stipulation and Agreed Interim Order Authorizing the Debtors' Use of Cash Collateral [Docket No. 14], triggering a termination event. If the secured lenders terminate the Debtors' use of cash collateral, the Debtors will likely be forced to immediately lay off hundreds of employees and shut down their operations, sacrificing

most of the value to be realized for the Debtors' stakeholders, and likely causing these cases to be converted and liquidated in a chapter 7 fire sale, instead of in an orderly going concern sale of the Debtors' assets under chapter 11.

41.    In addition, PD's violation of the automatic stay was willful.  PD knows of the bankruptcy case and understands that the automatic stay is in place.  Indeed, PD is a sophisticated law firm that practices in the area of bankruptcy and foreclosure.  PD acted willfully because it intended to withhold amounts properly due and payable to Plaintiff.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for the following relief against Defendant PD:

1. A temporary restraining order and preliminary and permanent injunction requiring PD to (1) pay Solutions all past-due amounts without any setoff, (2) cease and desist soliciting or hiring any of Plaintiff's employees to perform any kind of Support Services and (3) immediately return and destroy any copies of any of Plaintiff's intellectual property or trade secrets, including but not limited to any data mapping or system rules for Plaintiff's ProLaw application;

2. Compensatory damages;

3. Punitive damages;

4. Costs of suit, including reasonable attorneys' fees; and

5. An award to Plaintiff of any further or additional relief that this Court finds equitable, appropriate or just.

Dated:  April 5, 2013                    **WOMBLE CARLYLE SANDRIDGE**
                                         **& RICE, LLP**

                                         /s/ Steven K. Kortanek
                                         Steven K. Kortanek (DE Bar No. 3106)
                                         Thomas M. Horan (DE Bar No. 4641)
                                         Ericka F. Johnson (DE Bar No. 5024)
                                         222 Delaware Avenue, Suite 1501
                                         Wilmington, DE 19801
                                         Telephone: (302) 252-4320
                                         Facsimile: (302) 252-4330
                                         E-mail: skortanek@wcsr.com
                                         E-mail: thoran@wcsr.com
                                         E-mail: erjohnson@wcsr.com

                                         -and-

                                         **KIRKLAND & ELLIS LLP**
                                         Christopher Marcus, P.C. (admitted *pro hac vice*)
                                         David S. Meyer (admitted *pro hac vice*)
                                         601 Lexington Avenue
                                         New York, New York 10022
                                         Telephone: (212) 446-4800
                                         Facsimile: (212) 446-4900
                                         E-mail: christopher.marcus@kirkland.com
                                         E-mail: david.meyer@kirkland.com

                                         *Proposed Counsel to the Debtors and Debtors-in-*
                                         *Possession*