## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PROMMIS HOLDINGS, LLC, <u>et al.</u>,[1] | ) Case No. 13-10551(BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| PROMMIS SOLUTIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) Adv. Pro No. 13-_____(BLS) |
| | ) |
| v. | ) |
| | ) |
| JOHNSON & FREEDMAN, L.L.C., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Prommis Holdings, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>") and plaintiff Prommis Solutions, LLC ("<u>Solutions</u>" or the "<u>Plaintiff</u>"), by and through their proposed undersigned counsel, alleges on personal knowledge as to facts about themselves and their own acts, and upon information and belief with respect to all other matters, against Johnson & Freedman, L.L.C. ("<u>JF</u>" or the "<u>Defendant</u>") as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569). The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

## NATURE OF ACTION

1. This adversary proceeding is brought pursuant to and under Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105(a) and 362(a) of 11 U.S.C. §§ 101-1532 (as amended and applicable herein, the "Bankruptcy Code"). This action arises from JF's repeated and ongoing violation of its contractual duties under its February 2, 2007 Services and Technology Agreement with Solutions (f/k/a MR Default Services LLC) (the "JF Services Agreement") and its willful violation of the automatic stay. JF has refused and failed to pay amounts that JF owes to Solutions, claiming that it is entitled to certain offsets for amounts allegedly due to JF from Solutions. Solutions disputes the validity of the majority of the setoffs unilaterally taken by JF post-petition.

2. Not only has JF improperly withheld and setoff funds that it owes to Solutions, but it has also engaged in a concentrated effort to hire away key members of the Debtors' management and operating teams so that it can usurp for itself the ability to perform the support services that under the JF Services Agreement are exclusively the right of Solutions to perform. JF's calculated, bad faith employee raiding reflects an intentional effort to "end-run" JF's obligations to Solutions under the JF Services Agreement, and in so doing exploit for itself the material cash flow pipeline that has flowed to JF from its clients in recent months and will continue flowing to JF – in large part on account of Solutions' valuable services. The cumulative effect of JF's conduct is causing imminent and irreparable harm to the Debtors' businesses and, if not immediately stopped, threatens to destroy the Debtors' efforts to effect an orderly sale and wind-down of their businesses in the above-captioned jointly administered cases (collectively, the "Bankruptcy Cases").

3. Accordingly, Solutions brings this action for a temporary restraining order, preliminary and permanent injunctions to enforce JF's obligations under the JF Services

Agreement, for a declaration that JF is estopped from asserting a claim for breach of contract, and for an order enforcing the automatic stay and requiring JF to pay all amounts owed to Solutions in full.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## THE PARTIES

5. The Plaintiff, one of the Debtors in the Bankruptcy Cases, is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. The Debtors are leading providers of technology-enabled processing services for the default resolution sector of the U.S. residential mortgage industry. The Debtors provide products and services that support law firms and mortgage servicers in connection with foreclosure, bankruptcy, eviction, loan settlement processing and real estate owned sale processing support. Solutions is one of the debtor-entities through which the Debtors provide their products and services.

6. JF is a Georgia limited liability company with a principal place of business located at 1587 N.E. Expressway, Atlanta, Georgia. Upon information and belief, all of JF's members reside in Georgia or Florida. JF provides legal services in the areas of bankruptcy, eviction, and foreclosure and JF utilizes Solutions' products and services in its practice.

## FACTS

A. The Bankruptcy Cases

7. On March 18, 2013 (the "Petition Date"), each of the Debtors filed a petition with this Court under chapter 11 of the Bankruptcy Code. The Debtors are operating

3

their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8. On March 19, 2013, the Court entered the Interim Order (a) Authorizing the Use of Cash Collateral; (b) Granting Adequate Protection; (c) Modifying the Automatic Stay; and (d) Scheduling a Final Hearing [D.I. 30 and 60] (as corrected, the "Cash Collateral Order"). Attached to the Cash Collateral Order as Exhibit 1 is a weekly budget (the "Budget") for the period from the Petition Date through June 14, 2013.

9. The Cash Collateral Order states at ¶ G that "[w]ithout the use of Cash Collateral, the Debtors will not have the funds necessary to pay post-petition vendors and other expenses of the Debtors' businesses. Immediate and irreparable loss or damage will be caused to the Debtors' estates if the relief requested in the Motion is not granted."

10. The cash collateral, pursuant to the Cash Collateral Order, is the means by which the Debtors are funding their operations during the cases. Without the cash collateral – and without meeting the budget approved by the Cash Collateral Order – the Debtors will suffer immediate and irreparable harm.

