## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PROMMIS HOLDINGS, LLC, et al.,[1] | Case No. 13-10551 (BLS) |
| Debtors. | (Jointly Administered) |

## DEBTORS' PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**WOMBLE CARLYLE SANDRIDGE**
**& RICE, LLP**
Steven K. Kortanek (DE Bar No. 3106)
Thomas M. Horan (DE Bar No. 4641)
Ericka F. Johnson (DE Bar No. 5024)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: skortanek@wcsr.com
E-mail: thoran@wcsr.com
E-mail: erjohnson@wcsr.com

**KIRKLAND & ELLIS LLP**
Christopher Marcus, P.C. (admitted *pro hac vice*)
David S. Meyer (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
E-mail: christopher.marcus@kirkland.com
E-mail: david.meyer@kirkland.com

*Counsel to the Debtors and Debtors-in-Possession*

Dated: November 12, 2013

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); EC Mailing Corp. (f/k/a Interface Inc.) (9903); Prommis Homeownership Solutions, Inc. (0569); EC Closing Corp. (8580); EC Posting Closing Corp. (9995); and EC Closing Corp. of Washington (2552). The Debtors' address is P.O. Box 767427, Roswell, Georgia 30076.

# TABLE OF CONTENTS

**Page**

SECTION 1    DEFINITIONS AND INTERPRETATION .................................................1

SECTION 2    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.............................13

    2.1    Administrative Expense Claims..................................................................13

    2.2    Accrued Professional Compensation Claims................................................13

    2.3    Priority Tax Claims...................................................................................15

SECTION 3    CLASSIFICATION OF CLAIMS AND INTERESTS .......................................15

SECTION 4    TREATMENT OF CLAIMS AND INTERESTS .............................................16

    4.1    Class 1—Other Priority Claims. ................................................................16

    4.2    Class 2—Secured Tax Claims. ..................................................................17

    4.3    Class 3—Allowed Secured Lender Claims..................................................17

    4.4    Class 4—Other Secured Claims.................................................................18

    4.5    Class 5A—Prommis General Unsecured Claims. ........................................19

    4.6    Class 5B—EC General Unsecured Claims. .................................................20

    4.7    Class 6—Intercompany Claims. ................................................................21

    4.8    Class 7—Intercompany Interests. ..............................................................21

    4.9    Class 8—Equity Interests..........................................................................21

SECTION 5    ACCEPTANCE OR REJECTION OF THE PLAN ...........................................22

    5.1    Impaired Classes. ....................................................................................22

    5.2    Acceptance by a Class. .............................................................................22

    5.3    Claims and Interests Not Entitled to Vote. .................................................22

SECTION 6    MEANS FOR IMPLEMENTATION .............................................................22

    6.1    Corporate Action......................................................................................22

    6.2    Plan Transactions. ...................................................................................23

    6.3    Effectuating Documents and Further Transactions......................................23

    6.4    Authority to Act. .....................................................................................24

    6.5    Liquidating Trust. ....................................................................................24

    6.6    Administrative and Priority Claims Reserve. ..............................................28

    6.7    Claims for Indemnification by the Indemnified Parties................................28

    6.8    Supplemental Bar Date .............................................................................29

i

SECTION 7    DISTRIBUTIONS ......................................................................29
    7.1    Limited Consolidation .....................................................................29
    7.2    Distribution Record Date. ...............................................................30
    7.3    Date of Distributions. .....................................................................30
    7.4    Postpetition Interest on Claims. ......................................................30
    7.5    Disbursing Agent. ...........................................................................30
    7.6    Powers of Disbursing Agent. ..........................................................31
    7.7    Surrender Instruments. ....................................................................31
    7.8    Delivery of Distributions. ...............................................................31
    7.9    Manner of Payment. ........................................................................31
    7.10   Setoffs. ...........................................................................................32
    7.11   Minimum Distributions. ..................................................................32
    7.12   Allocation of Distributions Between Principal and Interest. ............32
    7.13   Distributions Free and Clear. ..........................................................32
SECTION 8    PROCEDURES FOR DISPUTED CLAIMS .....................................32
    8.1    Allowance of Claims and Interests. ................................................32
    8.2    Objections to Claims. ......................................................................33
    8.3    Estimation of Claims. .....................................................................33
    8.4    Distributions Relating to Disputed Claims. .....................................33
    8.5    Distributions after Allowance. ........................................................33
    8.6    Preservations of Rights to Settle Claims. ........................................34
    8.7    Disallowed Claims. .........................................................................34
SECTION 9    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..............34
    9.1    General Treatment. .........................................................................34
    9.2    Rejection Damages Claims. .............................................................35
    9.3    Reservation of Rights. .....................................................................35
SECTION 10   CONDITIONS PRECEDENT TO EFFECTIVE DATE ...................35
    10.1   Conditions Precedent. .....................................................................35
    10.2   Waiver of Conditions. .....................................................................36
    10.3   Effect of Failure of Conditions. ......................................................36
SECTION 11   EFFECT OF CONFIRMATION .......................................................36
    11.1   Vesting of Assets. ...........................................................................36
    11.2   Binding Effect. ................................................................................37

WCSR 30262403v19

|  |  |  |
|---|---|---|
| 11.3 | Discharge of Claims and Termination of Interests. | 37 |
| 11.4 | Compromise and Settlement of Claims, Interests, and Controversies. | 37 |
| 11.5 | Injunction. | 38 |
| 11.6 | Term of Injunctions or Stays. | 39 |
| 11.7 | Debtor and Estate Releases. | 40 |
| 11.8 | Releases by Holders of Claims and Interests. | 40 |
| 11.9 | Exculpation. | 41 |
| 11.10 | Release of Liens. | 42 |
| 11.11 | Dissolution of Creditors' Committee. | 42 |
| 11.12 | Retention of Causes of Action/Reservation of Rights. | 42 |
| 11.13 | Cancellation of Agreement, Notes, and Interests. | 42 |
| SECTION 12 | RETENTION OF JURISDICTION | 43 |
| SECTION 13 | MISCELLANEOUS PROVISIONS | 44 |
| 13.1 | Payment of Statutory Fees. | 44 |
| 13.2 | Substantial Consummation. | 45 |
| 13.3 | Operations Between the Confirmation Date and the Effective Date. | 45 |
| 13.4 | Tax Treatment of the Liquidating Trust. | 45 |
| 13.5 | Determination of Tax Liabilities. | 45 |
| 13.6 | Amendments. | 45 |
| 13.7 | Revocation or Withdrawal of the Plan. | 46 |
| 13.8 | Continuing Exclusivity of Debtors' Right to Propose Plan. | 46 |
| 13.9 | Severability. | 46 |
| 13.10 | Governing Law. | 46 |
| 13.11 | Time. | 47 |
| 13.12 | Binding Effect on Debtors, Holders and Successors and Assigns. | 47 |
| 13.13 | Entire Agreement. | 47 |
| 13.14 | Effective Notice. | 47 |

WCSR 30262403v19

Prommis Holdings, LLC; Prommis Fin Co.; Prommis Solutions, LLC; E-Default Services LLC; Statewide Tax and Title Services LLC; Statewide Publishing Services LLC; Nationwide Trustee Services, Inc.; Statewide Tax and Title Services of Alabama LLC; Nationwide Trustee Services of Virginia, Inc.; EC Mailing Corp. (f/k/a Interface Inc.); Prommis Homeownership Solutions, Inc.; EC Closing Corp.; EC Posting Closing Corp.; and EC Closing Corp. of Washington (collectively, the "Debtors" or the "Company") hereby propose the following joint plan of liquidation pursuant to chapter 11 of the Bankruptcy Code:

## SECTION 1          DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms used herein shall have the respective meanings defined below:

**1.1** *Accrued Professional Compensation Claims* means at any given moment, all Claims for accrued fees and expenses (including transaction or sale fees) for services rendered by a Professional through and including the Plan Confirmation Date (§ 1.72), to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses, and subject to the budget approved in connection the Final Cash Collateral Order.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claims.

**1.2** *Administrative and Priority Claims Reserve* means the account to be established by the Liquidating Trustee in an authorized depository in the District of Delaware and funded with the Administrative and Priority Claims Reserve Amount pursuant to Section 6.6 of this Plan.

**1.3** *Administrative and Priority Claims Reserve Amount* means cash in an amount to be determined to be funded from the Sale Proceeds and used by the Liquidating Trustee for the payment of Administrative Expense Claims Allowed after the Effective Date, Accrued Professional Compensation Claims Allowed after the Effective Date, Priority Tax Claims Allowed after the Effective Date, Other Priority Claims Allowed after the Effective Date, Secured Tax Claims Allowed after the Effective Date, and Other Secured Claims Allowed after the Effective Date, to the extent that the foregoing have not been paid in full on or prior to the Effective Date.

**1.4** *Administrative Expense Claim* means any Claim pursuant to Bankruptcy Code sections 503(b) and 507(a)(1) arising from actual, necessary costs or expenses of administration of the Chapter 11 Cases and preservation of the Debtors' Estates.

**1.5** *Administrative Expense Claim Bar Date* means the date that is the first Business Day that is thirty (30) days after the Effective Date.

**1.6** *Advisors* means the Debtors' financial advisor and attorneys, and each of their respective employees, members, parent corporations, subsidiaries, affiliates and partners.

1

**1.7** *Affiliate* shall have the meaning set forth in Bankruptcy Code section 101(2).

**1.8** *Agent* means the Agent for the Secured Lenders, as defined in the Final Cash Collateral Order (§ 1.46).

**1.9** *Allowed* means, with respect to any Claim, (i) a Claim against a Debtor that has been listed on the Debtor's Schedules, as such Schedules may be amended from time to time pursuant to Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, or (iii) any Claim expressly allowed by a Final Order or pursuant to this Plan. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed and shall be expunged on the Effective Date without further action by the Debtors or the Liquidating Trustee and without any further notice to or action, order, or approval of the Bankruptcy Court.

**1.10** *Allowed Secured Lender Claims* means the total Claims of the Secured Lenders, which are Allowed Secured Claims pursuant to the Final Cash Collateral Order (§ 1.46), in the amount of not less than $73,979,885.12 as of the March 18, 2013 Petition Date, plus interest, fees and professional fees incurred by the Agent for the Secured Lenders.

**1.11** *Asset Purchase Agreement or Asset Purchase Agreements* means, individually or collectively, (a) that certain *Amended and Restated Asset Purchase Agreement dated as of April 30, 2013, by and among McCalla Raymer LLC as Purchaser, and Prommis Solutions LLC, Statewide Publishing Services, LLC and Statewide Tax and Title Services LLC, as Sellers* as approved by the Bankruptcy Court pursuant to the Sale Order, dated May 1, 2013 [D.I. 270], (b) that certain *Amended and Restated Asset Purchase Agreement dated as of April 30, 2013, by and among Johnson & Freedman L.L.C. as Purchaser, and Prommis Solutions LLC, Statewide Publishing Services, LLC and Statewide Tax and Title Services LLC, as Sellers* as approved by the Bankruptcy Court pursuant to the Sale Order, dated May 2, 2013 [D.I. 276], (c) that certain *Asset Purchase Agreement dated as of May 1, 2013, by and among Pite Duncan, LLP, as Purchaser, and Prommis Solutions, LLC, and Cal-Western Reconveyance Corporation as Sellers* approved by the Bankruptcy Court pursuant to the Sale Order, dated May 2, 2013 [D.I. 277], and (d) that certain *Asset Purchase Agreement dated as of May 14, 2013, by and between Cal-Western Reconveyance Corporation, Reliable Reconveyance Corporation, and Interface, Inc., as Sellers, Prommis Solutions LLC solely with respect to the Prommis Lease, and Cypress Innovations, Inc., as Buyer* approved by the Bankruptcy Court pursuant to the Sale Order, dated May 29, 2013 [D.I. 368].

**1.12** *Assets* means all tangible and intangible assets of every kind and nature of the Debtors and the Estates, including, without limitation, the Causes of Action (§ 1.21), and all proceeds thereof.

1.13    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq.

1.14    ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware.

1.15    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court applicable to the Chapter 11 Cases.

1.16    ***Business*** means the Debtors' business as of the Petition Date (§ 1.70).

1.17    ***Business Day*** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

1.18    ***Carve-Out*** shall have the same meaning as set forth in the Final Cash Collateral Order (§ 1.46).

1.19    ***Cash*** means legal tender of the United States of America.

1.20    ***Cash Collateral,*** with reference to the Secured Lender Claims, shall have the same meaning as set forth in the Final Cash Collateral Order with respect to the Prommis Debtors, and with respect to the EC Debtors, all cash collateral as defined in Section 363(a) of the Bankruptcy Code; and (b) all proceeds of the Collateral of the Secured Lenders (consisting of separate security interests in substantially all of each of the Debtors' assets, including, without limitation, accounts, equipment, inventory, personal property, general intangibles, chattel paper, contracts, deposit accounts, equity interests, fixtures, instruments, intercompany obligations, investment property, patent, trademark and copyright collateral, documents and records, and all proceeds, products, rents and profits of the foregoing, but excluding the Excluded Assets (as defined in that certain Credit and Guaranty Agreement, dated as of June 12, 2012, entered into by and among the Company, the Agent and the Secured Lenders).

1.21    ***Causes of Action*** means, subject to the releases, exculpations, and injunctions set forth in this Plan, any and all claims, causes of action and enforceable rights of a Person against third parties, or assertable by a Person or on behalf of its creditors, its estate, or itself, whether brought in the Bankruptcy Court or any other forum for recovery or avoidance, that has not been settled or resolved as of the Effective Date, of, among other things: (a) obligations, transfers of property or interests in property, offsets, debt forgiveness, Cash, and other types or kinds of property or interests in property or the value thereof, recoverable or avoidable pursuant to Chapter 5 of the Bankruptcy Code or other sections of the Bankruptcy Code or any applicable law, including, but not limited to, those actions that may be asserted against the parties identified in Schedule 2 hereto; (b) damages, general or statutory or exemplary (or all) or other relief, including but not limited to actions relating to or based upon – (i) indebtedness owing to a Person, (ii) fraud, negligence, gross negligence, willful injury or misconduct, acts or malice, or any other tort actions, including but not limited to defamation, malicious prosecution, or tortious interference with contract, (iii) breaches of contract, (iv) violations of federal or state securities laws, (v) violations of applicable corporate, limited

3

liability company or partnership laws, (vi) breaches of fiduciary or agency duties, including, but not limited to, the duties of care and/or loyalty, (vii) recharacterization, (viii) illegal dividends, (ix) misrepresentations, (x) causes of action based on disregard of the corporate form or piercing the corporate veil or other liability theories, (xi) corporate waste, (xii) corporate opportunity, (xiii) any theory of recovery against a lending institution not otherwise released by this Plan, including any action or any action causing harm to a Person, (xiv) equitable or legal subordination, (xv) indemnity rights against third parties, or (xvi) any other action listed in Bankruptcy Rule 7001; and (c) damages or other relief based upon any other claim of a Person to the extent not specifically compromised or released pursuant to this Plan ((b) and (c) above, the "*Non-Avoidance Causes of Actions*").

  **1.22** *Chapter 11 Cases* means the cases commenced in the Bankruptcy Court by the Debtors pursuant to chapter 11 of the Bankruptcy Code.

  **1.23** *Claim* means a "claim," as that term is described in Bankruptcy Code section 101(5), against any Debtor.

  **1.24** *Class* means any group of Claims or Interests classified in Section 3 of this Plan pursuant to Bankruptcy Code section 1122.

  **1.25** *Collateral* means any property or interest in property of the Estate of any Debtor subject to a valid Lien, charge, or other encumbrance to secure the payment or performance of a Claim.

  **1.26** *Committee Avoidance Actions* means the avoidance actions belonging to the Prommis Debtors that were assigned to the Creditors' Committee under the Final Cash Collateral Order (§ 1.46) for the benefit of unsecured creditors represented by the Creditors' Committee, specifically those Causes of Action arising under section 547 of the Bankruptcy Code and recoverable under section 550 of the Bankruptcy Code against any of those Entities identified on Exhibit 2 annexed to the Final Cash Collateral Order, only.