**B.  The JF Relationship**

11. On or about February 2, 2007, Morris, Schneider & Prior, LLC and MR Default Services, LLC (n/k/a Solutions) entered into the JF Services Agreement. A true and correct copy of the JF Services Agreement is attached hereto as Exhibit A.

12. JF is either the successor-in-interest to Morris, Schneider & Prior LLC or Morris, Schneider & Prior LLC is now known as JF.

13. The term of the JF Services Agreement is twenty (20) years. Ex. A § 4.1.

14. Under the JF Services Agreement, Solutions provides four (4) broad categories of services to JF. Id. § 2.1. Those services include (i) Bankruptcy Administrative Services; (ii) Eviction Support Services; (iii) Foreclosure Administrative Services; and (iv) Billing Services (collectively, the "JF Support Services"). Id.

15. Additionally, although not included in the scope of the JF Support Services, JF has also over time required Solutions to perform additional tasks for which JF has refused to meet and confer in good faith, in accordance with section 2.3(b) of the JF Services Agreement, or otherwise consider any modifications to the fee structure in order to adequately compensate Solutions for such additional services.

16. Under the JF Services Agreement, JF is not permitted to perform the JF Support Services itself and Solutions is the exclusive provider to JF of the JF Support Services. Id. § 2.1(b).

17. Under the JF Services Agreement, JF is required to pay Solutions the fees for the JF Support Services set forth in Schedule A, as amended formally and informally, to the JF Services Agreement in accordance with the terms set forth thereon. Id. § 2.3(a).

18. Both before and since the Petition Date, JF has failed to pay Solutions all amounts required under the JF Services Agreement as they became due and owing.

19. JF has stated to Solutions its intention to offset amounts of money owed to Solutions by JF against amounts allegedly owed to JF by Solutions.

20. The JF Services Agreement, however, contains no right of setoff. And even if a right of setoff could be read into the JF Services Agreement, the Bankruptcy Code's automatic stay prohibits JF from unilaterally exercising any setoff rights.

21. Nonetheless, JF subsequently and after the Petition Date offset amounts due to Solutions against amounts JF unilaterally asserted were due from Solutions to JF. These offsets taken by JF were improper post-petition setoffs of alleged pre-petition obligations owed by Solutions against post-petition receivables due to Solutions by JF.

22. Solutions did not agree to the offset and expressly informed JF that they disputed the validity of certain of the proposed deductions. Solutions also demanded prompt payment of amounts due to Solutions by JF.

23. As of April 5, 2013, JF has payables currently due and owing to Solutions of no less than $1,926,305.33 calculated as follows:

| | |
|---|---:|
| Total Solutions December 2012 Services Billings | $1,490,028.91 |
| Open Solutions Past Due Invoices (Prior to December 2012) | |
| JF 093012 | $454,528.34 |
| JF 010312 | $32,988.24 |
| JF 013112 | $297.64 |
| JF 022912 | $567.88 |
| Credit Memo 12389 (January Warranty Losses) | ($17,299.90) |
| Expense Invoices through March 2013 (Rent, Utilities, IT Support, Security, etc.) | $324,455.03 |
| Statewide Tax and Title Non-SA title work provided to JF through March 2013 | $22,282.97 |
| Florida Advanced Costs provided to JF | $144,000.00 |
| **Total Due Solutions** | **$2,451,849.11** |
| JF Partial Payment Received April 3, 2013 | ($525,543.78) |
| **JF Past Due Accounts Receivable** | **$1,926,305.33** |

24. On April 3, 2013, Solutions received a payment from JF of $525,543.78. In rendering this payment, JF setoff no less than $1,336,904.22 and in addition took improper deductions from and/or failed to pay past due invoices totaling $589,401.11. After taking these

6

setoffs and deductions, on April 4, 2013, JF filed its Motion Pursuant to Sections 362(d)(1) and 553(a) of the Bankruptcy Code for Limited Relief from the Automatic Stay to Setoff Prepetition Obligations [D.I. 110].

25. JF receives ample cash flow in connection with the JF Services Agreement to pay Solutions. Although JF pays Solutions approximately ninety (90) calendar days (sixty business days subsequent to the Solutions invoice date) in arrears for Solutions' work under the JF Services Agreement, JF receives substantial payments daily from its clients who on the average pay JF two thirds of their invoices due within thirty (30) days after an invoice is issued and who Solutions bills on JF's behalf out of which it later compensates and reimburses Solutions. This results in JF taking advantage of a significant "float" spanning some forty (40) to sixty (60) days after JF receives its money. Based on historical billings and collections information that Solutions has available to it as part of the Billing Services it performs under the JF Services Agreement, Solutions forecasts that JF is will collect in April 2013 $2,730,942 from its clients for work completed in connection with the JF Services Agreement. In May 2013, JF is forecasted to collect $2,681,107 and in June 2013, it is forecasted to collect $2,228,060, all for work completed in connection with the JF Services Agreement. Solutions forecasts that JF's total collections from its clients for work associated with the JF Services Agreement from April 2013 through June 2013 will total $7,640,109.