  **1.27** *Committee Settlement* shall have the same meaning as set forth in the Final Cash Collateral Order.

  **1.28** *Contingent Claim* means any contingent or unliquidated Claim asserted or which may be asserted against any Debtor.

  **1.29** *Creditors' Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases of the Prommis Debtors by the United States Trustee on April 2, 2013.

  **1.30** *D&O Liability Insurance Policies* means all insurance policies of any of the Debtors for directors', managers', and officers' liability.

  **1.31** *Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases (§ 1.22) pursuant to Bankruptcy Code sections 1101, 1107(a), and 1108.

4

**1.32** *Disbursing Agent* means any Entity (§ 1.43), including any Debtor and the Liquidating Trustee (§ 1.62), which acts as a Disbursing Agent (§ 1.31) pursuant to Section 7.5 hereof.

**1.33** *Disclosure Statement* means that certain disclosure statement relating to this Plan as amended or modified from time to time, including, among other things, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

**1.34** *Disputed Claim* means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors or any other party in interest which has not been withdrawn or determined by a Final Order.

**1.35** *Distributable Value* shall have the meaning ascribed to such term under the KEIP (§ 1.54) and KEIP Order (§ 1.54).

**1.36** *Distribution* means Cash (§ 1.19), property, interests in property or other value distributed to Holders of Allowed Claims (§ 1.9), or their designated agents, under this Plan.

**1.37** *Distribution Record Date* means five (5) Business Days prior to the Plan Confirmation Date (§ 1.72).

**1.38** *EC Debtors* means the three Debtors whose Petition Date was June 25, 2013, to wit, EC Closing Corp. (formerly named Cal-Western Reconveyance Corporation)(last four digits of Tax ID No.: 8580); EC Posting Closing Corp. (formerly named Reliable Reconveyance Corporation)(9995); and EC Closing Corp. of Washington (2552).

**1.39** *EC General Unsecured Claims* means any General Unsecured Claim (§ 1.48) against any of the EC Debtors (§ 1.38).

**1.40** *Effective Date* means the first Business Day (§ 1.17) after the Plan Confirmation Date (§ 1.72) on which the conditions precedent specified herein have been either satisfied or waived.

5

**1.41** *Effective Date Cash Payment* means Cash (§ 1.19) in an amount equal to the aggregate of all of the following Claims, only to the extent that each is Allowed (§ 1.9) as of the Effective Date (§ 1.40), and only to the extent that any such Allowed Claims have not been paid prior to the Effective Date: Administrative Expense Claims (§ 1.3), Accrued Professional Compensation Claims (§ 1), Priority Tax Claims (§ 1.82), Other Priority Claims (§ 1.66), Secured Tax Claims (§1.105), and Other Secured Claims (§ 1.66).

**1.42** *Effective Date Distributions* means all Distributions required to be made on the Effective Date under this Plan to the holders of Claims that are Allowed as of the Effective Date.

**1.43** *Entity* means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.44** *Estate* means the estate created in each Debtor's chapter 11 bankruptcy case containing all property and other interests of the applicable Debtor pursuant to Bankruptcy Code section 541.

**1.45** *Excluded Party* means the plaintiff in the cause of action styled as Phelan v. Old Alabama Closing Corp., et al., Civil Action No. 2012cv223544, pending in the Superior Court of Fulton County, Georgia.

**1.46** *Final Cash Collateral Order* means that certain Stipulation and Agreed Final Order Authorizing the Debtors' Use of Cash Collateral [D.I. 374].

**1.47** *Final Order* means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

**1.48** *General Unsecured Claim* means any Claim asserted against any Debtor which is not included within any other specifically defined Class hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

**1.49** *GUC Trust* means the General Unsecured Creditor Trust established under the Final Cash Collateral Order.

**1.50** *Impaired* means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Bankruptcy Code section 1124.

6

**1.51    *Indemnification Reserve*** means the reserve in the amount set forth in the Plan Supplement, to be established and maintained by the Liquidating Trustee pursuant to Section 6.7 of this Plan.

**1.52    *Indemnified Parties*** means (a) the members of the Debtors' boards of directors or boards of managers, as applicable, as of the Petition Date, as well as any additional directors or members of a board of managers (if any) appointed from the Petition Date through the Effective Date; (b) the Debtors' officers as of the Petition Date, as well as any additional officers (if any) appointed from the Petition Date through the Effective Date; (c) the Debtors' employees, attorneys, accountants, investment bankers, financial and other advisors; and (d) Matthew T. Vettel, Christopher S. Gaffney, Philip J. Mazzilli, Jr., Philip G. Yates and William P. Anderson.

**1.53    *Interest*** means the interest of any Holder of an equity security of any Debtor, within the meaning of Bankruptcy Code section 101(16), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in a Debtor.

**1.54    *KEIP*** means the Key Employee Incentive Plan approved by the Court in the KEIP Order (§ 1.54).

**1.55    *KEIP Order*** means that certain Order Approving the Debtors' Key Employee Incentive Plan and Granting Related Relief [D.I. 174].

**1.56    *Lien*** means a lien as defined in section 101(37) of the Bankruptcy Code.

**1.57    *Liquidating Trust*** means the trust established on the Effective Date pursuant to Section 6.6 hereof.

**1.58    *Liquidating Trust Agreement*** means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to this Plan.

**1.59    *Liquidating Trust Assets*** means all Assets of the Debtors and the Estates other than (a) the Purchased Assets (§ 1.90), (b) the Effective Date Cash Payment (§ 1.41), and (c) any Cause of Action and Claim released pursuant to Sections 11.7, 11.8, and 11.9 hereof and any Causes of Action and Claims not expressly included in the Liquidating Trustee Causes of Action (§ 1.63).

**1.60    *Liquidating Trust Prommis Assets*** means all Liquidating Trust Assets that derive from property of the Prommis Debtors.

**1.61    *Liquidating Trust EC Assets*** means all Liquidating Trust Assets that derive from property of the EC Debtors.

**1.62    *Liquidating Trustee*** means the disinterested Person appointed by the Debtors pursuant to Section 6.5 hereof to act as trustee of and administer the Liquidating Trust.

7

**1.63** *Liquidating Trustee Causes of Action* means those Reserved Avoidance Actions (§ 1.95) and other Causes of Action which the Liquidating Trustee shall be authorized to pursue and which shall be set forth in the Plan Supplement. For the avoidance of doubt, the Liquidating Trustee shall not be authorized to pursue or seek standing to pursue any Reserved Avoidance Actions other than the Liquidating Trustee Causes of Action.

**1.64** *Local Bankruptcy Rules* means the Local Rule of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware.

**1.65** *Management Representative* means the Person designated by the Debtors, prior to the Confirmation Hearing, to communicate with the Liquidating Trustee regarding the interests of KEIP participants following the Effective Date.

**1.66** *Other Priority Claim* means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Accrued Professional Compensation Claim, or Priority Tax Claim.

**1.67** *Other Secured Claim* means any Secured Claim other than a Secured Lender Claim against any of the Debtors.

**1.68** *Permitted Expenditures* shall have the same meaning as in the Final Cash Collateral Order, provided, however, that the Budget (as defined in the Final Cash Collateral Order) may be modified in writing by and between the Liquidating Trustee and the Agent for the Secured Lenders, without further order of the Bankruptcy Court.

**1.69** *Person* means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof, or any other Entity.

**1.70** *Petition Date* means the date upon which each respective Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing their respective Bankruptcy Cases, which was March 18, 2013 as to eleven Prommis Debtors (§ 1.86) and June 25, 2013 as to the three EC Debtors (§ 1.38).

**1.71** *Plan* means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including, without limitation, all exhibits and schedules hereto and thereto.

**1.72** *Plan Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order.

**1.73** *Plan Confirmation Hearing* means the hearing to be held by the Bankruptcy Court to consider approval of this Plan, as such hearing may be adjourned or continued from time to time.

8

**1.74** *Plan Confirmation Order* means any order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

**1.75** *Plan Documents* means all documents, forms of documents, schedules, and exhibits to this Plan to be executed, delivered, assumed, and/or performed in conjunction with consummation of this Plan on the Effective Date.

**1.76** *Plan Expenses* means all actual and necessary fees, costs, expenses and obligations incurred by or owed to the Liquidating Trustee and its agents, employees, attorneys, advisors and other professionals in administering this Plan and the Liquidating Trust, including, without limitation, (a) reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Liquidating Trustee and its agents, employees and professionals after the Effective Date through and including the date upon which the Bankruptcy Court enters a final decree closing the Chapter 11 Cases, and (b) all fees payable pursuant to Section 13.1 of this Plan; *provided however*, that the Plan Expenses shall not be greater than the Plan Expenses Reserve Amount.

**1.77** *Plan Expenses Reserve* means the account to be established by the Liquidating Trustee in an authorized depository in the District of Delaware and funded with the Plan Expenses Reserve Amount pursuant to Section 6.6 of this Plan to be used for the payment of Plan Expenses.

**1.78** *Plan Expenses Reserve Amount* means $250,000 Cash funded from the Sale Proceeds and used for the payment of Plan Expenses.

**1.79** *Plan Supplement* means the compilation of all Plan Documents to be entered into as of the Effective Date and which will be filed with the Bankruptcy Court not later than ten (10) days prior to the Plan Confirmation Hearing.

**1.80** *Plan Transactions* shall have the meaning ascribed to it in Section 6.3 hereof.

**1.81** *Preserved Actions* means all Reserved Avoidance Actions and other Causes of Action transferred to the Liquidating Trust pursuant to this Plan.

**1.82** *Priority Tax Claim* means any Allowed Claim of a governmental unit pursuant to Bankruptcy Code sections 502(i) and 507(a)(8); provided, however, that any Claims for penalties asserted by governmental units shall not be Priority Tax Claims.

**1.83** *Professional* means any professional firm or professional Person retained by the Debtors in connection with these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.84** *Professional Fee Escrow Account* means an interest-bearing account to hold and maintain an amount of Cash equal to the Professional Fee Reserve Amount funded by

9

the Debtors on the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims.

      **1.85** ***Professional Fee Reserve Amount*** means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated in accordance with this Plan.

      **1.86** ***Prommis Debtors*** means the eleven Debtors whose Petition Date was March 18, 2013, to wit, Prommis Holdings, LLC (last four digits of Tax ID No.: 6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); EC Mailing Corp. (f/k/a Interface Inc.) (9903); and Prommis Homeownership Solutions, Inc. (0569).

      **1.87** ***Prommis General Unsecured Claim*** means any General Unsecured Claim (§ 1.48) against any of the Prommis Debtors (§ 1.86).

      **1.88** ***Proof of Claim or Interest*** means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001 describing the basis and amount of a Claim or Interest, together with supporting documentation evidencing such Claim or Interest, which complies with applicable provisions of this Plan, the Bankruptcy Code, other Bankruptcy Rules, and any orders of the Bankruptcy Court.

      **1.89** ***Pro Rata Share*** means, with respect to any Distribution on account of any Allowed Claim, the ratio that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in the same Class.

      **1.90** ***Purchased Assets*** means the Assets that were sold, transferred, assigned, conveyed, and delivered pursuant to any Sale Order and in accordance with the terms and subject to the conditions of any Asset Purchase Agreement.

      **1.91** ***Purchaser or Purchasers*** means, individually or collectively, any person or entity acquiring Purchased Assets, including, without limitation, Pite Duncan, LLP, McCalla Raymer LLC, Johnson & Freedman L.L.C., and Cypress Innovations, Inc.

      **1.92** ***Released Parties*** means (a) the Debtors, (b) the Agent, (c) the Secured Lenders, (d) the Indemnified Parties, (e) the Creditors' Committee and all members thereof, and (f) with respect to the persons named in (a)-(e) above, such Entity's directors, officers, shareholders, partners, members, employees, agents, affiliates, parents, subsidiaries, predecessors, successors, heirs, executors, and assignees, attorneys, financial advisors, investment bankers, accountants and other professionals or representatives, in each case in their capacity as such; provided, however, that the Released Parties does not include any Excluded Party (§ 1.45).

      **1.93** ***Releasing Parties*** means, collectively, (a) the Debtors, (b) the Debtors' officers and directors as of the Petition Date, (c) the Agent, (d) the Secured Lenders, (e) the

Creditors' Committee and all members thereof, and (f) each Holder of a Claim against or Interest in the Debtors, in each case in their capacity as such.

    **1.94    *Rejection Damages Claims*** means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code by any of the Debtors, as limited, in the case of a rejected unexpired lease, by section 502(b)(6) of the Bankruptcy Code.

    **1.95    *Reserved Avoidance Actions*** means, subject to the releases, exculpations, and injunctions set forth in this Plan, and excluding the Committee Avoidance Actions (§ 1.26), any and all potential claims or causes of action to avoid or transfer property or an obligation incurred by the Debtors pursuant to sections 542 through 553 of the Bankruptcy Code.

    **1.96    *Sale or Sales*** means, individually or collectively, any sale of the Debtors' assets in these Chapter 11 Cases pursuant to the terms and conditions of any Asset Purchase Agreement.

    **1.97    *Sale Proceeds*** means the gross Cash proceeds generated by any Sale and actually received by the Debtors.

    **1.98    *Sale Order or Sale Orders*** means, individually or collectively, any Order of the Bankruptcy Court pursuant to which the Court approves the conveyance to a Purchaser of Purchased Assets, and shall include, without limitation, the following:  (a) *Order Granting Debtors' Motion to Approve (I) Asset Purchase Agreement and Sale of Certain Assets to McCalla Raymer, LLC; (II) Assumption, Assignment and Sale of Designated Leases and Contracts; and (III) Related Bidding and Sale Procedures* [D.I. 270]; (b) *Amended Order Approving Debtors' Motion to Approve (I) Sale of Certain Assets to Johnson & Freedman L.L.C.; (II) Assumption and Assignment of Designated Leases and Contracts and (III) Related Bidding and Sale Procedures* [D.I. 276]; (c) *Order Approving Debtors' Motion to Approve (I) Sale of Certain Assets to Pite Duncan, LLP Pursuant to 11 U.S.C. § 363(b); (II) Assumption and Assignment of Designated Leases and Contracts, and (III) Related Bidding and Sale Procedures* [D.I. 277]; and (d) Order Approving Debtors' Motion to Approve (I) Sale of Certain Assets of Interface, Inc. to Cypress Innovations, Inc.; (II) Assumption and Assignment of Designated Leases and Contracts, and (III) Related Bidding and Sale Procedures [D.I. 368].

    **1.99    *Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended from time to time through the Plan Confirmation Date.

    **1.100    *Secured Claim*** means a Claim (i) secured by a valid and perfected Lien on collateral that is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the Holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with Bankruptcy Code section 506(a); or (ii) secured by the amount of any rights of setoff of the Holder thereof under Bankruptcy Code section 553.

11

**1.101** *Secured Lenders* means the lenders under that certain Credit and Guaranty Agreement, dated as of June 12, 2012 (as amended, restated, supplemented or otherwise modified from time to time), by and among the Company, the Agent, and such lenders.

**1.102** *Secured Lender Cash Collateral* means all Cash Collateral as defined in the Final Cash Collateral Order (§ 1.46).

**1.103** *Secured Lender Deficiency Claim* means the amount by which the Allowed Secured Lender Claims exceed the value of the Collateral that secures such Allowed Secured Lender Claims.

**1.104** *Secured Lender Other Collateral* means (a) with respect to the Prommis Debtors, all Collateral of the Secured Lenders other than Cash Collateral, existing as of the respective Petition Date or granted pursuant to the Final Cash Collateral Order (§ 1.46) and (b) with respect to the EC Debtors, all cash collateral as defined in Section 363(a) of the Bankruptcy Code. For the avoidance of doubt, the proceeds of any Sale Enforcement Action shall constitute Secured Lender Other Collateral for all purposes hereunder

**1.105** *Secured Tax Claim* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

**1.106** *Section 503(b)(3) and (b)(4) Claim* means a Claim for compensation or reimbursement of expenses incurred through and including the Effective Date pursuant to Bankruptcy Code sections 503(b)(3), 503(b)(4), or 503(b)(5). (Section 2.2).