26. JF owes Solutions, inclusive of amounts payable on or about May 1, 2013 and June 1, 2013, approximately $5,335,010.72.[2] However, as noted in the preceding paragraph, JF's forecasted collections for that same period – solely for work associated with the JF Services

---

[2] This amount does not include amounts that were billed to JF on April 3, 2013.

Agreement is $7,640,109.00. Accordingly, as demonstrated in the following chart, JF has an "equity cushion" for that period of approximately $2.3 million.

| Month | Amounts Due Solutions | Forecasted JF Collections | Variance - Forecasted JF Collections to Amounts Due Solutions |
|---|---:|---:|---:|
| April 2013 | $1,926,305.33 | $2,730,942.00 | $804,636.67 |
| May 2013 | $1,751,796.51 | $2,681,107.00 | $929,310.49 |
| June 2013 | $1,656,908.88 | $2,228,060.00 | $571,151.12 |
| **Total:** | **$5,335,010.72** | **$7,640,109.00** | **$2,305,098.28** |

27. In addition, since the beginning of 2012, JF has collected, in respect of business under the JF Services Agreement, similarly large amounts that demonstrate beyond dispute JF's ability to pay Solutions as required under the JF Services Agreement:

| Month | Amount Collected by JF |
|---|---:|
| January 2012 | $4,071,082.13 |
| February 2012 | $2,829,562.89 |
| March 2012 | $3,255,993.67 |
| April 2012 | $3,712,822.63 |
| May 2012 | $3,696,636.34 |
| June 2012 | $2,899,189.38 |
| July 2012 | $3,371,487.82 |
| August 2012 | $2,487,847.41 |
| September 2012 | $2,320,193.00 |
| October 2012 | $2,961,622.30 |
| November 2012 | $2,141,487.82 |
| December 2012 | $2,040,982.42 |
| January 2013 | $2,750,265.73 |
| February 2013 | $2,094,827.30 |
| March 2013 | $2,090,988.87 |

28. Therefore, although JF, on April 3, 2013, only paid Solutions $525,543.78 of the $2,451,859.11 that was due and payable by JF to Solutions on April 1, 2013, JF is collecting each month far more than is required to pay Solutions. Further, JF is forecasted to continue collecting sums far in excess of amounts that will become due and payable to Solutions while the Bankruptcy Cases are pending.

29. Meanwhile, before and since the commencement of these Bankruptcy Cases, upon information and belief, JF has been interfering tortiously with Solutions' ability to perform under the JF Services Agreement by contacting certain of the Debtors' key employees by telephone in an attempt to solicit and hire them. The communications are carefully scripted in that they seek compensation information from Solutions' employees in order to assist JF in formulating offers to the Solutions' employees who JF knows are required for Solutions to perform under the JF Services Agreement. Solutions has also received information indicating that JF is in the process of setting up phones and computer systems in preparation for an additional 100 employees. According to information provided by JF to a Solutions IT employee, these additional employees will be starting at JF on May 1, 2013. JF's illicit attempts to hire the Debtors' employees advances JF's inequitable efforts to take for itself the ability to perform JF Support Services, despite the clear prohibitions contained in the JF Services Agreement against doing so.

30. If JF continues to withhold payments and to improperly mine the Debtors' employees, Solutions and the Debtors would likely be required immediately to lay off hundreds of employees and shut down their operations, sacrificing most of the value to be realized for the Debtors' stakeholders, destroying the Debtors' goodwill with their other customers, and likely

causing these Bankruptcy Cases to be converted and liquidated in a chapter 7 fire sale, instead of in an orderly going concern sale under chapter 11.

31. Consistent with this irreparable and permanent harm, the JF Services Agreement provides that "the Parties agree that irreparable damages could occur in the event that any of the provisions of this Agreement were not performed in accordance with the terms hereof." Ex. A § 8.10.

## COUNT I
### (Breach of Contract)

32. The Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

33. Solutions and JF are parties to a binding contract, the JF Services Agreement, which obligates JF to use Solutions as its exclusive provider of JF Support Services and prohibits JF from performing JF Support Services for itself or utilizing a party other than Solutions to perform JF Support Services during the 20-year term of the agreement. The JF Services Agreement also obligates JF to pay Solutions for those services without any right of setoff or recoupment.

34. Solutions has performed and continues to perform all of its obligations under the JF Services Agreement together with additional services requested by JF that are outside the scope of the JF Services Agreement.