**1.107** *Subordinated 510(b) Claim* means any Claim subordinated pursuant to Bankruptcy Code section 510(b), which shall include any Claim arising from the rescission of a purchase or sale of any Interest, any Claim for damages arising from the purchase or sale of any Interest, or any Claim for reimbursement, contribution or indemnification on account of any such Claim.

**1.108** *Supplemental Bar Date* means the date that is the first Business Day that is thirty (30) days after the Effective Date.

**1.109** *Unimpaired* means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code section 1124.

**1.110** *Voting Agent* means Donlin Recano & Company.

**1.111** *Voting Record Date* means the date established by the Court for determining the current holders of Claims and Interests.

**B.**    Interpretation: Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified

12

from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. Defined terms referenced herein shall, where convenience warrants, have citations to the relevant Definition section styled as "(§ 1.___)."

**SECTION 2**        **ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS**

>    **2.1   Administrative Expense Claims.**

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees with the Debtors or the Liquidating Trustee to a different treatment or has been paid by any applicable Debtor prior to the Effective Date from the Sale Proceeds or otherwise, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Expense Claim is Allowed after the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Liquidating Trustee, as the case may be, or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Expense Claims that have been assumed by the Purchasers pursuant to the Asset Purchase Agreements shall not be an obligation of the Debtors; provided further that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, or liabilities arising under obligations incurred by the Debtors, as Debtors in Possession, in accordance with the Debtors' wind-down budget and to the extent such obligations have not been assumed by the Purchaser, shall be paid by the Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. For the avoidance of doubt, all postpetition tax claims of governmental units have been assumed by the Purchasers and, therefore, do not constitute obligations of the Debtors.

>    **2.2   Accrued Professional Compensation Claims.**

The Holder of an Administrative Expense Claim, other than (i) an Accrued Professional Compensation Claim, (ii) a liability incurred but not yet due and payable in the ordinary course of business by a Debtor until after the thirtieth (30th) day after the Effective Date, (iii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, (iv) an expense or liability incurred in the ordinary course of business on or after the Effective Date, or (v) fees of the United States Trustee arising under 28 U.S.C. § 1930 and any applicable interest thereon, must file with the Bankruptcy Court and serve on the Debtors, the Liquidating Trustee, and the Office of the United States Trustee, a request for payment of such Administrative Expense Claim so as to be received on or before the Administrative Expense Claim Bar Date. Failure to file and serve such request for payment timely and properly shall result in the Administrative Expense Claim being forever barred and discharged.

### 2.2.1 Administrative Expense Claim Bar Date

Those Holders of Administrative Expense Claims that have not been previously deemed Allowed by a final, non-appealable order of the Bankruptcy Court must file a request for payment by the Administrative Expense Claim Bar Date. Failure to timely file and serve such a request for payment shall result in any Administrative Expensive Claims being forever barred and discharged.

### 2.2.2 Final Fee Applications.

All final requests for payment of Claims of a Professional shall be filed no later than 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.

### 2.2.3 Professional Fee Escrow Account.

In accordance with this Plan, on the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Debtors' Estates and shall not vest with the Liquidating Trustee. The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order, and are subject to the budget approved in connection with the Final Cash Collateral Order. When all Allowed Accrued Professional Compensation Claims are paid in full in Cash, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Liquidating Trustee for distribution in accordance with the Plan.

### 2.2.4 Professional Fee Reserve Amount.

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall estimate their Accrued Professional Compensation Claims prior to and as of the Confirmation Date, along with an estimate of fees and expenses to be incurred through the Effective Date, and shall deliver such estimate to the Debtors, counsel to the Committee, and

14

counsel to the Agent no later than five days prior to the anticipated Confirmation Date; provided, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

### 2.2.5   Post-Plan Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, the Debtors shall pay Professionals and other Entities for any work performed in the ordinary course of business without any further notice after the Plan Confirmation Date.

### 2.3   Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees with the Debtors or the Liquidating Trustee to a different treatment or has been paid by any applicable Debtor prior to the Effective Date from the Sale Proceeds or otherwise, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash over a period ending not later than two (2) years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim together with interest accrued thereon at the applicable non-bankruptcy rate. The Debtors reserve the right to prepay at any time under this option. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. Any Claims asserted by a governmental unit on account of any penalties and assessments shall not be Priority Tax Claims. On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person. The Debtors estimate that an aggregate amount of approximately $251,739.89 or less in Allowed Priority Tax Claims will be paid during these Chapter 11 Cases in accordance with this Plan.

## SECTION 3        CLASSIFICATION OF CLAIMS AND INTERESTS

A.        The following table designates the Classes of Claims against and Interests in the Debtors' Estates, and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with section 1126 of the Bankruptcy Code, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan. A Claim or Interest is classified in a particular Class only to the extent that any such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

15

| Class | Claim | Treatment | Voting Rights |
|-------|-------|-----------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 3 | Allowed Secured Lender Claims | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5A | Prommis General Unsecured Claims | Impaired | Entitled to Vote |
| 5B | EC General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Accept |
| 7 | Intercompany Interests | Impaired | Deemed to Accept |
| 8 | Equity Interests | Impaired | Deemed to Reject |

## SECTION 4    TREATMENT OF CLAIMS AND INTERESTS

The treatment and voting rights provided to each Class for distribution purposes is specified below:

### 4.1    Class 1—Other Priority Claims.

(a)    *Classification*: Class 1 consists of all Other Priority Claims.

(b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Debtors or the Liquidating Trustee to a different treatment of such Claim, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date from the Sale Proceeds or otherwise, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Debtors or Liquidating Trustee, as the case may be, and the Holder of the Allowed Other Priority Claim.

The Debtors do not anticipate that there will be any Allowed Other Priority Claims.

16

(c)    *Voting*: Class 1 is Unimpaired, and Holders of Class 1 Other Priority Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**4.2    Class 2—Secured Tax Claims.**

(a)    *Classification*: Class 2 consists of all Secured Tax Claims.

(b)    *Treatment*: Except to the extent that any such Allowed Secured Tax Claim has not been paid in full prior to the Effective Date from the Sale Proceeds (§ 1.96) or otherwise, on the Effective Date or as soon as thereafter is as reasonably practicable, each Holder of an Allowed Secured Tax Claim shall receive, at the option of the Debtors or the Liquidating Trustee, the proceeds of the sale or disposition of the collateral securing such Allowed Secured Tax Claim to the extent of the value of the Holder's secured interest in the Allowed Secured Tax Claim.

The Liens securing such Allowed Secured Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

The Debtors and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Secured Tax Claims.

The Debtors do not anticipate that there will be any Allowed Secured Tax Claims.

(c)    *Voting*: Class 2 is Unimpaired, and Holders of Class 2 Secured Tax Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

**4.3    Class 3—Allowed Secured Lender Claims.**

(a)    *Classification*: Class 3 consists of all Allowed Secured Lender Claims.

17

(b)     *Treatment*:  The Holders of the Allowed Secured Lender Claims (§ 1.10) shall receive distributions of all realized Secured Lender Cash Collateral (§ 1.102) and any Secured Lender Other Collateral (§ 1.102), subject only to Permitted Expenditures (§ 1.68) and the terms of the Carve-Out (§ 1.18).

Following the Effective Date, the Holders of the Allowed Secured Lender Claims shall continue to receive distributions, from the Liquidating Trustee through the Agent, of available Secured Lender Cash Collateral net of reserves for the Carve-Out and Permitted Expenditures as set forth in the Final Cash Collateral Order, as well as any Secured Lender Other Collateral (if any) (§ 1.104), in full and final satisfaction, settlement, release, and discharge of each Allowed Secured Lender Claim.

The Allowed Secured Lender Claims materially exceed the value of the Collateral that secures such Allowed Secured Lender Claims, and the Holders of the Allowed Secured Lender Claims have Allowed General Unsecured Claims in Classes 5A and 5B for the Secured Lender Deficiency Claim (§ 1.103).

(c)     *Voting*:  Class 3 is Impaired. Therefore, Holders of Allowed Class 3 Secured Lender Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan.

**4.4     Class 4—Other Secured Claims.**

(a)     *Classification*:  Class 4 consists of all Other Secured Claims.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim has agreed with the Debtors or the Liquidating Trustee to a different treatment of such Claim, and only to the extent that any such Allowed Other Secured Claim has not been paid in full prior to the Effective Date from the Sale Proceeds or otherwise, in full and final satisfaction, settlement, release, and discharge of each Allowed Other Secured Claim, each such Holder, at the option of the Debtors, shall (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed Other Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, in each case on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable.

In the event the Debtors or the Liquidating Trustee treat a Claim under clause (i) of this Section, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

The Debtors and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Other Secured Claims. If an Allowed Other Secured Claim exceeds the value of the collateral that secures such Allowed Other Secured Claim, the Holder of such Allowed Other Secured Claim will have a General Unsecured Claim for the deficiency.

(c)   *Voting:*   Class 4 is Unimpaired, and Holders of Class 4 Other Secured Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 4 Other Secured Claims are not entitled to vote to accept or reject the Plan.

## 4.5    Class 5A—Prommis General Unsecured Claims.

(a)   *Classification:*   Class 5A consists of Prommis General Unsecured Claims (§ 1.87).

(b)   *Treatment:*   Except to the extent that a Holder of an Allowed Prommis General Unsecured Claim has agreed to a different treatment of such Claim, and only to the extent that any such Allowed Prommis General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date from the Sale Proceeds or otherwise, in full and final satisfaction, settlement, release, and discharge of each Allowed Prommis General Unsecured Claim, each Holder of an Allowed Prommis General Unsecured Claim will receive on account of such Allowed Prommis General Unsecured Claim such Holder's Pro Rata Share of any proceeds of the Liquidating Trust Prommis Assets (§ 1.60) only after satisfaction in full of all Allowed Claims in Classes 1, 2, 3 and 4, with interest and fees as allowable under applicable law.

Separately from this Plan, as set forth in the Final Cash Collateral Order, and fully consummated by the Secured Lenders on or about July 19, 2013, the Secured Lenders directly funded from their own property the GUC Trust (§ 1.49) for Holders of Allowed Prommis General Unsecured Claims, and agreed to the assignment of the

19

relevant Debtors' estates' rights with respect to the Committee Avoidance Actions (§ 1.26). Upon confirmation of the Plan, the Committee Avoidance Actions shall have been deemed properly and unconditionally assigned by the Prommis Debtors to the GUC Trust. Payments shall be made from the GUC Trust to Holders of Allowed Prommis General Unsecured Claims irrespective of whether Allowed Claims in Classes 1, 2, 3, and 4 have been satisfied.

(c)     *Voting:* Class 5A is Impaired. Therefore, Holders of Allowed Class 5A Prommis General Unsecured Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan.

**4.6   Class 5B—EC General Unsecured Claims.**

(d)     *Classification:* Class 5B consists of all EC General Unsecured Claims (§ 1.39).

(e)     *Treatment:* Except to the extent that a Holder of an Allowed EC General Unsecured Claim has agreed to a different treatment of such Claim, and only to the extent that any such Allowed EC General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date from the Sale Proceeds or otherwise, in full and final satisfaction, settlement, release, and discharge of each Allowed EC General Unsecured Claim, each Holder of an Allowed EC General Unsecured Claim will receive on account of such Allowed EC General Unsecured Claim such Holder's Pro Rata Share of any proceeds of the Liquidating Trust EC Assets (§ 1.61), only after satisfaction in full of all Allowed Claims in Classes 1, 2, 3 and 4, with interest and fees as allowable under applicable law (except as provided in this section with respect to recoveries if any available to Holders of Allowed EC General Unsecured Claims from Net Recoveries from Reserved Avoidance Actions).

The Liquidating Trust EC Assets include Reserved Avoidance Actions (§ 1.95) arising in the EC Debtors' Chapter 11 Cases. Holders of Allowed EC General Unsecured Claims will share pro-rata any Net Recoveries from Reserved Avoidance Actions in the EC Debtors' Chapter 11 Cases (§1.38).

(f)     *Voting:* Class 5B is Impaired. Therefore, Holders of Allowed Class 5B General Unsecured Claims as of the Voting Record Date are entitled to vote to accept or reject the Plan.

20

4.7    **Class 6—Intercompany Claims.**

(a)    *Classification*:    Class 6 consists of all Intercompany Claims between the Debtors.

(b)    *Treatment:*    On the Effective Date all Intercompany Claims between the Debtors will be cancelled and compromised, and Holders of Intercompany Claims shall receive no distribution on account of such Intercompany Claims.

(c)    *Voting:*    Notwithstanding the treatment of Class 6 Intercompany Claims, the Holders of Intercompany Claims, by virtue of their status as Debtors or Affiliates of Debtors, are deemed to accept the Plan. Therefore, Holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

4.8    **Class 7—Intercompany Interests.**

(d)    *Classification*:    Class 7 consists of all Intercompany Interests between the Debtors.

(e)    *Treatment:*    On the Effective Date all Intercompany Interests between the Debtors will be cancelled and compromised, and Holders of Intercompany Interests shall receive no distribution on account of such Intercompany Interests.

(f)    *Voting:*    Notwithstanding the treatment of Class 7 Intercompany Interests, the Holders of Intercompany Interests, by virtue of their status as Debtors or Affiliates of Debtors, are deemed to accept the Plan. Therefore, Holders of Class 7 Intercompany Interests are not entitled to vote to accept or reject the Plan.

4.9    **Class 8—Equity Interests.**

(g)    *Classification*:    Class 6 consists of all Equity Interests in the Debtors.

(h)    *Treatment:*    On the Effective Date all Equity Interests in the Debtors will be cancelled and compromised, and Holders of Equity Interests shall receive no distribution on account of such Equity Interests.

(i)    *Voting:*    Class 8 is Impaired, and Holders of Equity Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore Holders of Class 8 Equity Interests are not entitled to vote to accept or reject the Plan.

WCSR 30262403v19

**SECTION 5**       **ACCEPTANCE OR REJECTION OF THE PLAN**

    **5.1   Impaired Classes.**

Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that may receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan. Each Holder of an Allowed Claim in such an Impaired Class as of the Voting Record Date shall receive a ballot and may cast a vote to accept or reject this Plan.

Classes 6, 7, and 8 are not entitled to receive or retain any Distributions or property under this Plan and are, therefore, conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Classes 3 and 5 are Impaired and are the only Classes of Claims or Interests entitled to vote on this Plan.

    **5.2   Acceptance by a Class.**

A Class of Claims entitled to vote to accept or reject this Plan shall be deemed to accept this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept this Plan. Classes 1, 2, and 4 are Unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

    **5.3   Claims and Interests Not Entitled to Vote.**

Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (a) has been disallowed, (b) is the subject of a pending objection, or (c) (i) was not listed on the Debtors' Schedules or was listed on the Debtors' Schedules as unliquidated, contingent or disputed, and (ii) a Proof of Claim was not filed or was filed for an unliquidated, contingent or disputed claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim.

**SECTION 6**       **MEANS FOR IMPLEMENTATION**

    **6.1   Corporate Action.**

      **6.1.1   Transfer of Assets and Assumption of Liabilities.**

On the Effective Date, (i) the Debtors shall, in accordance with this Plan, cause the Liquidating Trust Assets to be transferred to the Liquidating Trust and (ii) the Liquidating Trust shall assume all obligations of the Debtors under this Plan.

      **6.1.2   Dissolution of the Debtors.**

On the Effective Date and upon (i) the Debtors, or such entity designated by the Debtors, making the Effective Date Distributions and (ii) the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust in accordance with Section 6.2.1 of this Plan, the

22

Debtors shall have no further duties or responsibilities in connection with implementation of this Plan, and the members of the board of directors or managers, as the case may be, of each of the Debtors shall be deemed to have resigned. Upon entry of a final decree closing the Chapter 11 Cases, each of the Debtors shall be dissolved for all purposes in accordance with applicable state law.