35. JF has breached the contract by performing JF Support Services for itself and by hiring and attempting to hire away the Debtors' employees to further its efforts to perform the JF Support Services, all in direct contravention of the JF Services Agreement's prohibition on JF "engag[ing] any person or entity other than [Solutions] to provide the Support Services." Ex. A § 2.1(b).

36. JF has further breached the JF Services Agreement by (i) failing to pay Solutions for the JF Support Services provided by Solutions; (ii) asserting a right of setoff; and (iii) failing to negotiate in good faith modifications to the fee structure to compensate Solutions for the additional work completed by Prommis that is outside the scope of the JF Support Services.

37. JF's breaches have damaged and continue to damage Solutions and the Debtors by, among other things, starving Solutions and the Debtors of needed working capital thereby preventing the Debtors from continuing to operate their businesses and poaching the Debtors' employees thereby impairing the Solutions' ability to provide services to JF and its other clients.

38. Solutions is entitled to specific performance and an injunction requiring JF to (1) pay Solutions all past-due amounts without any setoff and (2) cease and desist soliciting or hiring, directly or indirectly, any of the Debtors' employees to perform any kind of JF Support Services.

### COUNT II
### (Estoppel)

39. The Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

40. JF contacted illicitly the Debtors' employees and caused some employees to leave the Debtors' employment and instead begin working for JF.

41. JF continues to contact the Debtors' employees in furtherance of its efforts to cause additional employees to leave the Debtors' employment and instead begin working for JF.

42. JF knows that Solutions requires employees in order to perform the JF Support Services under the JF Services Agreement.

43. Nonetheless, JF willfully interfered with Solutions' ability to perform under the JF Services Agreement by encouraging and causing certain of the Debtors' employees to stop working for the Debtors.

44. Accordingly, due to JF's actions, which caused a reduction in the Debtors' workforce, JF is estopped from asserting breach of contract for any JF Support Services that are not performed or are underperformed due to lack of employees or lack of skilled employees to perform the JF Support Services.

## COUNT III
### (Violation of the Automatic Stay)

45. The Plaintiff repeats and re-alleges the allegations contained in all prior paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

46. To date, JF owes Solutions at least $1,926,305.33 for services rendered under the JF Services Agreement and funds advanced by Solutions for facilities, advanced costs, and miscellaneous expenses. Those monies are not subject to any right of setoff or recoupment.

47. Solutions' right to payment under the JF Services Agreement is property of the estate and protected by the automatic stay.

48. JF's unwarranted refusals to pay amounts due under the JF Services Agreements constitute acts to exercise control over property of the estate and are expressly prohibited by the automatic stay, which also prohibits the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

49. The harm to Solutions and the Debtors' estates to be caused by these improper withholdings of payment is immediate and irreparable. Without these payments, the Debtors may be in violation of the Cash Collateral Order and would likely be required immediately to lay off hundreds of employees and shut down their operations, sacrificing most of the value to be realized for the Debtors' stakeholders, and likely causing these cases to be converted and liquidated in a chapter 7 fire sale, instead of in an orderly going concern sale under chapter 11.

50. JF's violation of the automatic stay was willful. JF was aware of the bankruptcy filing and understood that the automatic stay was and is in place. Indeed, JF is a sophisticated law firm that practices in the area of bankruptcy and foreclosure. JF acted willfully because it intended to withhold amounts properly due and payable to Solutions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant JF:

1. An injunction requiring JF to (1) pay Solutions all past-due amounts without any setoff and (2) cease and desist soliciting or hiring any of the Debtors' employees to perform any kind of JF Support Services;

2. A declaration that due to JF's actions in causing a reduction of the Debtors' workforce, JF is estopped from asserting breach of contract for any JF Support Services that are not performed or are underperformed due to lack of employees or lack of skilled employees to perform the JF Support Services;

3. Compensatory damages;

4. Punitive damages;

5. Costs of suit, including reasonable attorneys' fees; and

6. An award to Solutions of any further or additional relief that this Court finds equitable, appropriate, or just.

Dated: April 5, 2013

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

*/s/ Steven K. Kortanek*
Steven K. Kortanek (DE Bar No. 3106)
Thomas M. Horan (DE Bar No. 4641)
Ericka F. Johnson (DE Bar No. 5024)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: skortanek@wcsr.com
E-mail: thoran@wcsr.com
E-mail: erjohnson@wcsr.com

-and-

**KIRKLAND & ELLIS LLP**
Christopher Marcus, P.C. (admitted *pro hac vice*)
David S. Meyer (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
E-mail: christopher.marcus@kirkland.com
E-mail: david.meyer@kirkland.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*