### 6.1.3    Cancelation of Existing Securities and Agreements.

On the Effective Date, all agreements and other documents evidencing (i) any Claim or rights of any holder of a Claim against the Debtors, including any notes evidencing such Claims or (ii) any Interest in the Debtors, including any options or warrants to purchase Interests, shall be canceled. The holders of, or parties to, such canceled agreements and documents shall have no rights arising from or relating to such agreements and documents or the cancelation thereof, except any rights provided pursuant to this Plan.

### 6.2    Plan Transactions.

On the Effective Date or as soon thereafter as is reasonably practicable, the Debtors and the Liquidating Trustee may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan (the "Plan Transactions"), including, but not limited to, (i) the execution and delivery of appropriate agreements or other documents of financing, merger, consolidation, restructuring, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable law, (ii) the execution and delivery of any appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, duty or obligation on terms consistent with this Plan, (iii) the filing of appropriate certificates of incorporation or other similar documents with the appropriate governmental authorities pursuant to applicable law, and (iv) any and all other actions that the Debtors or Liquidating Trustee determine are necessary or appropriate.

### 6.3    Effectuating Documents and Further Transactions.

Upon entry of the Plan Confirmation Order, the Debtors and the Liquidating Trustee shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, resolutions, programs, and other agreements and/or documents, and take such acts and actions as may be reasonable, necessary, or appropriate to effectuate, implement, consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan. The Debtors or Liquidating Trustee, as applicable, and all Holders of Claims or Interests receiving Distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### 6.4    Authority to Act.

Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as applicable) pursuant to the applicable law of the states or jurisdictions in which the Debtors are formed, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors or notice to, order of, or hearing before, the Bankruptcy Court.

### 6.5    Liquidating Trust.

#### 6.5.1    Establishment of Liquidating Trust.

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be filed with the Bankruptcy Court prior to the Plan Confirmation Hearing.  Upon establishment of the Liquidating Trust, all Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of any of the Debtors or any employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

#### 6.5.2    Transfer of Trust Assets.

Pursuant to Bankruptcy Code section 1141, all transfers and contributions made pursuant to this Section 6 shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust's beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of this Plan, as a transfer to the Liquidating Trust's beneficiaries, followed by a transfer by such Liquidating Trust's beneficiaries to the Liquidating Trust, and the Liquidating Trust's beneficiaries will be treated as the grantors and owners thereof.

#### 6.5.3    Purpose of Liquidating Trust.

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, prosecuting, settling or foregoing pursuit of any Reserved Avoidance Actions and other Causes of Action transferred to the Liquidating Trust, to maximize recoveries for the benefit of the Liquidating Trust's beneficiaries, and making distributions in accordance with this Plan to the Liquidating Trust's beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust's beneficiaries treated as grantors and owners of the trust.

### 6.5.4    Liquidating Trustee.

(i)    *Retention of Liquidating Trustee.*  The Liquidating Trustee will be a Person designated by the Debtors, in consultation and with the consent of the Agent, prior to the Plan Confirmation Hearing.  The Liquidating Trustee shall file with the Bankruptcy Court a declaration setting forth connections with creditors and parties in interest in the Debtors' cases. Once appointed, the Liquidating Trustee shall act as the representative of the Estates for all purposes.  Pursuant to Bankruptcy Code section 1123(b)(3), the Liquidating Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, Claims, any Reserved Avoidance Actions (§ 1.95) and other Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust's beneficiaries. In the event that the Liquidating Trustee resigns, is removed, terminated or otherwise unable to serve as the Liquidating Trustee, then a successor shall be jointly appointed by the Agent and the Management Representative, or in the absence of agreement, by the Bankruptcy Court based on sealed two-page letter submissions by the Agent and the Management Representative.  Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of this Plan, the Plan Confirmation Order and the Liquidating Trust Agreement.

(ii)    *Responsibilities and Authority of the Liquidating Trustee.* The responsibilities and authority of the Liquidating Trustee shall include: (a) calculating and implementing all Distributions for the Liquidating Trust's beneficiaries; (b) administering and paying taxes, including, among other things, (i) filing of tax returns, and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit; (c) periodic reporting to the Liquidating Trust's beneficiaries of the status of prosecution of any Reserved Avoidance Actions and other Causes of Action; (d) liquidating the Liquidating Trust Assets and providing payments to the Liquidating Trust's beneficiaries in accordance with the provisions of this Plan; (e) retaining and paying at normal and customary rates or contingency fee basis, on a monthly basis, professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and Liquidating Trust Agreement; (f) distributing information statements as required for federal income tax and other applicable tax purposes; (g) filing an application for entry by the Bankruptcy Court of a final decree closing each of the Chapter 11 Cases; and (h) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of this Plan. In addition, after the Plan Confirmation Date, the Liquidating Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation status reports every three months, on or before each of the fifteenth (15th) day of January, April, July, and October as appropriate, until the Chapter 11 Cases are closed, converted, or dismissed, whichever happens earlier.

(iii)    *Powers of the Liquidating Trustee.*  The powers of the Liquidating Trustee to administer the Liquidating Trust shall, without any further Bankruptcy Court approval in each of the following cases, include, without limitation, (a) the power to invest funds, in accordance with section 345 of the Bankruptcy Code, in, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trustee in accordance with this Plan and Liquidating Trust Agreement, (b) the power to engage and compensate without prior Bankruptcy Court order or approval employees

25

and professionals to assist the Liquidating Trustee with respect to its responsibilities, (c) the power to pursue, prosecute, resolve and compromise and settle any Liquidating Trustee Causes of Action (§ 1.63) and other Causes of Action on behalf of the Liquidating Trust without prior Bankruptcy Court approval but in accordance with the Liquidating Trust Agreement, (d) the power to object to claims, including, without limitation, the power to subordinate and recharacterize claims by objection, motion, or adversary proceeding, and (e) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Plan. Except as expressly set forth herein and in the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any Liquidating Trustee Causes of Action as it determines is in the best interests of the beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of its decision, other than those decisions constituting gross negligence or willful misconduct. For the avoidance of doubt, the Liquidating Trustee shall not be authorized to pursue or seek standing to pursue any Reserved Avoidance Actions other than the Liquidating Trustee Causes of Action. Notwithstanding the foregoing, the Liquidating Trustee shall consult with the Agent and the Management Representative (§ 1.65) prior to carrying out any material action. The extent to which any Liquidating Trustee Causes of Action are pursued shall be subject to review and approval by the Agent, in the reasonable exercise of the Agent's discretion. The Liquidating Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash. The Liquidating Trustee is authorized to enforce the terms of any Sale Order and/or associated asset purchase agreement as against any Purchaser, including, without limitation, serving as successor to the relevant Debtors in any enforcement litigation pending on the Effective Date, and to commence litigation to enforce any such payment obligation of a Purchaser (a "Sale Enforcement Action"). In the event the Liquidating Trustee determines that a Sale Enforcement Action is required, the Liquidating Trustee shall confer with the Agent and the Management Representative in a good faith effort to reach consensus on a budget and objectives for the Sale Enforcement Action. In the event that funds available in the Trust are insufficient to pay the reasonable costs, fees, and expenses of the Liquidating Trustee and his or her professionals to enforce a Sale Order against a Purchaser (collectively, the "Sale Enforcement Costs") the Sale Enforcement Costs shall be recovered from the proceeds of such Sale Enforcement Action.

> (iv) *Prosecution of Liquidating Trustee Causes of Actions and Other Causes of Action.* Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee, on behalf of and for the benefit of the Liquidating Trust's beneficiaries, shall be vested with and shall retain and may enforce any Liquidating Trustee Causes of Action transferred to the Liquidating Trust that were held by, through, or on behalf of the Debtors and/or the Estates against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date. The recoveries from any Liquidating Trustee Causes of Action and Causes of Action transferred to the Liquidating Trust will be deposited into the Liquidating Trust and distributed in accordance with the Liquidating Trust Agreement and this Plan.

> (vi) *Valuation of Assets.* As soon as practicable after the Effective Date, the Liquidating Trustee shall provide a report to the Agent and the Management Representative reflecting the face amount of the remaining installment payments due from the

26

Purchasers, which constitutes all or substantially all of the anticipated value of the Liquidating Trust. Such value, or any reasonable discounted value, may be used by the Liquidating Trustee for valuation of the Liquidating Trust for the beneficiaries' federal income tax purposes.

*(vii)* *Compensation of Liquidating Trustee.* The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Plan Confirmation Order, and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to file a fee application to receive compensation.

*(viii)* *Retention and Payment of Professionals.* The Liquidating Trustee, in consultation with the Agent and the Management Representative, shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his duties and compensate such professionals from the assets of the Plan Expenses Reserve as set forth in the Liquidating Trust Agreement.

*(ix)* *Limitation on Liability of the Liquidating Trustee.* The Liquidating Trustee and his professionals shall be entitled to indemnification against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or its professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidating Trustee or his professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the Delaware Rules of Professional Conduct, malpractice.

### 6.5.5    Plan Expenses.

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Plan Expenses. All Plan Expenses shall be charged against and paid from the Plan Expenses Reserve and, thereafter, paid from the Liquidating Trust. On the Effective Date, the Liquidating Trustee shall establish the Plan Expenses Reserve with the Plan Expenses Reserve Amount, funded from the Sale Proceeds, which Plan Expenses Reserve Amount shall vest in the Liquidating Trust free and clear of all Liens, Claims, encumbrances, charges and other interests. Upon satisfaction of all valid Plan Expenses and entry by the Bankruptcy Court of a final decree closing each of the Chapter 11 Cases, any remaining balance of the Plan Expenses Reserve shall be distributed by the Liquidating Trustee to the Liquidating Trust's beneficiaries in accordance with this Plan as soon as practicable thereafter.

### 6.5.6    Termination of Liquidating Trust.

The Liquidating Trust shall be dissolved upon the earlier of the distribution of all of its assets to the Liquidating Trust's beneficiaries and the third anniversary of the creation of the Liquidating Trust, provided that, if warranted by the facts and circumstances involved in

27

resolving any Reserved Avoidance Actions or other Causes of Action, upon application to, and if approved by, the Bankruptcy Court upon a finding such extension is necessary for purposes of resolving such Reserved Avoidance Actions or other Causes of Action and distributing the proceeds to Liquidating Trust's beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified, finite term. Notwithstanding the foregoing, the Liquidating Trust shall be automatically terminated in the event that a final decree is entered closing each of the Chapter 11 Cases or if the Chapter 11 Cases are converted or dismissed.

### 6.5.7   Exculpation Relating to the Liquidating Trust.

No Holder of a Claim or Interest or any other party in interest will have, or otherwise pursue, any Claim or cause of action against the Liquidating Trustee, the Liquidating Trust or the employees or professionals thereof (solely in the performance of their duties), for making payments and Distributions in accordance with this Plan or for fulfilling any functions incidental to implementing the provisions of this Plan or the Liquidating Trust, except for any acts or omissions to act that are the result of bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the Delaware Rules of Professional Conduct, malpractice.

### 6.6   Administrative and Priority Claims Reserve.

On the Effective Date, the Liquidation Trustee shall establish the Administrative and Priority Claims Reserve (Def. § 1.1) with the Administrative and Priority Claims Reserve Amount (Def. § 1.3) in an authorized depository in the District of Delaware, funded from the Sale Proceeds (Def. § 1.96), which funds shall vest in the Liquidation Trust free and clear of all liens, Claims, encumbrances, charges and other interests. Funds in the Administrative and Priority Claims Reserve shall be used by the Liquidating Trustee only for the payment of Administrative Expense Claims Allowed after the Effective Date, Accrued Professional Compensation Claims Allowed after the Effective Date, Priority Tax Claims Allowed after the Effective Date, Other Priority Claims Allowed after the Effective Date, Secured Tax Claims Allowed after the Effective Date, and Other Secured Claims Allowed after the Effective Date, to the extent that the foregoing Claims have not been paid in full on or prior to the Effective Date. To the extent any funds remain in the Administrative and Priority Claims Reserve after all of the foregoing Claims have been paid or otherwise satisfied in full, such remaining funds shall be distributed by the Liquidating Trustee to the other beneficiaries of the Liquidating Trust in accordance with the Plan.

### 6.7   Claims for Indemnification by the Indemnified Parties.

The Indemnified Parties shall each hold Allowed Claims for any and all rights and entitlements that the Indemnified Parties have or may have to indemnification, contribution, reimbursement or other payments, including damages, costs and expenses related thereto from the Debtors, including, without limitation, those arising in respect of or by reason of the fact that the Indemnified Parties served as directors or officers of the Debtors or their predecessors and served at the request of, or for the benefit of, the Debtors or their predecessors as directors or officers. The Indemnified Parties shall also each hold Allowed Claims for the right to all benefits

28

under certain director and officer insurance programs and other insurance policies to which the Indemnified Parties are entitled in their current or former capacities as directors or officers of the Debtors or their predecessors. The Liquidating Trustee shall establish and maintain the Indemnification Reserve (§ 1.51) upon the Effective Date, which shall be maintained until the first anniversary of the Effective Date.

Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise modify any indemnity obligations arising under the D&O Liability Insurance Policies. In addition, after the Effective Date, the Liquidating Trustee shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect on the Petition Date, and all directors and officers of the Debtors who served in such capacity as of the Petition Date at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

### 6.8    Supplemental Bar Date

Those Holders of certain litigation and related claims listed on Schedule 1 hereto, must file a Proof of Claim in the manner indicated in Schedule 1.1, the Supplemental Bar Date Notice, so as to be received on or before the Supplemental Bar Date. Failure to file and serve such Proof of Claim timely and properly shall result in any claim held by those parties listed on Schedule 1 hereto being forever barred and discharged.

### SECTION 7          DISTRIBUTIONS

### 7.1    Limited Consolidation

Based upon the valuation of the Debtors' secured debt in light of the capital structure of the Company, the Debtors believe that under a strict interpretation of the absolute priority rule, Holders of EC General Unsecured Claims and Prommis General Unsecured Claims would not receive any Distributions. Accordingly, to promote efficient administration and effectuation the Plan, including for purposes of Distributions to be made under the Plan, the Debtors seek authority under Bankruptcy Code section 105 and Bankruptcy Rule 9019 (a) to consolidate the Prommis Debtors solely with respect to Holders of Prommis General Unsecured Claims, and (b) to consolidate the EC Debtors solely with respect to Holders of EC General Unsecured Claims (the "Consolidations").

The Consolidations (other than for the purpose of effectuating the Plan) shall not affect: (1) the legal and corporate structures of the Debtors; (2) pre- and post-Effective Date guarantees, liens and security interests that are required to be maintained (a) in connection with executory contracts and unexpired leases that have been or will be assumed, if any, or (b) pursuant to the Plan; (3) subsidiary Interests between and among the Debtors; (4) distributions from any insurance policies or proceeds of such policies; and (5) the vesting of assets in the Liquidating Trust.

29

This Plan shall serve as a motion seeking entry of an order consolidating (a) the Prommis Debtors, and, separately, (b) the EC Debtors, as described and to the limited extent set forth above solely with respect to Classes 5A and 5B, respectively. Unless an objection to such consolidation is made in writing by any creditor affected by the Plan, filed with the Bankruptcy Court and served on the parties listed in Section 13.14 of this Plan in accordance with the objection procedures established by the Bankruptcy Court, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto shall occur at or before the Confirmation Hearing.

### 7.2    Distribution Record Date.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Interests. The Debtors or the Liquidating Trustee shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Debtors, the Liquidating Trustee, or any party responsible for making Distributions shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 7.3    Date of Distributions.

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable. Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed. Distributions made after the Effective Date to holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Plan, no interest shall accrue or be payable with respect to such Claims or any distribution related thereto. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.4    Postpetition Interest on Claims.

Except as may be otherwise expressly provided herein, including in Section 2.3 hereof, postpetition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of any such Claim against the Debtors shall be entitled to payment or Distributions on account of interest accruing on or after the Petition Date.

### 7.5    Disbursing Agent.

All Distributions hereunder shall be made by the Debtors, the Liquidating Trustee, or their named successor or assign, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. For the avoidance of doubt, the Debtors, or such other entity designated by the Debtors, shall act as Disbursing Agent with respect to all Effective Date Distributions. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Disbursing Agent.

### 7.6    Powers of Disbursing Agent.

The Disbursing Agent may (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan, (ii) make all Distributions contemplated hereby, and (iii) perform such other duties as may be required of the Disbursing Agent pursuant to this Plan.

### 7.7    Surrender Instruments.

Pursuant to Bankruptcy Code section 1143, as a condition precedent to receiving any Distribution under this Plan, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee. Any holder of such instrument or note that fails to (i) surrender the instrument or note or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Plan Confirmation Date shall be deemed to have forfeited all rights and claims and may not participate any Distribution hereunder.

### 7.8    Delivery of Distributions.

Subject to applicable Bankruptcy Rules, all Distributions to Holders of Allowed Claims shall be made to the Disbursing Agent who shall transmit such Distributions to the applicable Holders of Allowed Claims or their designees. If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such Holder, and no Distribution to such Holder shall be made unless and until the Disbursing Agent is notified by the Holder of the current address of such Holder within ninety (90) days of such Distribution, at which time a Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the Distribution. After such date, all unclaimed property or interest shall revert to the Liquidating Trust to be distributed in accordance with the terms of the Liquidating Trust Agreement, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 7.9    Manner of Payment.

Any distributions to be made by or on behalf of the Debtors pursuant to this Plan shall be made by checks drawn on accounts maintained by the Debtors or the Liquidation Trustee, as

applicable, or by wire transfer if circumstances justify, at the option of the Debtors or the Liquidation Trustee, as applicable.

### 7.10 Setoffs.

The Debtors and the Liquidating Trustee, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, with the approval of the Bankruptcy Court and upon no less than three (3) days notice to the applicable Holder of a Claim or Interest, or as may be agreed to by the Holder of a Claim or Interest, may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of such Allowed Claim or Interest), any claims of any nature whatsoever that the Debtors may have against the Holder of such Allowed Claim or Interest, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee of any such claim the Debtors may have against the Holder of such Claim or Interest.

### 7.11 Minimum Distributions.

No payment of Cash in an amount of less than $50.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and the Liquidating Trust Agreement. If the Cash available for the final Distribution is less than $15,000, and the Liquidating Trustee, in his sole discretion, determines that it would cost more than $5,000 to distribute such funds, the Liquidating Trustee may donate such funds to the charity of his or her choice in consultation with the Agent and the Management Representative.

### 7.12 Allocation of Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a Distribution under this Plan includes both principal and accrued but unpaid interest, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 7.13 Distributions Free and Clear.

Except as otherwise provided in this Plan, any Distribution or transfer made under this Plan, including, without limitation, Distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges and other interests, and no other entity shall have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to this Plan.

## SECTION 8          PROCEDURES FOR DISPUTED CLAIMS

### 8.1    Allowance of Claims and Interests.

32

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Plan Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Plan Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.  Prior to and following the Effective Date, the Liquidating Trust shall be vested with any and all rights and defenses each Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

### 8.2    Objections to Claims.

The Debtors and the Liquidating Trustee shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests under this Plan or otherwise.  Any objections to Claims shall be served and filed on or before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.

### 8.3    Estimation of Claims.

Before or after the Effective Date, the Debtors or the Liquidating Trustee may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim.

### 8.4    Distributions Relating to Disputed Claims.

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's Pro Rata Share of the property distributable with respect to the Class in which such Claim belongs.  To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the Holders of Allowed Claims in the same Class.

### 8.5    Distributions after Allowance.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the

33

Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

### 8.6   Preservations of Rights to Settle Claims.

Except as otherwise expressly provided herein, including in Section 11.8 of this Plan (Releases), nothing contained in this Plan, the Plan Documents, or in the Plan Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors may have or which the Liquidating Trustee may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, and (ii) the turnover of all property of the Debtors' Estates. This Section shall not apply to any claims released, waived, relinquished, exculpated, compromised, or settled under this Plan or pursuant to a Final Order, expressly including the Final Order approving the Sale.  Except as expressly provided in this Plan, nothing contained in this Plan, the Plan Documents, or in the Plan Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense. No Entity may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any cause of action against it as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available causes of action against them.  The Debtors and the Liquidating Trustee expressly reserve all rights to prosecute any and all causes of action against any Entity, except as otherwise expressly provided in this Plan, provided, however, that the Liquidating Trustee may only commence the Liquidating Trustee Causes of Action.

### 8.7   Disallowed Claims.

All Claims held by Persons or Entities against whom or which any Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan. Claims deemed disallowed pursuant to this Section shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Debtors or the Liquidating Trustee from such party have been paid.

## SECTION 9          EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 9.1   General Treatment.

All executory contracts and unexpired leases to which any of the Debtors are parties are hereby rejected as of the Effective Date except for an executory contract or unexpired lease that (i) previously has been assumed pursuant to Final Order of the Bankruptcy Court, (ii) is

34

specifically designated as an executory contract or unexpired lease to be assumed in this Plan or in any Plan Supplement, or (iii) is the subject of a separate assumption motion filed by the Debtors under section 365 of the Bankruptcy Code prior to the Effective Date.

Assumption of any executory contract or unexpired lease pursuant to this Plan or otherwise shall result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Claim listed in the Schedules and any Proofs of Claim filed with respect to any executory contract or unexpired lease that has been assumed prior to the Effective Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

### 9.2    Rejection Damages Claims.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to this Plan results in a Rejection Damages Claim in favor of a counterparty to such executory contract or unexpired lease, such Rejection Damages Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Liquidating Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Liquidating Trustee on or before the date that is thirty (30) days after the Effective Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults. All Allowed Rejection Damages Claims shall be treated as General Unsecured Claims pursuant to the terms of this Plan.

### 9.3    Reservation of Rights.

Neither the exclusion nor inclusion of any contract or lease in this Plan or Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, provided that, notwithstanding anything to the contrary herein, any such dispute shall be resolved prior to the Plan Confirmation Date.

## SECTION 10        CONDITIONS PRECEDENT TO EFFECTIVE DATE

### 10.1  Conditions Precedent.

The occurrence of the Effective Date of this Plan is subject to the following conditions precedent:

WCSR 30262403v19

(a)     the Plan Confirmation Order in form and substance satisfactory to the Debtor and the Agent shall have been entered by the Bankruptcy Court and shall be a Final Order;

(b)     all actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement any Plan Transactions, shall have been effected or executed;

(c)     the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and any Plan Transactions and that are required by law, regulation, or order;

(d)     the absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any Plan Transactions; and

(e)     there shall have been no modification or stay of the Plan Confirmation Order or entry of other court order prohibiting transactions contemplated by this Plan from being consummated.

### 10.2  Waiver of Conditions.

Unless otherwise specifically provided in this Plan, the conditions set forth in Section 10.1 of this Plan may be waived in whole or in part by the Debtors, in consultation with the Agent and the Creditors' Committee, without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

### 10.3  Effect of Failure of Conditions.

If the conditions precedent specified in Section 10.1 hereof have not been satisfied or waived by the Debtors within one hundred twenty (120) days after the Plan Confirmation Date, which period may be extended by the Debtors in consultation with Agent and the Creditors' Committee, then (i) the Plan Confirmation Order shall be vacated, (ii) no Distributions under this Plan shall be made, (iii) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date never occurred, and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims or Interests by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors or otherwise.

## SECTION 11        EFFECT OF CONFIRMATION

### 11.1  Vesting of Assets.

On the Effective Date, except as otherwise provided in this Plan, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Liquidating Trust Assets shall vest in the Liquidating Trust, subject to the rights and interests of the Liquidating Trust's beneficiaries.

## 11.2  Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Agent, the Creditors' Committee, and all present and former Holders of Claims against and Interests in any Debtor, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject this Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under this Plan.

## 11.3  Discharge of Claims and Termination of Interests.

To the fullest extent provided under section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in full and final satisfaction, settlement, release, and discharge, as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Estates, the Debtors, or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted this Plan. The Plan Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in this Plan.  This Plan is a liquidating plan and, as provided in section 1141(d)(3) of the Bankruptcy Code, the confirmation of a plan does not discharge a debtor if the plan provides for the liquidation of all or substantially all of the property of the estate.

## 11.4  Compromise and Settlement of Claims, Interests, and Controversies.

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  After the Effective Date, the Liquidating Trustee, on behalf of the Debtors, may, and shall have the exclusive right to,

37

compromise and settle any Claims and any Causes of Action against any other Person or Entity without notice to or approval from the Bankruptcy Court, including, without limitation, any and all derivative actions pending or otherwise existing against the Debtors as of the Effective Date.

**11.5  Injunction.**

Except as otherwise expressly provided in this Plan, the Plan Confirmation Order, or a separate order of the Bankruptcy Court, all Persons and Entities who have held, hold or may hold Claims against or Interests in any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, directly or indirectly, including indirect pursuit of any Claims against any Debtor by litigation or other claims against employees of any Debtor as of the Petition Date or an Indemnified Party, who were acting in their capacities and scope as employees with respect to the litigation claims made against such former employees; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest; (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors or the Liquidating Trust on account of any such Claim or Interest; and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and causes of action which are retained pursuant to this Plan. Such injunction shall extend to successors of the Debtors, including, without limitation, the Liquidating Trust and its properties and interests in property.

Upon the Bankruptcy Court's entry of the Plan Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Debtors', the Liquidating Trust's, the Liquidating Trustee's, and their respective affiliates, employees, advisors, officers and directors, or agents implementation or consummation of this Plan.

Notwithstanding the foregoing, the injunction provided by the Plan is subject to the exemption procedures stated below (the "Injunction Exemption") in order to allow litigants (collectively, the "Plaintiffs") pursuing wrongful foreclosure actions (each a "Foreclosure Action" and collectively, the "Foreclosure Actions") in which one or more of the Debtors is named a defendant based on such Debtor's role as trustee, to pursue claims in such lawsuits **solely** as follows:

a)      Any Plaintiff seeking to avail itself of the Injunction Exemption must file a statement of election with the Bankruptcy Court stating that the Plaintiff elects to avail itself of the Injunction Exemption (provided that no filing is necessary after all of the Debtors' cases are closed), and shall serve such election upon the Liquidating Trustee. A Plaintiff who has filed and served an election as provided herein is hereinafter referred to an "Exempt Plaintiff";

    b)      An Exempt Plaintiff may seek declaratory relief against the Debtors in its Foreclosure Action, such as a declaration that one or more instruments or actions involving the Debtors were improper or otherwise of no legal or equitable effect; provided, however, that no injunctive or other equitable relief may be sought or granted as against the Debtors in a Foreclosure Action, including, but not limited to the entry of any order demanding or requiring that any of the Debtors take any action or turnover any property, inasmuch as the Debtors have no legal or equitable interest in the underlying property or proceeds of any sale, and served merely as an agent of a foreclosing lender;

    c)      to the extent that any verdict, judgment, or settlement establishing monetary liability is obtained in favor of an Exempt Plaintiffs and against any of the Debtors, and to the extent that any of the Debtors have liability insurance available that would cover any of the Plaintiffs' claims, the Plaintiffs may take action to collect upon any such insurance as may be available under any such insurance policy without further proceedings before the Bankruptcy Court;

    d)      any verdict or judgment or settlement for a monetary award against any of the Debtors, to the extent not satisfied by the Debtors' insurance (if any), shall serve solely to liquidate the unsatisfied amount of the Plaintiffs' claim(s) against the Debtors, if any, provided, however, that any claim(s) for punitive damages shall be subordinate in right of payment to allowed unsecured claims pursuant to 11 U.S.C. § 726(a)(4) and all rights to object to any such claim(s) in accordance with the Plan are expressly preserved;

    e)      if any of Plaintiffs' claim(s) are asserted against employees or former employees of the Debtors based on alleged acts taken within the scope of such employee's employment with the Debtors,  no judgment or relief, other than declaratory relief, may be sought or granted as to any such individuals in the Foreclosure Actions; and

    f)      to the extent that prior to the Petition Date there was counsel of record for the Debtors in the Foreclosure Actions, such counsel has not been authorized by the Bankruptcy Court to continue to represent the Debtors, and therefore, no prior counsel of record should be required or permitted to continue to act to defend the Debtors in the Foreclosure Actions (subject to any determination by the court presiding in the Foreclosure Actions that regardless of such circumstances, an entity defendant requires counsel of record).

**11.6  Term of Injunctions or Stays.**

Except as otherwise provided in this Plan, to the maximum extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Plan, (a) all injunctions with respect to or stays against an action against property of the Debtors' Estates arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, and in existence on the Plan Confirmation Date, shall remain in full force and effect until such property is no longer property of the Debtors' Estates, and (b) all other injunctions and stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force

and effect until the earliest of (i) the date that the Chapter 11 Cases are closed pursuant to a Final Order of the Bankruptcy Court or (ii) the date that the Chapter 11 Cases are dismissed pursuant to a Final Order of the Bankruptcy Court.

### 11.7  Debtor and Estate Releases.

On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by the Debtors and their estates to the fullest extent permitted by applicable law, as such law may be extended or interpreted subsequent to the Effective Date, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors and their estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the negotiation, documentation, and consummation of the Sales, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any of the Released Parties, the negotiation, formulation or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Plan Confirmation Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, gross negligence, or a criminal act to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, a criminal act, or in the case of an attorney professional as required under rule 1.8(h)(1) of the Delaware Rules of Professional Conduct.

### 11.8  Releases by Holders of Claims and Interests.

TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH HOLDER OF A CLAIM RELATED TO THE DEBTORS (WHETHER OR NOT ALLOWED) AGAINST, OR INTEREST IN, THE DEBTORS, AND EACH PERSON OR ENTITY PARTICIPATING IN DISTRIBUTIONS UNDER OR PURSUANT TO THIS PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE DEEMED TO HAVE RELEASED ANY AND ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES (§ 1.92) AND ALL OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, PROFESSIONALS, AGENTS, OR OTHER RELATED PERSONS ARISING PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR ANY HOLDER OF A CLAIM WHO (1) TIMELY SUBMITS A BALLOT TO VOTE AGAINST THE PLAN, OR (2) WHO TIMELY SUBMITS A BALLOT MARKED TO ELECT THE OPTION TO OPT OUT OF THE RELEASES OF THIS SECTION 11.8 (FOR THE AVOIDANCE OF DOUBT, CREDITORS WHO RECEIVE THE DISCLOSURE

STATEMENT AND PLAN AND ELECT NOT TO TIMELY RETURN A BALLOT ARE DEEMED TO CONSENT TO THE RELEASES OF THIS SECTION 11.8); PROVIDED, HOWEVER, NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR ENTITY FROM BAD FAITH, WILLFUL MISCONDUCT, RECKLESS DISREGARD OF DUTY, CRIMINAL CONDUCT, FRAUD, SELF-DEALING, UNAUTHORIZED USE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES OR FOR PERSONAL ULTRA VIRES ACTS, OR, IN THE CASE OF AN ATTORNEY PROFESSIONAL AND AS REQUIRED UNDER RULE 1.8(h)(1) OF THE DELAWARE RULES OF PROFESSIONAL CONDUCT.

FURTHER, NOTHING IN THIS PLAN SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE RELEASED PARTIES AND ALL OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, PROFESSIONALS, AGENTS, OR OTHER RELATED PERSONS, NOR SHALL ANYTHING IN THE PLAN ENJOIN THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDING AGAINST THE PARTIES REFERRED TO HEREIN FOR ANY LIABILITY ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY, NOR SHALL ANYTHING IN THIS PLAN EXCULPATE ANY PARTY FROM ANY LIABILITY TO THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY FOR LIABILITIES ARISING UNDER THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST THE PARTIES REFERRED TO HEREIN.

### 11.9 Exculpation.

Upon and effective as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, and other professional advisors and agents, as of the Petition Date, will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the bankruptcy code, including section 1125(e) of the bankruptcy code.

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement, or related documents, the Released Parties shall neither have, nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with the Chapter 11 Cases or the negotiation, documentation, and consummation of the Sales; provided that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a final order to have constituted willful misconduct, gross negligence, or a criminal act to the extent such act or omission is determined

41

by a Final Order to have constituted willful misconduct, gross negligence, a criminal act, or in the case of an attorney professional as required under rule 1.8(h)(1) of the Delaware Rules of Professional Conduct; provided further that each of the Released Parties shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.

### 11.10   Release of Liens.

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens (§ 1.56) , pledges, or other security interests against any property of the Estates shall be fully released and discharged.

### 11.11   Dissolution of Creditors' Committee.

On the Effective Date, the Creditors' Committee shall have no further powers or duties and shall be dissolved for all purposes; provided, however, that the Creditors' Committee and its Professionals shall be entitled, after notice and a hearing, to reasonable compensation and reimbursement of actual and necessary expenses incurred post-Effective Date in preparing and filing applications for Accrued Professional Compensation Claims or for reimbursement of expenses incurred by members of the Creditors' Committee.

### 11.12   Retention of Causes of Action/Reservation of Rights.

### 11.12.1          No Waiver of Claims

Except as otherwise expressly provided in the Plan (including in Section 11.7 hereof) and the Liquidating Trustee Causes of Action, nothing contained in this Plan or in the Plan Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action that the Debtors or the Liquidating Trustee may have or which the Liquidating Trustee may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation, (i) any and all Claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors or their officers, directors, or representatives, and (ii) the turnover of all property of the Debtors' Estates.

### 11.12.2          Reservation of All Rights

Except as otherwise expressly provided in this Plan, nothing contained herein or in the Plan Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any cause of action against it as any indication that the Debtors or the Liquidating Trustee, as applicable, will not pursue any and all available causes of action against them. For the avoidance of doubt, the Liquidating Trustee may only commence the Liquidating Trustee Causes of Action.

### 11.13   Cancellation of Agreement, Notes, and Interests.

On the Effective Date, except to the extent otherwise expressly provided herein, all notes, stock, interests, instruments, certificates, and other documents evidencing the Interests in any of the Debtors shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder. On the Effective Date, except to the extent otherwise expressly provided herein, any indenture or other agreement relating to any of the foregoing shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder.

**SECTION 12        RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Plan Confirmation Date;

(c)    to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)    to enter, implement, or enforce such orders as may be appropriate in the event the Plan Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(e)    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Plan Confirmation Order, or any other order of the Bankruptcy Court;

(f)    to hear and determine any application to modify this Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Plan Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)    to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(h)    to hear and determine all requests for payment of Administrative Expense Claims;

43

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to consider requests for extensions of the term of the Liquidating Trust as provided herein;

(k)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(l)      to hear any disputes arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve, personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(m)      to determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

(n)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(o)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(q)      to enter a final decree closing the Chapter 11 Cases;

(r)      to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(s)      to hear and determine any rights, Claims, or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or any applicable federal statute or legal theory.

## SECTION 13          MISCELLANEOUS PROVISIONS

### 13.1 Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code and any applicable interest thereon that are due and payable as of the Effective Date shall be paid by the Liquidating Trustee on the Effective Date or as soon thereafter as is reasonably practicable. All such fees and any applicable interest thereon that become due and payable after the Effective Date shall be paid by the Liquidating Trustee with funds from the Plan Expenses Reserve when such fees become due and payable. All such fees and any applicable interest thereon shall continue to become due and payable until the entry of a final decree closing the Chapter 11 Cases or conversion or dismissal of the Chapter 11 Cases, whichever is earlier.

44

## 13.2 Substantial Consummation.

On the Effective Date and the commencement of distribution under this Plan, this Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

## 13.3 Operations Between the Confirmation Date and the Effective Date.

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation status reports every three months, on or before each of the fifteenth (15th) day of January, April, July, and October as appropriate, until the Chapter 11 Cases are closed, converted, or dismissed, whichever happens earlier.

## 13.4 Tax Treatment of the Liquidating Trust.

The Liquidating Trust is intended to qualify as a liquidating trust for U.S. federal income tax purposes that will be treated as a pass-through entity. All parties must treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as a transfer of such assets directly to the beneficiaries of the Liquidating Trust, followed by the transfer of such assets by each beneficiary to the Liquidating Trust. Consistent therewith, all parties must treat the Liquidating Trust as a grantor trust of which the Liquidating Trust's beneficiaries are the owners and grantors. Assuming the Liquidating Trust is treated as a liquidating trust, the beneficiaries of Liquidating Trust generally should be treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Liquidating Trust Assets. The Liquidating Trustee will determine the fair market value of the Liquidating Trust Assets as soon as possible after the Effective Date, and all parties must consistently use this valuation for all U.S. federal income tax purposes.

## 13.5 Determination of Tax Liabilities.

The Debtors or the Liquidating Trustee (as applicable) shall, pursuant to section 505(b) of the Bankruptcy Code, have the right to request an expedited determination of any unpaid liability of the Debtors' Estates and the Liquidating Trust for any tax incurred during the administration of the Chapter 11 Cases. As of the Effective Date, the Liquidating Trustee will be responsible for preparing and filing any tax forms or returns on behalf of the Debtors' Estates; provided, however, that the Liquidating Trustee shall not be responsible for preparing or filing any tax forms for holders of Interests in the Debtors (which Interests shall be canceled pursuant to this Plan), but shall provide such holders with any information reasonably required to prepare such forms.

## 13.6 Amendments.

### 13.6.1 Modifications to Plan and Plan Supplement.

45

This Plan and/or the Plan Supplement may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, provided that notice and an opportunity to object shall be provided with respect to any material post-confirmation modifications to this Plan or the Plan Supplement. In addition, after the Plan Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Supplement, or the Plan Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

### 13.6.2  Other Amendments.

The Debtors may make appropriate technical adjustments and modifications to this Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 13.7  Revocation or Withdrawal of the Plan.

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date. Any such action may only be taken if it is in the exercise of the Debtors' fiduciary duty to their creditors. If the Debtors take such action, this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in further proceedings involving the Debtors.

### 13.8  Continuing Exclusivity of Debtors' Right to Propose Plan.

The Debtors are currently operating within the exclusivity period under Bankruptcy Code section 1121. Accordingly, the Debtors retain, and the Debtors have, the exclusive right to amend or modify this Plan and to solicit acceptances of such amended or modified Plan.

### 13.9  Severability.

If, prior to the entry of the Plan Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Plan Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.10  Governing Law.

46

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

### 13.11   Time.

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

### 13.12   Binding Effect on Debtors, Holders and Successors and Assigns.

Upon the occurrence of the Effective Date, the terms of this Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Creditors' Committee, and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims and Interests failed to vote to accept or reject this Plan, voted to accept or reject this Plan, or are deemed to accept or reject this Plan), all Persons or Entities that are parties to or are subject to any settlements, compromises, releases, exculpations, discharges, and injunctions described in this Plan, each Person or Entity acquiring or retaining property under this Plan, and any and all non-Debtor parties to executory contracts and unexpired lease with the Debtors.

### 13.13   Entire Agreement.

On the Effective Date, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### 13.14   Effective Notice.

All notices, requests, and demands to or upon the Debtors or the Creditors Committee in the Chapter 11 Cases shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

(a)    If to the Debtors, to:

Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Attn: Steven K. Kortanek, Esq.

-and-

47

Kirkland & Ellis, LLP
601 Lexington Avenue
New York, NY 10022
Attn: Christopher Marcus, P.C. and David S. Meyer, Esq.

(b)    If to the Creditors' Committee, to:

Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022
Attn: Mark S. Indelicato, Esq.

-and-

Saul Ewing LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19899
Attn: Mark Minuti, Esq.

Dated: November 12, 2013               */s/ Charlie T. Piper*
                                       Charlie T. Piper
                                       Chief Executive Officer

48

## Schedule 1

Certain Litigation Matters Subject to the Supplemental Bar Date

WCSR 30262403v17

| Caption of Suit and Case Number |
|---|
| ABADIR V PNC, CWR, ET AL / CASE #RIC10020293 |
| ABADIR, ET AL. V. PNC BANK, CWR / CASE NO. RIC1210845 |
| Aguilar v CitiMortgage, CWR, et al / Case #3:11-cv-00643-ECR -VPC |
| Aguirre v Wells Fargo, CWR, Margaret Padilla, et al / Case No. 2:11-cv-06259-ODW-(JEMx) |
| Akopyan, et al. v. Wells Fargo Bank, CWR / Case No. BC482192 |
| Alderson v MERS, Citimortgage, CWR, et al / # 11-2-06025-0KNT |
| Alles v. Wells Fargo, CWR, et al. / Case No. EDCV12-02095 SVW DTBx |
| Alvarez v EMC, MERS, CWR, et al / Case No. TC026089 |
| Andre Gray (Borrower is Deneen Stokes) v. Nationstar, Aurora, CWR / Case #BC487963 |
| Ann Reinhagen v Wells Fargo, CWR, et al/Case No. INC11109498 |
| Anthony Banks, et al. v. Wells Fargo, CWR / Case No. 1210362 |
| Antonio Sanchez, et al. v. JPMorgan Chase, CWR, et al. / Case No. C12-01224 |
| Apolinario v. OneWest, CWR, et al. / Case #BC482585 |
| Armario v Wells Fargo, CWR, et al / Case No. RG11605427 |
| Autrey v Aurora, CWR, et al / Case No. BC471282 |
| Azimy vs. Wachovia, CWR, et al. / Case #30-2012-00560795-CU-FR-CJC |
| Bakenie, et al. v. JPMorgan Chase Bank, N.A., CWR, et al. / Case No. SACV 12-0060-JVS |
| Baker v JP Morgan Chase, CWR, et al. / Case No. 37-2011-00056088-CU-OR-NC |

| Caption of Suit and Case Number |
|---|
| Baner v Wells Fargo, CWR, et al / Case No. C -12-01189 EDL |
| Barnsley v Wells, CWR, et al / Case# P14990 |
| Barrientos, et al. v. Household Finance, CWR / Case No. 56-2012-00426738 |
| Batoon v CitiMortgage, CWR, et al / Case #RIC10017439 |
| Becerra v CitiMortgage, CWR, et al/Case No. RIC1211308 |
| Beck v Ocwen, CWR, et al / Case No. DR 120207 |
| Beltran, et al. v. Accubanc, CWR, et al. / Case No. 1:12-cv-0287 |
| Bogar v. PNC Mortgage, CWR - Case No. KC065546 |
| Boggess-Lehman v. Indymac Bank, CWR, et al. / NC058078 |
| Brigida Lacayanga De Jesus/Case No. 11-ap-2996 -CDCA |
| Buel v. PNC Bank, CWR, et al. / Case No. CV1205-0695 |
| Bula v. Wells Fargo Bank, CWR / Case No. SC117630 |
| Bulaoro v Wells Fargo, MERS, CWR, et al / Case No. 111CV200895 |
| Calderon v. EMC Mortgage, CWR, et al. / Case #30-2011-00475587 |
| Cao, et al. v. Wells Fargo, CWR, et al. / Case No. SACV12-02149 |
| Caraang v Aurora, CWR, et al / Case No. CV11 00319 |
| Carl Carson Jr. v. Ocwen, CWR / Case No. BC492736 |
| Castaneda v. JPMorgan Chase, CWR, et al. / CIVRS1203913 |
| Casteel, et al. v. Seterus, Chase, CWR, et al. / A-12-662627 |
| Castillejos, et al. v. World Savings Bank, Wells Fargo, CWR / Case No. SCV 251704 |

| Caption of Suit and Case Number |
|---|
| Castillo v US Bank, MERS, CWR, et al / Case No. CV173346 |
| Cecilia Miranda, et al. v. CitiMortgage, CWR, et al. / Case No. C12-01792 |
| Celia Vasquez, et al. v. PNC Mortgage, CWR, et al. / Case No. 112CV229974 |
| Chan v Chase Home Finance, CWR, et al/Los Angeles County Case No. BC452479/U.S. District Court, Central Dist. CA Case No. 11-cv-01486 |
| Cheung v Wells Fargo, CWR, et al. / Case No. 12-5016 |
| Christina De Vera v. Bank of NY Mellon, CWR, et al. / Case #EC060434 |
| Chun Lo, et al. v. JPMorgan Chase, EMC, CWR, et al. / Case No. GC049720 |
| City of Riverside v. French / RIC1215976 |
| Clark Regional Wastewater District v CWR, et al / Case #12-2-03693-8 |
| Claudio Aguirre v. Denis Brosnon / Case No. 12W03840 |
| Colmenero v. Wachovia, CWR, et al. / Case No. CV002701 |
| Combs v Castillo, CWR, et al. / Case #153467 |
| County of San Bernardino v. Abel, et al. / Case #CIVDS1211462 |
| Cox, et al. v. Financial Freedom, CWR / Case No. M118165 |
| Cregut v MERS, Wells Fargo, CWR, et al / Case No. 56-2011-00406355-CU-OR-VTA |
| Cruz Martinez v. Wells Fargo Home Mortgage, CWR / Case No. BC483423 |
| Dahlke v Aurora, CWR, et al / Case #37-2010-00058947-CU-OR-NC |

| Caption of Suit and Case Number |
|---|
| Dasalla, et al. v. PNC Mortgage, CWR, NCM / Case No. 34-2012-00127391 |
| De Clue v Wells Fargo, CWR, et al / Case #30-2012-00606029 |
| De Jesus v Aurora, CWR, et al / Case No. 2:11-AP-02996 BB |
| De Kine v. Wells Fargo Bank, CWR, et al. / Case No. 30-2012-00557860 |
| De Vera v Green Tree, CWR, et al/Case No. EC060434 |
| Denise Manning v Wells Fargo, CWR, et al/County Case No. BC482902 |
| Dennis v. CWR, et al. / Case #RG10511309 (Alameda) / CASE #4:10-cv-02328 (U.S. Dist. Court - Northern Dist.) |
| Derouen v Ocwen, CWR, et al / Case #30-2011-00462720 |
| Desmond Greene v. LNV Corp., Dovenmuehle, CWR / Case No. BC483215 |
| Devon Jones v. CitiMrrtgage, CWR, et al. / BC498919 |
| Dorothy Avila v. PNC Financial Services, U.S. Bank, CWR /Case No. RIC1208875 |
| Dreifus v Wells Fargo, CWR, et al / Case #30-2011-00507055-CU-OR-CJC |
| Duby v ASC, CWR, et al / Case No. 30-2011-00475736 |
| DUHU V. WELLS FARGO, CWR /CASE NO. CIVDS1207774 |
| Duncan v CWR, ServiceLink, et al / Case No. CI 20364 |
| Durazo v Wells Fargo, CWR, et al / Case No. 12-90065 |
| Duyck v CWR / Case # LV10030935 |
| Edward Cox, et al. v. PNC Financial, CWR / Case No. 12-cv-2811 |
| Edwin Wright, et al. v. Aurora, CWR / Case No. 30-2012-00581628 |

| Caption of Suit and Case Number |
|---|
| Eisan v. Wells Fargo, CWR / Case No. CV12-01331 EDL |
| Ekerson v CitiMortgage, CWR, et al / Case # CV'11-178 HU |
| Elizabeth Long v. LaSalle Bank, CWR, et al. / Case No. 1:12-cv-01495-PA |
| Ellis v Aurora, CWR, et al / Case #BC479810 |
| Elmore v. Wells Fargo Bank, CWR, et al. / Case No. C12-02715 |
| Elmore v. Wells Fargo Bank, CWR, et al. / Case No. C12-02715 / Case #4:13-cv-00003 |
| Eng, et al. v. Wells Fargo Bank, N.A., CWR, et al. / Case No. CGC-12-519912 |
| Escartin v. Wells Fargo, CWR / Case No. YC068245 |
| Fenwick v Wells Fargo, CWR, et al/Case No. S-1500-cv-278935 |
| Fernandes v Wells Fargo, CWR, et al / Case #34-2010-00087755 |
| Fernandez v Wells Fargo, CWR, et al / Case No. C12-00462 |
| Filip v. ASC, CWR, et al. / Case No. GC050523 |
| Fogel v. PNC Mortgage, CWR / Case No. LC098546 |
| Frame v Capital One, CWR, et al / Case #CV2011-001676 |
| Franco, et al. v. CWR / Case No. CV12-04388 PA (Ex) |
| Fraser v. PNC Mortgage, CWR, et al. / Case No. 37-2012-00104955-CU-WE-CTL |
| Fried, et al. v. Wells Fargo, CWR / RG12646438 |
| Galleron v CitiMortgage, CWR, et al / Case No. CV11 02662 |
| Galliguez v. Wells Fargo Bank, Prommis, RPP, CWR, et al. / Case No. 30-2012-00575025-CU-OR CJC |

| Caption of Suit and Case Number |
|---|
| Gaukler, et al. v. National City Mortgage, US Bank, Wells Fargo, CWR, et al. / Case No. 8:12-bk-11586-TA |
| Gens v Wachoiva, CWR, et al / Court of Appeals Docket #: 11-16476 |
| GEORGE BOUARI VS. WELLS FARGO BANK NA ET. AL. / SC112390 |
| Getsen Acquisitions v Aurora, CWR, et al / Case #37-2011-00050599 |
| Gibson-Wilson v. Nationstar, CWR, et al. / Case #BC492164 |
| Gilbert Gonzales v. Golden West Funding, CWR, MERS, et al. / Case #CIVDS 1202786 |
| Gilleran v Bank of NY Mellon, CWR, et al / Case No. SC115442 |
| GMAC v Rich, CWR, et al / Case #RIC1114027 |
| Goldstein, et al. v. World Savings Bank, CWR, et al. / INC1202223 |
| Gonzalez v Wells Fargo, CWR, et al / Case No. BC477767 |
| Gonzalez v. NCM, CWR, et al. / Case No. 12-cv-0827 |
| Greenstein v. CWR, et al. / Case #LC095160 |
| Guidry v Rogers, Fidelity, CW / Case# CGC-08-47343 |
| Haefner v Citi, MERS, CWR, et al / Docket No.: 12-16171 |
| Hayes v Aurora, CWR, et al / Case No. 30-2010-00437081 |
| Hearns v Wells Fargo, CWR, et al / Case #: 2:12-cv-03363 |
| Hermosillo v Wells Fargo B ank, CWR, et al / Case #26-55135 |
| Hernandez, et al. v. Wells Fargo Bank, N.A., CWR - Case No. CGC-12-527342 |
| Hershcu v Wells Fargo, CWR, et al / Case No. 37-2011-00101192-CU-OR-CTL |

| Caption of Suit and Case Number |
|---|
| Hinojos, et al. v. NYCB, CWR, et al. / Case No. 30-2012-00593655 |
| Honorato v. Aurora, CWR, et al. / Case No. BC474470 |
| Huff v PNC Bank, CWR, et al / Case #CIVRS1011207 |
| Huizar v Aurora, MERS, CWR, et al / Case No. CIVDS 1103864 |
| Hungerford v GMAC, CWR, et al / Case No. 30-2011-00531606 |
| Huntington v ALS, CWR / Case #A551529 |
| Ignacio Perez v Wells Fargo, CWR, et al/Case No. GC048544 |
| In re Amtrvst REO/ BK AP case No. 8:12-ap-01586 |
| In Re: Esther Maria Jones / Case No. 11-17159-LA7 |
| Jacobsen, O'Brien, et al./Case No. 12-17026 9th Cir. |
| Jaime Fernandez v. CWR, et al. / Case #30-2011-00051336 |
| James Chapman, et al. v. Taylor Bean, CWR, et al. / Case No. YC067685 |
| Javier Rodriguez v. GMAC Bank, CWR, et al. / Case No. C123615CV |
| Jeffery v. Wells Fargo Home Mortgage, CWR, et al. / Case No. SC-CV-CV-12-00897 |
| Jennifer Wu v. Wells Fargo, CWR, et al. / Case No. KC064557 |
| Jeon v. Wells Fargo Bank, CWR / Case #30-2012-00597632 |
| Jercich v JP Morgan Chase, CWR, et al / Case #CV002441 |
| Jimenez v Saxon Mortgage, CWR, et al / Case #RIC1117627 |
| Johnson v. Wells Fargo, CWR, et al. / Case #30-2011-00456754 / Case #8:11-cv-01052 |
| Jones, et al. v. CWR, et al. / Case #109cv147777 |

| Caption of Suit and Case Number |
|---|
| Juan Canhaul v. Julie Dasco, et al. / CIVVS 1203030 |
| Julio Morales v ASC, CWR, et al/County Case No. BC489013 |
| Kelly v Wells Fargo Bank, CWR, Aida Terriquez, et al/Case No. BC416233 |
| Kennedy v Aurora, CWR ,et al / Case No. 11CV2432 |
| Kim v CitiMortgage, CWR, et al / Case No. BC454756 |
| Koshman v Ocwen, CWR, et al / Case #34-2011-00095516 |
| Kotsinsh v. Aurora, CWR, et al. / Case No. 12-5173 |
| Kramer  v. BNYM, CWR, et al. / Case No. 157386 (Borrower:POLOSKY, MICKEL) |
| Kramford, et al. v. Wells Fargo, CWR / Case No. 30-2013-00622558-CU-OR-CJC |
| Lake Stevens Sewer Dist. V Goodin, Citi,CWR, et al / Case #12-2-05561-9 |
| Lakeman, et al. v. PNC Bank, CWR / Case No. VC062575 |
| Lakew v Wells Fargo, CWR, et al / Case #MSC12-02081 |
| Lane v PNC, CWR, Prommis, et al/Case no. 30-2012-00546588 |
| Lanh Nguyen, et al. v. Wells Fargo, CWR, et al. / Case No. 37-2012-00104995 |
| Latino v. CWR, et al. / Case #34-2011-00107592 |
| Lawson v PNC, CWR, et al / CIV 1101193 |
| Lee v. CWR, et al. / Case #BC490759 |
| Legaspi v Wells Fargo, CWR, et al / Case No. C11-01237 |
| Leminh Nguyen, et al. v. PNC Bank, CWR / Case No. 30-2012-00611064 |

| Caption of Suit and Case Number |
| --- |
| Liao v PNC, CWR, et al / Case No. CIV 507396 |
| Liddle v Wells Fargo, CWR, et al / Case #CV166512 |
| Lisa Aubert Brown/ Case No. 12-ap-9549 |
| Lisa Brown v. Wells Fargo Home, CWR, et al. Case #12-16059-A-13 |
| Littlewood Financial Group v CWR, PNC, Accubanc, et al / Case #RG11-601002 |
| Lizcely Rodriguez v Aurora, CWR, et al / Case #372010-00053250-CU-OR-NC |
| Lopez v MERS, Citi, FNMA, CWR, et al / Case No. S-1500-CV-275236 |
| Lopez v PNC, CWR, et al / Case No. 39-2011-00265929-CU-OR-STK |
| Lydecker v JP Morgan Chase, CWR (CA Reconveyance Co.), et al/Case No. BC473404 |
| Magac v Aurora, CWR,et al / Case #102096 |
| Mallonee, et al. v. Aurora, MERS, Yvonne, Rosalyn, CWR, et al. / Case No. 12-1016 |
| Marcos Melchor v Nationstar, CWR, et al. / Case No. KC065353 |
| Margaret Barela (Borrower is Edward Barela) v. Aurora, CWR / Case No. VC057684 |
| Marin v. Astoria, CWR / Case No. C12-01317 |
| Mark Mraz v JP Morgan Chase, CWR (CA Reconveyance Co.), et al/Case No. RIC1205607 |
| Marshall v. Wells Fargo Bank, N.A., CWR / Case #3:13-cv-01747 |
| Martha Alvarez v. Wells Fargo Bank, CWR, et al. / Case No. KC064759 |
| Martha Chavez v PNC, CWR, et al / Case #34-2011-00096482 |
| Martin v Wells Fargo, CWR, et al / Case No. 30-2011-00487101 |

| Caption of Suit and Case Number |
| --- |
| Massopust, et al. v. Wells Fargo, CWR / Case No. BC498352 |
| McAnelly v PNC, CWR, et al / Case #2:10-cv-02754 |
| McCalister v CitiMortgage, CWR, et al / Case No. 77581 |
| McFarlin v CitiMortgage, CWR, et al / Case #CV11-215 MO |
| McGee v. CitiMortgage, Inc., CWR, et al. / Case #2:12-cv-02025 |
| Melissa Adams v. Wells Fargo, CWR, et al. / Case No. 12CV0758 |
| Melling v Bank of America, CWR, et al / Case No. CIV1104017 |
| Mellinger, et al. v. Nationstar, CWR, et al. / Case No. LC098693 |
| Michael McHargue v Ramos, RTR, CWR, et al / Case #30-2010-00420693 |
| Michael Underwood v. Wells Fargo Bank, CWR / Case No. C12-01924 |
| Millera v Wells Fargo, CWR, et al / Case No. EC057684 |
| Misenhalter v Aurora, CWR, et al / Case #CV2010-099383 |
| Mitchell v CitiMortgage, CWR, et al / Case #656922 |
| Mitchell v. Wells Fargo, CWR / Case No. RG13662175 |
| Montpellier v Wells Fargo, CWR, et al / Case #30-2010-00437051 |
| Moore v PNC, CWR, et al / Case #VC057216 |
| Moreb v Wachovia, Wells Fargo, CWR, et al / Case #INC 1106661 |
| Moreno v Wells Fargo, CWR, et al / Case No. CIV 507891 |
| Myra Ramirez v. CWR, et al. / Case #CIV503874 |

| Caption of Suit and Case Number |
|---|
| Myrna Mapa v. MERS, CWR, Wells Fargo, et al. / Case No. 12-01056 |
| Nali v. Hovnania, et al. / Case #PC048289 |
| Nguyen v PNC, CWR, et al / Case No. 30-2012-00556433 |
| Noriega v. Wells Fargo Bank, CWR, et al. / Case No. 30-2012-00599109 |
| Obiniana, et al. v. Wells Fargo, CWR, et al. / Case No. 26-59387 |
| Olascoaga-DeCampos v. Wells Fargo Bank, CWR, et al. / Case #12-4051 |
| Olascoaga-DeCampos v. Wells Fargo Bank, CWR, LSI, et al. / Case No. C12-01928 |
| Oliver v Sovereign Bank, CWR, et al / Case No. 663104 |
| Osborn v Aurora, CWR, et al / Case #11-2-08245-6 |
| Osorio v. Wells Fargo Bank, CWR, et al. |
| Oyoque v. CWR, MERS, EMC Mortgage, et al. / Case #30-2012-00577904 |
| Pampena v Aurora, CWR, et al / Case No. CV11-07613 R (PJWx) |
| Patti Peterson v. Bank of America, CWR / Case No. 123025 E2 |
| Paul Gutierrez v Wells Fargo, CWR, et al / Case No. VC059671 |
| Pelz, Jr. v Bank of America, CWR, et al / Case #VG11568073 |
| Perez v. Wells Fargo Bank, CWR / (Case #2:12-cv-06830 |
| Perez-Rosales v. Wells Fargo, CWR, et al. / Case No. HG12642795 |
| Pestarino v Capital One, CWR, et al / Case No. 30-2010-00362987 |
| Piccininni v CitiMortgage, CWR, et al / Case #2:11-cv-01663 |
| Piceno v. Statebridge Company, LLC, CWR, et al. / Case No. 2:13-AP-1379-WB |

| Caption of Suit and Case Number |
|---|
| Picus v. Purcell, CWR, et al. / Case No. CV2012-016540 |
| Pimentel v Ocwen, Deutsche Bank, CWR, et al / Case No. 37-2009-00070629-CU-OR-EC |
| Portillo v Aurora, CWR, et al / Case #2:12-cv-09028 |
| Prime Asset Fund v Powell, CWR, et al / Case #S-1500-CV-272276 |
| Querubin, et al. v. America's Wholesale Lender, CWR, et al. / Case No. CV12-2276 |
| Quintanilla v JP Morgan Chase, Chase Home Finance, CWR, et al / Case No. 111CV208555 |
| Rabadi v Aurora, CWR, et al / Case No. KC062306 |
| Ramoncito Ocampo, et al. v. California Bank, CWR / Case No. PC053216 |
| Ramos v Aurora Loan Services, CWR, et al / Case No. CIVDS1108724 |
| Randall, et al. v. CitiGroup, CWR, et al. / Case 2:12-cv-04885 |
| Rangel v Aurora, CWR, et al / Case No. NC057243 |
| Renderos v Wells Fargo, et al./ Case No. RG12661040 |
| REO Portfolio v, CWR, et al. / Case #30-2013-00622586 |
| Reyes v CitiMortgage, CWR, et al / Case #2010CVF001858D3 |
| Robison v CitiMortgage, CWR, et al / Case No. SCV0029394 |
| Rodriguez v ASC, CWR, et al / Case #2:11-cv-03235-GHK-RZRodriguez v ASC, CWR, et al / Case #2:11-cv-03235-GHK-RZRodriguez v ASC, CWR, et al / Case #2:11-cv-03235-GHK-RZRodriguez v ASC, CWR, et al / Case #2:11-cv-03235-GHK-RZ |
| Rodriguez v CitiMortgage, CWR, et al / Case No. 37-2010-00106074 |

| Caption of Suit and Case Number |
| --- |
| Rodriguez v OneWest Bank, CWR, et al / Case No. S-1500-CV-274376 |
| Rodriguez v Wells Fargo, CWR, et al / Case #BC467675 |
| Rojas v. Wells Fargo Home Mortgage, CWR, et al. / Case #RIC1206248 |
| Rojas v. Wells Fargo Home Mortgage, CWR, et al. / Case #RIC1215799 |
| ROJAS V. WELLS FARGO HOME MORTGAGE, CWR, ET AL. / CASE IIRIC1206248 |
| Ronald Norris v. Wells Fargo Bank, CWR, et al. / Case No. 12-90338 |
| Roussel v. Homecomings, CWR, et al. / Case No. CGC-12-526943 |
| Rubalcava v. Bank of America, CWR, et al. / Case #1205-06230 |
| Salvador Silva v Aurora, CWR, et al/Case No. GC048610 |
| Samano v. CWR, et al. / Case #2:10-cv-06504 |
| Sandefur Jr. v. First Horizon Home Loans, et al. / Case #3:10-cv-00252 |
| Sandra Todd v. Chase, CWR, et al. / D.C. No. 2:12-cv-01643-NVW / Court of Appeal Case #No. 13-15591 |
| Satterfield v. CitiMortgage, CWR, et al. / Case No. CIVDS 1203869 |
| Saunders v. CWR, Wachovia / Case #12-70273 |
| Scarberry v. Fidelity Mortgage of New York et al. / 2:12-cv-00128 |
| Schmidt v PNC, CWR, et al / Case No. 37-2012-00090432-CU-CO-CTL |
| Schoedinger v CitiMortgage, MERS, CWR, et al. / Case No.: 3:11-cv-883-ac |
| Sciuto v RCS, CWR, et al / Case #37-2010-001-01295 |
| Setiono v. Residential Credite Colutions, CWR, et al. / Case No. KC064197 |

| Caption of Suit and Case Number |
|---|
| Singleton v Selene, MERS, CWR, et al / Case No. BC475556 |
| Skaf v Citi, CWR, et al/ Case No. EC060293 |
| Skala v. Nationstar Mortgage, CWR / Case No. LC097903 |
| Smith v Wells, CWR, et al / Case #30-2010-00423145 |
| Steele v. World Savings Bank, CWR, et al. / Case No. 2:12-ap-01579-VZ |
| Stewart v ASC, CWR, et al / Case No. YC065809 |
| Stowe v PNC, PHSI dba CWR, et al / Case #PC20100773 |
| Street v Argent Mortgage, CWR, et al |
| Stroud v. JP Morgan Chase, CWR, et al. / Case No. YC066700 |
| Suarez v Wells Fargo, CWR, et al / Case No. BC476954 |
| Suelen v. Wells Fargo Bank, CWR, et al. / Case No. C12-01987 |
| Sung v Wells Fargo, CWR, et al / Case No. BC479794 |
| Tabuena v Wells Fargo, CWR, et al / Case #CGC-10-500304 |
| Tadeo v Wells Fargo, CWR, et al / Case #CGC-10-506580 |
| Tapia v CWR / Case No. A-12-656636-C |
| Tarazi v CitiMortgage, CWR, et al / Case No. 11 CE CG 101615 JYH |
| Taylor v FNMA, JP Morgan Chase, CWR, et al / Case No. 11-05101-btb |
| Tesconi v. CWR, et al. / Case #FCS038967 |
| Trigg v Wells Fargo, CWR, et al / Case #SC2012022 |
| Trombly v MERS, Citi, CWR, et al / Case No. CV11 00791 |

| Caption of Suit and Case Number |
|---|
| Trust Holding Service (Bryce) v ASC, CWR, et al / Adversary Proceeding #: 1:12-ap-01150-MT |
| Trust Holding Service (Jun) v Wells Fargo, CWR, et al / Case #NC043944 |
| Ukiru v. FHLMC, CWR, et al. / Case No. CIVDS1203754 |
| Uribe v. Wells Fargo, CWR / Case No. 112CV220199 |
| Vancamp Seata Vai, Matanaui Matau Vai/Case No. 13-294 - NDCA |
| Vanegas, et al. v. Wells Fargo, CWR / Case No. 3:12-cv-01954 |
| Villa Villa v Aurora, CWR, et al / Case #37-2010-00063034-CU-CO-NC |
| Villalvazo v ASC, CWR, et al / Case #CV 11-4868 CAS (MANx) |
| Villegas, et al. v. Wells Fargo, CWR / Case No. HG12622093 |
| Vincent Nguyen, et al. v. PennyMac, et al. / Case No. ECU07369 |
| Walker v Citi, Deb Schwartz, et al / 2011CVF001972-D4 |
| WALTERSON V AURORA, CWR, ET AL / CASE NO. RG12619281 |
| Wartenberg v Wells Fargo, CWR, et al / Case No. SCV-249856 |
| Wasiak v PNC, CWR, et al / Case No. 2:11-cv-01190-GMN-PAL |
| Wayne Morrison, et al. v. Wells Fargo Bank, CWR / Case No. 30-2012-00613308/Federal Case No. |
| WEINTRAUB V. CITIMORTGAGE, -CWR, ET AL. / CASE NO. BC490278 |
| Wells Fargo Bank National Association/Case No. 13-1148 - NDCA |
| Woodie Young v CWR, Missy Spencer, et al/Case No. BC488702 |
| Woods v Wells, BofA, FHLMC, CWR, et al / #1:10-cv-01743-OWW-SMS |

| Caption of Suit and Case Number |
|---|
| Yonai v. Aurora, et al. / Case #BC499175 |
| Young v CitiMortgage, CWR, et al. / Case No. RIC1214698 |
| Zankich, et al. v. Wells Fargo Bank, CWR / Case No. #5:12-cv-05991 |
| Zuro v EMC, CWR, et al / Case #10C20727 |

**Schedule 1.1**

Notice of Supplemental Bar Date

WCSR 30262403v17

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PROMMIS HOLDINGS, LLC, et al.,[1] | ) | Case No. 13-10551 (BLS) |
|  | ) |  |
|  | ) |  |

### NOTICE OF SUPPLEMENTAL BAR DATE BY WHICH CERTAIN LITIGATION PARTIES MUST FILE PROOFS OF CLAIM AND PROCEDURES FOR RELATED THERTO

**PLEASE TAKE NOTICE THAT** Prommis Holdings, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Cases"), filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") on March 18, 2013 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE THAT** on November [13], 2013, the Debtors filed the Debtors' Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (the "Plan") with the Court. Among other things, the Plan requested the Court set a certain supplemental bar date (the "Supplemental Bar Date") by which proofs of certain litigation related claims must be filed in these cases and approving procedures relating thereto. The Plan was confirmed by the Court on December [  ], 2013 (the "Confirmation Order"). Pursuant to the Confirmation Order, the Court established the Supplemental Bar Date set forth herein as the deadline for the parties listed on Schedule 1 to the Plan to file proofs of claim asserting claims against the Debtors that arose, or that are deemed to have arisen, prior to the Petition Date.

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU MAY BE HOLDING A LITIGATION RELATED CLAIM AGAINST THE DEBTORS IN THE ABOVE-CAPTIONED CHAPTER 11 CASES. THEREFORE, YOU SHOULD READ THIS NOTICE CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Prommis Holdings, LLC (6940); Prommis Fin Co. (2965); Prommis Solutions, LLC (9978); E-Default Services LLC (0016); Statewide Tax and Title Services LLC (0049); Statewide Publishing Services LLC (0079); Nationwide Trustee Services, Inc. (2436); Statewide Tax and Title Services of Alabama LLC (7733); Nationwide Trustee Services of Virginia, Inc. (6687); Interface Inc. (9903); and Prommis Homeownership Solutions, Inc. (0569). The location of the Debtors' headquarters and the Debtors' service address is 400 Northridge Road, Atlanta, Georgia, 30350.

## Background to the Debtors' Cases

**General Information.** No request for the appointment of a trustee or examiner has been made in these Cases, and no committee has been appointed.

**Obtaining Additional Information.** If you have any questions regarding the claims[2] process and/or if you wish to obtain a copy of the Plan, Confirmation Order, proof of claim form, Schedules, or related documents (and/or any other pleadings filed in the Debtors' chapter 11 case) you may do so by contacting Donlin Recano & Company, Inc., the notice and claims agent retained by the Debtors (the "Notice and Claims Agent") by writing to Donlin Recano & Company, Inc., Re: Prommis Holdings, LLC, et al.,    P.O. Box 2055, Murray Hill Station, New York, NY 10156 or visiting http://www.donlinrecano.com/prommis. **Please note** that the Notice and Claims Agent can not advise you how to, or whether you should, file a claim.

**Schedules of Liabilities.** The Debtors filed their statement of financial affairs and schedules of liabilities with the Court (collectively, the "Schedules") on May 17, 2013. The Debtors' Schedules are available from the Notice and Claims Agent and may also be examined and inspected by interested parties during regular business hours at the Office of the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801. To determine if and how you are listed on the Schedules, please refer to the descriptions set forth on the enclosed proof of claim form. The Court's docket    sheet    and    documents    are    also    accessible    at    the    Court's    internet    site: https://ecf.deb.uscourts.gov    through    an    account    obtained    from    the    PACER    website    at http://pacer.psc.uscourts.gov or visiting http://www.donlinrecano.com/prommis. **Please note that creditors have the responsibility for determining that their claims are listed accurately on the Schedules.**

## Supplemental Bar Date Approved by the Court

The Court has established thirty (30) days after the Effective Date (as defined in the Plan) as the Supplemental Bar Date by which persons or entities that hold certain litigation claims and are identified on Schedule 1 to the Plan, must file an original proof of that claim in accordance with the instructions set forth below.

## Instructions for Filing Proofs of Claim

The following requirements shall apply with respect to filing and preparing each proof of claim:

1.  Contents of Proof of Claim. Each proof of claim must (i) be written in English; (ii) include a claim amount denominated in United States dollars; (iii) conform substantially with the Claim Form; and (iv) be signed by the claimant or by an authorized agent or legal representative of the claimant.

2.  Original Signatures Required. Only original proofs of claim will be deemed acceptable for purposes of claims administration. Copies of proofs of claim or

---

[2] Except as otherwise defined herein, all terms shall have the meanings ascribed to them by the Bankruptcy Code. In particular, as used herein: (a) the term "claim" has the meaning given to it in section 101(5) of the Bankruptcy Code; (b) the term "entity" has the meaning given to it in section 101(15) of the Bankruptcy Code;
(c) the term "governmental unit" has the meaning given to it in section 101(27) of the Bankruptcy Code; and
(d) the term "person" has the meaning given to it in section 101(41) of the Bankruptcy Code.

proofs of claim sent by facsimile, telecopy, e-mail, or other electronic submission will not be accepted.

3.  Identification of the Debtor.  Each proof of claim must clearly identify the Debtor against which a claim is asserted, including the Debtor's case number.  If you are asserting claims against more than one Debtor, you must file a separate proof of claim against each Debtor.

4.  Supporting Documentation. Each proof of claim must include supporting documentation in accordance with Bankruptcy Rules 3001(c) and 3001(d). If, however, such documentation is voluminous, upon prior written consent of the Debtor's counsel, such proof of claim may include a summary of such documentation or an explanation as to why such documentation is not available; provided, however, that any creditor that received such written consent shall be required to transmit such writings to the Debtor's counsel upon request no later than 10 days from the date of such request.

5.  Timely Service.  Each proof of claim must be filed, including supporting documentation, so as to be **actually received** by the Notice and Claims Agent on or before the Supplemental Bar Date in accordance with the Confirmation Order at:

> **If by first-class mail:**
> Donlin, Recano & Company, Inc.
> Re: Prommis Holdings, LLC, et al.
> P.O. Box 2055
> Murray Hill Station
> New York, NY 10156

> **If by hand delivery or overnight mail:**
> Donlin, Recano & Company, Inc.
> Re: Prommis Holdings, LLC, et al.
> 419 Park Avenue South, Suite 1206
> New York, NY 10016

**PROOFS OF CLAIM SUBMITTED BY FACSIMILE OR ELECTRONIC MAIL WILL NOT BE ACCEPTED.**

6.  Receipt of Service.  Claimants wishing to receive acknowledgment that their proofs of claim were received by the Notice and Claims Agent must submit (i) a copy of the Claim Form and (ii) a self-addressed, stamped envelope (in addition to the original Claim Form sent to the Notice and Claims Agent) concurrently with submitting its original Proof of Claim.

## What to File

The Debtors are enclosing a proof of claim form for use in this case. You may utilize the proof of claim form(s) provided by the Debtors to file your claim. Additional Proof of Claim Forms may be obtained at www.donlinrecano.com/prommis.

## Reservation of Rights

Nothing herein or in the Plan or the Confirmation Order is intended to or shall be deemed or construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors, (b) an approval or assumption of any agreement, contract or lease pursuant to Bankruptcy Code section 365, (c) a waiver of any right, or shall impair the ability of, the Debtors to (i) dispute, or assert offsets or defenses in respect of any claim against the Debtor asserted in a proof of claim, or listed or reflected in the Schedules, as to the nature, amount, liability, or classification thereof, (ii) subsequently change the designation of any claim listed in the Schedule to disputed, contingent, or unliquidated, or (iii) otherwise amend or supplement the Schedules.

## CONSEQUENCES OF FAILING TO TIMELY FILE A PROOF OF CLAIM

ANY PERSON OR ENTITY WHO IS REQUIRED, BUT FAILS, TO FILE A PROOF OF CLAIM ON OR BEFORE THE SUPPLEMENTAL BAR DATE APPLICABLE TO THEIR CLAIM(S) IN ACCORDANCE WITH THE TERMS SET FORTH IN THE CONFIRMATION ORDER, SHALL BE (A) FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS OR FILING A PROOF OF CLAIM WITH RESPECT THERETO AND, MOREOVER, THE DEBTOR'S PROPERTY SHALL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO OR ARISING FROM SUCH CLAIM AND (B) PROHIBITED FROM VOTING TO ACCEPT OR REJECT ANY PLAN FILED IN THESE CASES OR PARTICIPATING IN ANY DISTRIBUTION ON ACCOUNT OF SUCH CLAIM OR RECEIVE FURTHER NOTICES REGARDING SUCH CLAIM, EXCEPT AS OTHERWISE AUTHORIZED BY ORDER OF THE COURT.

**<u>Schedule 2</u>**

Potential Causes of Action

1

## PLAN SCHEDULE 2
### (Causes of Action Preserved by the Debtors)

Any and all Causes of Action that any Debtor has, or may have against the following parties are expressly preserved:

| |
|---|
| ABC LEGAL SERVICES |
| ANAHEIM-BUENA PARK INDEPENDENT |
| ANTELOPE VALLEY PRESS |
| APPEAL DEMOCRAT |
| CALIFORNIA AGENT SERVICES, LLC |
| CALLISTER NEBEKER & MCCULLOUGH |
| CHINO CHAMPION |
| CHRIS P. BURKE & ASSOCIATES CLIENT |
| COASTLINE POSTING AND FIELD SERVICE |
| DAILY JOURNAL CORPORATION |
| DAILY PRESS |
| DAVIS COUNTY CLIPPER |
| DESERT SUN PUBLISHING CO. |
| DUNN CARNEY ALLEN HIGGINS & TONGUE |
| ELK GROVE CITIZEN |
| EVERHOME MORTGAGE COMPANY |
| FIRST AMERICAN TITLE INSURANCE COMP |
| FONTANA HERALD NEWS |
| FRESNO BEE |
| HERALD PUBLICATIONS |
| IDAHO STATESMAN |
| IMAIL, LLC |
| INLAND VALLEY DAILY BULLETIN (ONTAR |
| INTERMOUNTAIN COMMERCIAL RECORD AND |
| KENNETH T. ZWICK CLIENT TRUST ACCOUNT |
| KRAMER, STANLEY |
| LAND RECORDS OF TEXAS |
| LAW OFFICES OF JAMES H. WOODALL, PL |
| LEDGER DISPATCH |
| LOMAS PACIFIC II, LLC |
| LPS AGENCY SALES & POSTING |
| LPS DEFAULT TITLE |
| LPS MORTGAGE PROCESSING SOLUTIONS, |
| LPS PROCESS MANAGEMENT |
| LSI TITLE AGENCY, INC. |
| MANTECA BULLETIN |

| |
|---|
| MARINOSCI LAW GROUP, P.C. |
| MERCURY REGISTER |
| METROPOLITAN NEWS COMPANY |
| MODESTO BEE |
| NAPA REGISTER |
| NEVADA LEGAL NEWS |
| NEVADA LEGAL SUPPORT SERVICES, LLC |
| NEWSPAPER AGENCY CORPORATION |
| OAKDALE LEADER |
| OCWEN LOAN SERVICING, LLC |
| OGDEN STANDARD EXAMINER |
| ON CALL STAFFING SOLUTIONS |
| ORANGE COAST TITLE COMPANY |
| ORANGE COUNTY REGISTER-DAILY SUN PO |
| ORANGE TITLE INSURANCE AGENCY |
| PACIFIC COAST TITLE |
| PHELAN, DANIEL D. |
| PITNEY BOWES GLOBAL FINANCIAL SERVI |
| PRESS DEMOCRAT |
| PRESS ENTERPRISE |
| RECORD SEARCHLIGHT |
| REEDLEY EXPONET |
| SACRAMENTO BULLETIN |
| SALINAS CALIFORNIAN |
| SAN DIEGO FIELD SERVICES |
| SAN DIEGO GAS AND ELECTRIC |
| SAN DIEGO NEIGHBORHOOD NEWSPAPERS |
| SAN GABRIEL VALLEY NEWSPAPER GROUP |
| SANTA CRUZ COUNTY SENTINEL |
| SANTA MARIA TIMES |
| SECURITY FIRST |
| SERVICE LINK DEFAULT ABSTRACT SOLUTIONS |
| SERVICE LINK TSG |
| STATE TREASURER (CALIFORNIA) |
| SUMMIT RIDGE SERVICES (SRS INC) |
| THE ARGUS |
| THE DAILY HERALD |
| THE DAILY REVIEW |
| THE RECORD |
| THE SIGNAL |
| THE SPECTRUM |

| |
|---|
| TIMES COMMUNITY NEWS |
| TREADWELL, PATRICK |
| TRI VALLEY HERALD |
| TRUSTEE SERVICES OF ARIZONA |
| TRUSTEE'S TITLE & ESCROW, L.C. |
| UT SAN DIEGO |
| VALLEJO TIMES HERALD |
| VALLEYWIDE NEWSPAPERS |
| VENTURA COUNTY STAR |
| VISALIA TIMES-DELTA |
| WELLS FARGO BANK, N.A. |
| WRIGHT, FINLAY & ZAK |
| YOH SERVICES, LLC |

3